1  Brian L. Davidoff (State Bar No. 102654)
   C. John M. Melissinos (State Bar No. 149224)
2  David Y. Joe (State Bar No. 206507)
   Claire E. Shin (State Bar No. 249492)
3  RUTTER HOBBS & DAVIDOFF
     INCORPORATED
4  1901 Avenue of the Stars, Suite 1700
   Los Angeles, California 90067
5  Telephone: (310) 286-1700
   Facsimile: (310) 286-1728
6  Email:  bdavidoff@rutterhobbs.com
           jmelissinos@rutterhobbs.com
7          djoe@rutterhobbs.com
           cshin@rutterhobbs.com
8
   [Proposed] General Reorganization Attorneys for
9  Debtors and Debtors-in-Possession

10                 UNITED STATES BANKRUPTCY COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                      LOS ANGELES DIVISION

13 In re:                              ) Case No.: 2:10-bk-46350-PC
                                       )
14 P&C POULTRY DISTRIBUTORS, INC.,     ) Jointly Administered with
                                       ) Case No.: 2:10-bk-46362-PC
15     Debtor and Debtor-in-Possession.)
                                       ) Chapter 11
16                                     )
                                       ) **DEBTORS' MOTION FOR ORDER**
17                                     ) **APPROVING DEBTORS' VENDOR**
                                       ) **FINANCING ARRANGEMENT WITH**
18                                     ) **RESOURCE SALES AND MARKETING;**
                                       ) **DECLARATION OF MICHAEL BENNISH IN**
19 In re:                              ) **SUPPORT THEREOF**
                                       )
20 CUSTOM PROCESSORS, INC.,            ) [Application for Order Setting Hearing on
                                       ) Shortened Notice filed concurrently
21     Debtor and Debtor-in-Possession.) herewith]
                                       )
22                                     ) Hearing:
                                       )
23                                     ) Date:  To Be Set
                                       ) Time:  To Be Set
24                                     ) Place: Courtroom 1539
                                       )         Edward R. Roybal Federal Building
25                                     )         255 E. Temple Street
                                       )         Los Angeles, CA 90012
26                                     )

27
28

-1-
MOTION FOR ORDER APPROVING VENDOR FINANCING FROM RSM
{8313.001-693975.DOC-(1)}

**TO THE HONORABLE PETER CARROLL, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, ALL PARTIES-IN-INTEREST HEREIN, AND THEIR RESPECTIVE COUNSEL:**

Debtors and Debtors-in-Possession P&C Poultry Distributors, Inc. ("P&C") and Custom Processors, Inc. ("Custom" and, collectively with P&C, the "Company" or the "Debtors"), hereby move (the "Motion"), pursuant to sections 105(a), 364, 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001 of Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rules 4001-1 and 9013-1, for entry of an order approving Debtors' vendor financing arrangement with Resource Sales and Marketing ("RSM"). In support of their Motion, the Debtors represent as follows.

## I.

## INTRODUCTION

By this Motion, the Debtors seek approval, to the extent necessary, of the provision of vendor financing of up to $2.5 million (as described in more detail below, the "Vendor Financing") by RSM. The Debtors believe that this arrangement will be highly beneficial to the Debtors and all creditors of the estates.

The Debtors believe that the Vendor Financing is, in general, in the ordinary course of the Debtors' business and that therefore the Debtors do not require Court approval to enter into it. However, in an abundance of caution, and to make sure the Court, East West Bank ("East West" or the "Bank") and all creditors are informed of the transaction, the Debtors bring this Motion for Court approval.

As set forth below, the Vendor Financing will be a great benefit to the Debtors in terms of buying chicken meat, and it will allow the Debtors to accelerate their restructuring efforts. These are highly positive outcomes for the Debtors and their creditors, and on that basis the Debtors believe that the Vendor Financing should be approved.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

-2-

MOTION FOR ORDER APPROVING VENDOR FINANCING FROM RSM
{8313.001-693975.DOC-(1)}

## II.

## BACKGROUND FACTS

### A.  Company Overview.

The Debtors are a "further processor" of chicken meats (*i.e.*, chicken meats that have been cut, de-boned, marinated, battered, breaded, partially fried or "par-fried," frozen, or otherwise prepared for cooking by restaurants and other food service establishments), and distributor of processed poultry products operating out of a U.S.D.A.-certified facility located in City of Industry, California.  The Company produces value-added frozen and fresh poultry products for re-sale to major fast food restaurant chains and casual dining services, including CKE Restaurants, Inc. (Carl's Jr., Hardee's), Yum! Brands, Inc. (KFC, Taco Bell), the Carlson Companies (Pickup Stix, T.G.I. Friday's) and Daphne's Greek Cafe.  The Company is a well-regarded, top-tier food supplier with annual sales topping $50 million.  Please see the accompanying Declaration of Michael Bennish (the "Bennish Declaration"), ¶ 4.

### B.  Status of Debtors' Bankruptcy Cases.

P&C and Custom commenced their Chapter 11 cases on August 27, 2010 (the "Petition Date") by filing voluntary petitions (the "Petitions")[1] under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Bennish Declaration ("Bennish Decl."), ¶ 5. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their business and manage their properties as debtors-in-possession.  No creditors' committee has been established in theses cases.  The first meeting of creditors pursuant to section 341(a) of the Bankruptcy Code is set for October 18, 2010 at 10:00 a.m.  Bennish Decl., ¶ 6.

On September 1, 2010, the Court granted the Debtors interim use of cash collateral, and a final hearing with respect to the Debtors' use of cash collateral is set for September 16, 2010.  On September 3, 2010, the Debtors submitted substantially all the items they were required to submit to the Office of the United States Trustee with the "7-Day Package."  On September 10, 2010, the Debtors filed their motion requesting an extension of time through

---

[1] An order granting joint administration of the P&C and Custom bankruptcy cases, under P&C's bankruptcy case number, was entered on September 1, 2010 [Docket No. 16 in the P&C case].

October 1, 2010 to file their Schedules of Assets and Liabilities and Statements of Financial Affairs. Bennish Decl., ¶ 7.

### C. The Company's Purchase of Raw Materials (Chicken Meat).

As the Debtors operate in Chapter 11, they are using cash to purchase chicken meat that forms the basis of the products they make. As they have historically done, the Debtors are buying chicken meat from all available sources, including directly from suppliers as well as, notably, brokers. Indeed, two of its largest creditors, Lawrence Wholesale, LLC and Timberlake Foods are brokers of chicken meat. Although obviously it is most cost-efficient to deal directly with a supplier, the use of brokers is also beneficial because it allows the Debtors to purchase larger lots of chicken than they might be able to get from individual suppliers, and, of course, brokers may be aware of the availability of chicken meat at advantageous prices even if the Debtors' personnel were not aware of these opportunities. Bennish Decl., ¶ 8.

### D. The Proposed Vendor Financing From RSM.

RSM is a broker and distributor of chicken and chicken products. Historically, P&C has worked closely with RSM in the sale and distribution of P&C's products to various restaurant chains. Typically, at any one time RSM might have purchased up to $500,000 in products from P&C. Bennish Decl., ¶ 9.

RSM is motivated to assist the Debtors because of its close relationship with the Debtors and because, without the Debtors, RSM might have great difficulty meeting its own customers' needs. Thus, it is fair to say that both that RSM and the Debtors have a close, trustworthy business relationship and that, should the Debtors not survive, RSM's own business would be deeply, adversely affected. Bennish Decl., ¶ 10.

As noted above, in addition to being a distributor, RSM is also a broker of various fresh meat products, including chicken meat. In this role, it is willing to purchase chicken to sell to the Debtors, and do so on 21-day terms up to a credit limit of $2.5 million. A true and correct copy of a letter memorializing this arrangement with RSM is attached as Exhibit "1"

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

{8313.001-693975.DOC-(1)}

-4-

MOTION FOR ORDER APPROVING VENDOR FINANCING FROM RSM

to the Bennish Declaration. Through the date of this Motion, RSM has already sold 270,640 pounds of chicken meat, valued at $408,098.04 to P&C. RSM has issued 16 invoices to the Debtors for the material. Bennish Decl., ¶ 11.

Although RSM is not charging interest so long as it is paid within 21 days, it does make money by charging a small mark-up fee, which is $.02 per pound on the meat that it brokers to the Debtors. This is a typical arrangement for the brokers with which the Debtors routinely deal. Further, this is not the first time the Company has ever entered into a transaction of this kind with RSM. Over the past 10 years of its business relationship with the Company, RSM, on an occasional basis, would provide credit/vendor financing of this kind to the Company. Pre-petition, as recent as April of 2010, the Company purchased raw chicken meat through/from RSM on 21-day terms. Bennish Decl., ¶ 12. However, and again in an abundance of caution, the Debtors seek Court approval of this arrangement so that it can be fully considered and evaluated by the Court and all parties-in-interest herein.

## IV.

## VENDOR FINANCING FROM RSM SHOULD BE APPROVED

A.  **The Legal Standard**.

Section 364(a) of the Bankruptcy Code provides that:

> If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(a).

In order to determine if a transaction is in the ordinary course, the Ninth Circuit employs the "horizontal" and "vertical" tests. *Burlington Northern Railroad Company v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700 (9th Cir. 1988). The horizontal test examines "whether the postpetition transaction is of a type that other similar businesses in the industry would engage in as ordinary business." *Dant & Russell*, 853 F.2d 700 at 704 (citing *In re Johns-Manville Corp.*, 60 B.R. 612, 618, (Bankr. S.D.N.Y. 1986), *rev'd on other*

*grounds,* 801 F.2d 60 (2nd Cir. 1986) (internal citations omitted). In other words, the horizontal test involves an industry-wide perspective in which the debtor's business is compared to other like business. *Id.*

The vertical dimension, or creditor's expectation test, on the other hand, views the transaction "from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit." *Johns-Manville,* 60 B.R. at 616. The court in *In re James A. Phillips, Inc.*, 29 B.R. 391 (S.D.N.Y. 1983), which first articulated the vertical test, noted that "[t]he touchstone of "ordinariness" is . . . the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business." *Id.* at 394. "Some transactions either by their size, nature or both are not within the day-to-day operations of a business and are therefore extraordinary." *Dant & Russell,* 853 F.2d at 705 (internal citations and footnotes omitted).

Further, the Court may grant the relief requested herein pursuant to section 364(b) of the Bankruptcy Court, which provides:

> The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(b).

**B.  The Vendor Financing Should Be Approved.**

The Vendor Financing by RSM should be approved. It is axiomatic that anything that enhances the Debtors' ability to buy chicken meat so that they can increase the amount of product they can produce will be of assistance in allowing the Debtors to generate the cash flow they need to reorganize. Moreover, RSM has not demanded a security interest in the amounts it finances and is willing to do so subject to the terms of a replacement lien provided to the Bank. Bennish Decl., ¶ 13. The additional purchasing power will lead directly to increased inventory, accounts receivable and cash, all of which benefit the value of the

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

{8313.001-693975.DOC-(1)}

-6-

MOTION FOR ORDER APPROVING VENDOR FINANCING FROM RSM

enterprise. The Debtors believe that the arrangement should therefore be approved in all respects.

## V.
## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order: (1) granting this Motion and authorizing the financing arrangement with RSM as stated above; and (2) granting such other and further relief as is necessary and appropriate.

Respectfully submitted,

DATED: September 15, 2010

RUTTER HOBBS & DAVIDOFF
INCORPORATED

By _____
BRIAN L. DAVIDOFF
C. JOHN M. MELISSINOS
DAVID Y. JOE
CLAIRE E. SHIN
[Proposed] General Reorganization
Attorneys for Debtors and Debtors-in-Possession

## DECLARATION OF MICHAEL BENNISH

I, Michael Bennish, declare:

1. I am Chief Executive Officer ("CEO") and Chairman of the Board of Directors of both Debtors and Debtors-in-Possession P&C Poultry Distributors, Inc., a California corporation ("P&C"), and Custom Processors, Inc., a California corporation ("Custom" and, collectively with P&C, the "Company" or the "Debtors"). I have been responsible for and have overseen the general operations of the Company since the mid-1990s and, in my current capacity, I am familiar with the day-to-day operations, business, and financial affairs of the Company. ").

2. I submit this declaration (the "Declaration") in support of the Company's motion (the "Motion") for entry of an order approving the Debtors' vendor financing arrangement with Resource Sales and Marketing ("RSM").

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other employees and representatives of the Company, my review of relevant documents, or my opinion based upon my experience and knowledge of the Company's operations and financial condition. If I were called to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Company.

### A.  Company Overview.

4. The Company is a "further processor" of chicken meats (*i.e.*, chicken meats that have been cut, de-boned, marinated, battered, breaded, partially fried or "par-fried," frozen, or otherwise prepared for cooking by restaurants and other food service establishments), and distributor of processed poultry products operating out of a U.S.D.A.-certified facility located in City of Industry, California. The Company produces value-added frozen and fresh poultry products for re-sale to major fast food restaurant chains and casual dining services, including CKE Restaurants, Inc. (Carl's Jr., Hardee's), Yum! Brands, Inc. (KFC, Taco Bell), the Carlson Companies (Pickup Stix, T.G.I. Friday's) and Daphne's Greek Cafe. The Company is a well-regarded, top-tier food supplier with annual sales topping $50 million.

B. **Status of Debtors' Bankruptcy Cases.**

5.   I caused P&C and Custom to commence their Chapter 11 cases on August 27, 2010 (the "Petition Date") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in order to protect the value of their assets and pursue a strategy that will permit them to reorganize for the benefit of all stakeholders. An order granting joint administration of the P&C and Custom bankruptcy cases, under P&C's bankruptcy case number, was entered on September 1, 2010 [Docket No. 16 in the P&C case].

6.   Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their business and manage their properties as debtors-in-possession. No creditors' committee has been established in theses cases. The first meeting of creditors pursuant to section 341(a) of the Bankruptcy Code is set for October 18, 2010 at 10:00 a.m.

7.   On September 1, 2010, the Court granted the Debtors interim use of cash collateral, and a final hearing with respect to the Debtors' use of cash collateral is set for September 16, 2010. On September 3, 2010, the Debtors submitted substantially all the items they were required to submit to the Office of the United States Trustee with the "7-Day Package." On September 10, 2010, the Debtors filed their motion requesting an extension of time through October 1, 2010 to file their Schedules of Assets and Liabilities and Statements of Financial Affairs.

C. **The Company's Purchase of Raw Materials (Chicken Meat).**

8.   As the Debtors operate in Chapter 11, they are using cash to purchase chicken meat that forms the basis of the products they make. As they have historically done, the Debtors are buying chicken meat from all available sources, including directly from suppliers as well as, notably, brokers. Indeed, two of its largest creditors, Lawrence Wholesale, LLC and Timberlake Foods are brokers of chicken meat. Although obviously it is most cost-efficient to deal directly with a supplier, the use of brokers is also beneficial because it allows the Debtors to purchase larger lots of chicken than they might be able to get from suppliers individually, and, of course, brokers may be aware of the availability of chicken meat at advantageous prices even if the Debtors' personnel were not aware of these opportunities.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

-2-

DECLARATION OF MICHAEL BENNISH IN SUPPORT OF RSM VENDOR FINANCING MOTION
{8313.001-693975.DOC-(1)}

**D.  The Proposed Vendor Financing From RSM.**

9. RSM is a broker and distributor of chicken and chicken products. Historically, P&C has worked closely with RSM in the sale and distribution of P&C's products to various restaurant chains. Typically, at any one time RSM might have purchased up to $500,000 in products from P&C.

10. RSM is motivated to assist the Debtors because of its close relationship with the Debtors and because, without the Debtors, RSM might have great difficulty meeting its own customers' needs. Thus, it is fair to say that both that RSM and the Debtors have a close, trustworthy business relationship and that, should the Debtors not survive, RSM's own business would be deeply, adversely affected.

11. As noted above, in addition to being a distributor, RSM is also a broker of various fresh meat products, including chicken meat. In this role, it is willing to purchase chicken to sell to the Debtors, and do so on 21-day terms up to a credit limit of $2.5 million. A true and correct copy of a letter memorializing this arrangement with RSM is attached hereto as Exhibit "1". Through the date of this Motion, RSM has already sold 270,640 pounds of chicken meat, valued at $408,098.04 to P&C. RSM has issued 16 invoices to the Debtors for the material.

12. Although RSM is not charging interest so long as it is paid within 21 days, it does make money by charging a small mark-up fee, which is $.02 per pound on the meat that it brokers to the Debtors. This is a typical arrangement for the brokers with which the Debtors routinely deal. Pre-petition, the Company routinely engaged in transactions of this nature with Lawrence Wholesale, LLC. Further, this is not the first time the Company has ever entered into a transaction of this kind with RSM. Over the past 10 years of its business relationship with the Company, RSM, on an occasional basis, would provide credit/vendor financing of this kind to the Company. Pre-petition, as recent as April of 2010, the Company purchased raw chicken meat through/from RSM on 21-day terms.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

-3-

DECLARATION OF MICHAEL BENNISH IN SUPPORT OF RSM VENDOR FINANCING MOTION
{8313.001-693975.DOC-(1)}

13. RSM has not demanded a security interest in the amounts it finances and indicated that it is willing to do so subject to the terms of a replacement lien provided to the Bank.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of September, 2010, at City of Industry, California.

_____
MICHAEL BENNISH

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

{8313.001-693975.DOC-(1)}

-4-

DECLARATION OF MICHAEL BENNISH IN SUPPORT OF RSM VENDOR FINANCING MOTION

Case 2:10-bk-46350-PC    Doc 51    Filed 09/15/10    Entered 09/15/10 19:41:08    Desc
Main Document    Page 12 of 17

# EXHIBIT 1



September 1, 2010

To: Michael Bennish

Mike,
As you and I discussed together, my company RSM will extend to you up to 2 ½ million dollars in credit. Also as agreed, I will afford you 21 day terms on anything you choose to borrow.
You have a proven track record. I am glad to provide you the credit assistance you may need.

Best regards,

Gary Kaplan
President
RSM

5

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1901 Avenue of the Stars, Suite 1700, Los Angeles, California 90067

A true and correct copy of the foregoing document described as: **DEBTORS' MOTION FOR ORDER APPROVING DEBTORS' VENDOR FINANCING ARRANGEMENT WITH RESOURCE SALES AND MARKETING; DECLARATION OF MICHAEL BENNISH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 15, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Alexandra Rhim: arhim@buchalter.com
Steve O. Smith: ssmith@buchalter.com
David Neale: dln@lnbyb.com
Russell Clementson: Russell.clementson@usdoj.gov; ustpregion16.la.ecf@usdoj.gov
James Sleth: jim@wsrlaw.net, charles@wsrlaw.net

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On September 15, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT DELIVERY**
Honorable Peter Carroll
United States Bankruptcy Court
255 East Temple Street
Courtroom 1539
Los Angeles, California 90012

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 15, 2010 | MELODY SHABPAREH | /s/ MELODY SHABPAREH |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

RUTTER HOBBS & DAVIDOFF INCORPORATED LAWYERS

-5-

PROOF OF SERVICE

{8313.001-693975.DOC-(1)}

**II. SERVED BY VIA U.S. MAIL**

20 LARGEST CREDITORS

BEARINGS & DRIVES
Attn: Steven Duncan
9506 Rush Street
South El Monte, California 91733

JENINE SEFTON
12100 Olympic Boulevard, Suite 300
Los Angeles, California 90064

CONSOLIDATED PACKAGING
Attn: Donna Haight
9821 Pittsburgh Avenue
Rancho Cucamonga, California 91730

COUNTY SANITATION DISTRICT
NO. 21 OF LOS ANGELES COUNTY
c/o Lewis, Brisbois & Smith
Attn: Lauren Ross, Esq.
221 North Figueroa Street, #1200
Los Angeles, California 90012

KNIGHT REFRIGERATED
Attn: Carol Millar
5601 W. Buckeye Road
Phoenix, Arizona 85043

LEYEN FOOD, LLC
Attn: Michael Liang
16015 Phoenix Drive
Hacienda Heights, California 91745

PRECISION REFRIGERATION & AIR
Attn: Igor Cherdak
9726 Klingerman Street
South El Monte, California 91733

SOLOMON, ROSS, GREY & CO
Attn: Fred Solomon
16633 Ventura Blvd, #600
Encino, California 91436

U.S. GROWERS COLD STORAGE
3141 East 44th Street
Los Angeles, California 90058

UNIFIRST
16434 Pioneer Boulevard
Norwalk, California 90650

WIEBERG CORPORATION
Attn:  Sylvia Cervantes
11258 Regentview Avenue
Downey, California 90241

Michelson Labs
Attn:  Veronica
6280 Chalet Drive
Los Angeles,, California 90040

CBEYOND
Attn:  Christy
AR Special Handling
320 Interstate North Parkway, SE
Atlanta, Georgia  30339

AMERICAN EXPRESS
PO Box 0001
Los Angeles, California 90096

ARI DIRECT
PO Box 485
Pleasanton, California 94566

LAWRENCE WHOLESALE, LLC
Mark Liszt
PO Box 58307
Vernon, California 90058

CH GUNTHER & SON, INC.
Attn:  Sherry Bray
PO Box 840441
Dallas, Texas 75284

CITY OF INDUSTRY DISPOSAL
Attn:  Mary Hull
PO Box 3366
City of Industry, California 91744

GRIFFITH LABORATORIES
Attn:  Cathy White
Dept. 70192
Chicago, Illinois  60673

SORENSON TRANSPORT
Attn:  Traci Nielson
PO Box 311
Chehalis, Washington 98532

SOUTHERN CALIFORNIA EDISON
Attn:  Hector Ortiz
PO Box 600
Rosemead, California 91771

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

{8313.001-693975.DOC-(1)}

-7-

PROOF OF SERVICE

```
 1  TIMBERLAKE FOODS, INC.
    Attn: Lee A, Durrett
 2  PO Box 3101
    Tupelo, Mississippi 38803
 3
    ATTORNEYS FOR U.S. GROWERS COLD STORAGE
 4  John Horvath, Esq.
    Horvath & Weaver, P.C.
 5  10 S. La Salle, Suite 1400
    Chicago, Illinois 60603
 6
    Ford Motor Credit Company, LLC
 7  P.O. Box 6275
    Dearborn, MI 48121
 8
    De Lage Landen Financial Services, Inc.
 9  1111 Old Eagle School Road
    Wayne, Pennsylvania 19087
10
    Crown Credit Company
11  403 Washington Street
    New Bremen, Ohio 45869
12
    Raymond Leasing Corp
13  Corporate Headquarters
    P.O. Box 130
14  Greene, New York 13778

15  Citicorp Del Lease, Inc.
    450 Mamaroneck Avenue
16  Harrison, New York 10528

17  Bank of New York
    2850 W. Golf Road
18  Rolling Meadows, Illinois 60008

19
20
21
22
23
24
25
26
27
28
```

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

{8313.001-693975.DOC-(1)}

-8-

PROOF OF SERVICE