Brian L. Davidoff (State Bar No. 102654)
C. John M. Melissinos (State Bar No. 149224)
David Y. Joe (State Bar No. 206507)
Claire E. Shin (State Bar No. 249492)
RUTTER HOBBS & DAVIDOFF INCORPORATED
1901 Avenue of the Stars, Suite 1700
Los Angeles, California 90067
Telephone: (310) 286-1700
Facsimile: (310) 286-1728
Email: bdavidoff@rutterhobbs.com
jmelissinos@rutterhobbs.com
djoe@rutterhobbs.com
cshin@rutterhobbs.com

[Proposed] General Reorganization Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

In re:

P&C POULTRY DISTRIBUTORS, INC.,

Debtor and Debtor-in-Possession.

In re:

CUSTOM PROCESSORS, INC.,

Debtor and Debtor-in-Possession.

Case No.: 2:10-bk-46350-PC

Jointly Administered with Case No.: 2:10-bk-46362-PC

Chapter 11

**DEBTORS' REPLY TO LIMITED OPPOSITION BY EAST WEST BANK TO DEBTORS' MOTION FOR ORDER APPROVING DEBTORS' VENDOR FINANCING ARRANGEMENT WITH RESOURCE SALES AND MARKETING; DECLARATION OF MICHAEL BENNISH IN SUPPORT**

Hearing

Date: September 29, 2010
Time: 1:30 p.m.
Ctrm: 1539
Edward R. Roybal Federal Bldg.
255 E. Temple Street
Los Angeles, CA 90012

**TO THE HONORABLE PETER CARROLL, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, ALL PARTIES-IN-INTEREST, AND THEIR RESPECTIVE COUNSEL:**

Debtors and Debtors-in-Possession P&C Poultry Distributors, Inc. ("P&C") and Custom Processors, Inc. ("Custom" and, collectively with P&C, the "Company" or the "Debtors") hereby submit their reply (the "Reply") to the limited opposition (the "Opposition") of East West Bank ("East West" or the "Bank") to the Debtors' Motion for Order Approving Debtors' Vendor Financing Arrangement with Resource Sales and Marketing (the "Motion"). In support of their Reply, the Debtors represent as follows.

## I.

## INTRODUCTION

In its Opposition, the Bank attempts to re-cast the Debtors' trustworthy, close business relationship with Resource Sales and Marketing ("RSM") as some sort of an improper, nepotistic relationship that "lacks indicia of an arms-length transaction." However, as has been explained to the Bank many times before, including by Mr. Bennish at his deposition, there is no "undisclosed benefit" provided to RSM for selling inventory to the Debtors. RSM is motivated to help out the Debtors only because it has a good, close business relationship with the Debtors that goes back many years and because there is mutual business interest that can be achieved by working together.

The Debtors' business relationship with RSM is a valuable asset, not an impropriety, of the estates that has made the Debtors' credit arrangement with RSM (the "Vendor Financing") possible. The Vendor Financing will accelerate the Debtors' restructuring efforts, and thus be highly beneficial to the Debtors and all creditors of the estates.

## II.

## THE DEBTORS' RELATIONSHIP WITH RSM

RSM is in the business of, among other things, marketing and selling poultry products to customers as an independent wholesaler, and has been the Debtors' customer for over ten

years. RSM sold products to the Debtors, too, for that same period. Please see the accompanying Declaration of Michael Bennish (the "Bennish Decl."), ¶ 6.

In late 2009, P&C and RSM signed an Agreement Regarding Joint Customers (the "Agreement" or "JCA"), to memorialize their custom and practice that they had developed over the preceding several years with respect to their shared customers. In summary, P&C and RSM's custom and practice has been as follows: When RSM identifies a potential poultry product customer whose needs it thinks P&C can fill, RSM informs P&C of that potential customer, and if P&C is interested, RSM and P&C jointly present a sales pitch to the potential customer. After that, if that customer decides to make purchases, RSM renders the invoices and purchase orders, and retains P&C to process and manufacture the products to be sold. RSM assumes all risk of non-payment and is responsible for paying and is obligated to pay P&C for the products supplied by P&C to their joint customers regardless of whether the customers pay RSM. P&C is responsible for the quality of the product supplied to the customers. A true and correct copy of the Agreement memorializing this business practice is attached to the Bennish Decl. as Exhibit "A".[1] Bennish Decl., ¶ 7.

The Agreement evidences the mutually beneficial business relationship between the Debtors and RSM. *Id.* at ¶ 8. RSM does not have any insider ownership interest in the Debtors or vice versa. *Id.* at ¶ 9.

The Bank contends that "further information is necessary regarding the workings of [the] relationship." Opposition, p. 2, lines 5-6. Although an actual copy of the JCA is yet to be produced to the Bank because a confidentiality agreement has not yet been executed by the Bank[2] the nature of the relationship has been explained to the Bank upon its request, on multiple occasions, including by Mr. Bennish through the Debtors' counsel and at his

---

[1] The Agreement, as it contains sensitive customer information, is being filed under seal pursuant to this Court's Order Authorizing Debtors to File Deposition Transcript of Michael Bennish Under Seal and to Require Pleadings Containing Confidential Information to be Filed Under Seal [Docket No. 63] entered on September 17, 2010.

[2] The Debtors were willing to make the Agreement available to the Bank under a confidentiality agreement. As of the time of this writing, the Bank has not yet executed a confidentiality agreement governing the discovery and filing of documents containing confidential information relating to the Debtors although a finalized copy of the agreement has been sent to the Bank's counsel for execution.

deposition. Mr. Bennish explained to the Bank at his deposition on September 14, 2010 that P&C and RSM have a close working relationship, that they were in discussions regarding potential extension of vendor credit or financing by RSM, and that they have an agreement in place governing their interaction with joint customers as stated in the JCA. Bennish Decl., ¶ 10. In addition, periodic reporting provided to the Bank includes the information pertaining to the status of accounts receivable and payable from and to RSM. *Id.* at ¶ 11. Nevertheless, the Bank maintains that "further information regarding the business relationship between RSM and the Debtors is necessary. . . . " Opposition, p. 5, lines 4-5, and repeats the same questions and requests as if no information has ever been provided.

The accounts receivable from RSM are current, and the Debtors receive payments every week. Attached as Exhibit "B" to the Bennish Decl. is the account receivable report for RSM that was sent to the Bank on Monday, September 27, 2010. The report shows that the last payment made by RSM was on September 16, 2010, and that the oldest invoice to RSM is for September 3, 2010 (which is 21 days from the date of the report of September 24, 2010.) The report also shows that as of September 24, 2010, the balance on the accounts receivable from RSM was $498,581.20. As of September 27, 2010, the balance on the accounts payable to RSM was $605,056.00. True and correct copies of the relevant portions of P&C's records showing these balances are attached to the Bennish Decl. as Exhibit "B". At the time of this writing, the Debtors estimate that, as a result of additional purchases which are not yet recorded, the aggregate amount of about $950,000 is outstanding on the accounts payable to RSM. Bennish Decl., ¶ 12. RSM has been selling inventories to the Debtors on 30-day terms, providing even more breathing room for the Debtors beyond the initial 21-day terms offered. *Id.* at ¶ 13. True and correct copies of invoices evidencing the 30-day terms are attached to the Bennish Decl. as Exhibit "C".

As contemplated by the JCA, and has been the case for the past 10 years, the Debtors have every expectation that RSM will continue to purchase product from them during the pendency of these bankruptcy cases, and expect that their mutually beneficial relationship will continue. The Debtors have received no indication whatsoever that the JCA will be

terminated by RSM. Moreover, the Debtors and RSM have not entered into any special agreement or arrangement under which RSM would receive special treatment in exchange for extending the Vendor Financing to the Debtors, including but without limitation, any rights of offset. Bennish Decl., ¶ 14.

III.

**THE BANK'S ARGUMENTS ARE IRRELEVANT TO ASSESSING WHETHER THE VENDOR FINANCING IS BENEFICIAL**

The Bank argues that "Lawrence appears to have concerns regarding the Debtors' ongoing relationship with RSM." Opposition, p. 4, ¶ 11. Lawrence is a competitor to RSM, and in that respect it may well have '"concerns" relating to whether "RSM is or will be providing inventory to the Debtors at a steep discount." *Id.* After all, Lawrence has made threats to put the Debtors out of business. Even then, RSM is not selling product at a discount. Although it is not charging any interest, RSM will make money by charging a small mark-up fee, which is $.02 per pound on the meat that it brokers to the Debtors. But again, there is no "undisclosed and undocumented terms," and RSM is and will not be "receiving undisclosed benefit from selling product to the Debtors. . . ." other than the mutual business benefit that both the Debtors and RSM derive from doing business together. Bennish Decl., ¶ 15.

The Bank also contends that since the Debtors "require 'financing' from RSM as their collections are insufficient to fund their operations," and "the Debtors' ability to obtain such financing is critical to its [*sic*] ability to reorganize," RSM's ability to provide the Vendor Financing should be further probed. Opposition, p. 5, lines 14-22. This argument is meritless, if not irrelevant, for at least three reasons. First, this argument has no bearing as to the issue of whether the Vendor Financing is in the ordinary course of business or it would be beneficial to the estates and their creditors. Second, now that the Debtors are authorized to use cash, the Debtors are likely to receive credit support from other vendors in the ordinary course of business. While extremely helpful, the Vendor Financing will not be the sole lifeline for the Company. If based on the Bank's theory, every time the Debtors attempt

to obtain credit from vendors in the ordinary course of business, those vendors' "financial ability and sufficient reputation in the industry to offer such credit" should become subject to investigation and probe, this will seriously hamper the Debtors' efforts to reorganize. Third, the Debtors have done business with RSM for over 10 years, this is not the first time that RSM has provided a line of credit of this kind to the Debtors in the past 10 years, and the Debtors have already tapped into the Vendor Financing, having ordered and received chicken based on this line of credit support. Bennish Decl., ¶¶ 16-17. It is hardly conceivable how a probe into RSM's ability to provide the Vendor Financing can be of any significance at this point.

The Bank makes it seem as if RSM suddenly appeared out of nowhere and simply agreed to provide credit to the Debtors. What the Bank ignores is that it is that long term mutually beneficial relationship with RSM that serves as the very basis of the support provided by RSM. Finally, the Court and the Bank should be aware that the price of chicken has dropped *even more* than the Debtors projected it would few weeks ago – the price has already dropped from $2 a pound in July to $1.20 a pound as of this week, a whopping 40% decrease. Bennish Decl., ¶ 18.

## IV.

## CONCLUSION

Based on the foregoing, the Debtors request that the Court enter its order: (1) granting this Motion and authorizing the financing arrangement with RSM as stated above; and (2) granting such other and further relief as is necessary and appropriate.

Respectfully submitted,

DATED: September 28, 2010

RUTTER HOBBS & DAVIDOFF INCORPORATED

By ______________________
BRIAN L. DAVIDOFF
CLAIRE E. SHIN
[Proposed] General Reorganization Attorneys for Debtors and Debtors-In-Possession

**DECLARATION OF MICHAEL BENNISH**

I, Michael Bennish, declare:

1. I am Chief Executive Officer ("CEO") and Chairman of the Board of Directors of both Debtors and Debtors-in-Possession P&C Poultry Distributors, Inc., a California corporation ("P&C"), and Custom Processors, Inc., a California corporation ("Custom" and, collectively with P&C, the "Company" or the "Debtors"). I have been responsible for and have overseen the general operations of the Company since the mid-1990s and, in my current capacity, I am familiar with the day-to-day operations, business, and financial affairs of the Company.

2. I submit this declaration (the "Declaration") in support of the Debtors' reply to the limited opposition of East West Bank (the "Bank") to the Debtors' Motion for Order Approving Vendor Financing Arrangement with Resource Sales and Marketing (the "Motion"). Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other employees and representatives of the Company, my review of relevant documents, or my opinion based upon my experience and knowledge of the Company's operations and financial condition. If I were called to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Company.

3. I caused P&C and Custom to commence their Chapter 11 cases on August 27, 2010 (the "Petition Date") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in order to protect the value of their assets and pursue a strategy that will permit them to reorganize for the benefit of all stakeholders. An order granting joint administration of the P&C and Custom bankruptcy cases, under P&C's bankruptcy case number, was entered on September 1, 2010 [Docket No. 16 in the P&C case].

4. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their business and manage their properties as debtors-in-possession. No creditors' committee has been established in these cases. The first meeting of creditors pursuant to section 341(a) of the Bankruptcy Code is set for October 18, 2010 at 10:00 a.m.

5. On September 3, 2010, the Debtors submitted substantially all the items they were required to submit to the Office of the United States Trustee with the "7-Day Package." On September 15, 2010, the Court granted an extension of time through October 1, 2010 for the Debtors to file their Schedules of Assets and Liabilities and Statements of Financial Affairs. On September 16, 2010, the Court granted the Debtors' use of cash collateral on a final basis. The Debtors' Motion for Order Authorizing Vendor Financing Arrangement with Resource Sales and Marketing, and Motion for Setting Notice Procedures are currently scheduled for hearings on September 29, 2010 at 1:30 p.m.

6. Resource Sales and Marketing ("RSM") is in the business of, among other things, marketing and selling poultry products to customers as an independent wholesaler, and has been the Debtors' customer for over ten years. RSM sold products to the Debtors, too, for that same period.

7. In late 2009, P&C and RSM signed an Agreement Regarding Joint Customers (the "Agreement" or "JCA"), to memorialize their custom and practice that they had developed over the preceding several years with respect to their shared customers. In summary, P&C and RSM's custom and practice has been as follows: When RSM identifies a potential poultry product customer whose needs it thinks P&C can fill, RSM informs P&C of that potential customer, and if P&C is interested, RSM and P&C jointly present a sales pitch to the potential customer. After that, if that customer decides to make purchases, RSM renders the invoices and purchase orders, and retains P&C to process and manufacture the products to be sold. RSM assumes all risk of non-payment and is responsible for paying and is obligated to pay P&C for the products supplied by P&C to their joint customers regardless of whether the customers pay RSM. P&C is responsible for the quality of the product supplied to the customers. A true and correct copy of the Agreement memorializing this business practice is attached hereto as Exhibit "A".[3]

---

[3] The Agreement is being filed under seal pursuant to this Court's Order Authorizing Debtors to File Deposition Transcript of Michael Bennish Under Seal and to Require Pleadings Containing Confidential Information to be Filed Under Seal [Docket No. 63] entered on September 17, 2010, as it contains sensitive customer information.

8. The Agreement evidences the mutually beneficial business relationship between the Debtors and RSM.

9. RSM does not have any insider ownership interest in the Debtors or vice versa.

10. On September 14, 2010, at my deposition taken by the Bank, I explained to the Bank that P&C and RSM have a close working relationship, that Gary Kaplan of RSM and I were in discussions regarding potential extension of credit by RSM prior to the Petition Date and that RSM and P&C have an agreement in place governing their interaction with joint customers. On or about September 17, 2010, I was informed that the Bank had several additional questions relating to the relationship/interest between RSM and the debtor, terms of the proposed credit support, whether the debtor/insiders got or would get any benefit from the proposed credit support, the financial ability of RSM to support $2.5 million in credit, etc. I provided detailed answers to all of the Bank's questions.

11. Periodic reporting provided to the Bank includes information pertaining to the status of accounts receivable and payable from and to RSM.

12. Attached hereto as Exhibit "B" is a portion of the account receivable report for RSM that was sent to the Bank on Monday September 27, 2010. The report shows that the last payment made by RSM was on September 16, 2010, and that the oldest invoice to RSM is for September 3, 2010 (which is 21 days from the date of the report of September 24, 2010.) the report also shows that as of September 24, 2010, the balance on the accounts receivable from RSM was $498,581.20. As of September 27, 2010, the balance on the accounts payable to RSM was $605,056.00. True and correct copies of the relevant portions of P&C's financial records showing these balances are attached hereto as Exhibit "B". As of September 28, 2010, I estimate that, as a result of additional purchases which are not yet recorded, the aggregate amount of about $950,000 is outstanding on the accounts payable to RSM.

13. RSM has been selling inventories to the Debtors on 30-day terms, providing even more breathing room for the Debtors beyond the initial 21-day terms offered. True and correct copies of invoices evidencing the 30-day terms are attached hereto as Exhibit "C".

14. As contemplated by the JCA, and has been the case for the past 10 years, the Debtors have every expectation that RSM will continue to purchase product from them during the pendency of these bankruptcy cases, and expect that our mutually beneficial relationship will continue. The Debtors have receive no indication whatsoever that the JCA will be terminated by RSM. Moreover, the Debtors and RSM have not entered into any special agreement or arrangement under which RSM would receive special treatment in exchange for extending the Vendor Financing to the Debtors, including but without limitation, any offset rights.

15. Lawrence is a competitor to RSM. I have been informed and believe that Lawrence has made threats to put the Debtors out of business. RSM is not selling inventories to P&C at a discount. Although RSM is not charging any interest, it will make money by charging a small mark-up fee, which is $.02 per pound on the meat that it brokers to the Debtors. There are no undisclosed and undocumented terms, and RSM is and will not be receiving any undisclosed benefit from selling product to the Debtors other than the mutual business benefit that both the Debtors and RSM derive from doing business together.

16. Now that the Debtors are authorized to use cash, the Company is likely to receive credit support from other vendors in the ordinary course of business. While extremely helpful, the vendor financing extended by RSM (the "Vendor Financing") will likely not be the sole source of credit for the Company.

17. The Debtors have done business with RSM for over 10 years, and RSM has provided a line of credit of this kind to the Debtors before, as recently as April of 2010. The Debtors have already tapped into the "Vendor Financing", ordered and received chicken meat based on this line of credit support.

18. The price of chicken has dropped *even more* than we projected it would few weeks ago – the price has already dropped from $2 a pound in July to $1.20 a pound as of this week.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of September, 2010, at City of Industry, California.

MICHAEL BENNISH

**EXHIBIT A**

# Filed Under Seal

**EXHIBIT B**

11:14:58
09/27/10

P & C POULTRY DISTRIBUTORS, INC.
Aging Report as of 09/24/10
For All Customers by Name (Detail)

| Invo# | InvoDate | ArrvDate | Invo Amt | Balance | Age | 09/19/10<br>09/25/10<br>Week 0 | 09/12/10<br>09/18/10<br>Week 1 | 09/05/10<br>09/11/10<br>Week 2 | 08/29/10<br>09/04/10<br>Week 3 | 08/22/10<br>08/28/10<br>Week 4 | 08/15/10<br>08/21/10<br>Week 5 | Prior |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *** Customer: McLane Foodservice | | | | MCL | Contact: Tracy Payne | | | | Phone: 972-364-2856 | | Fax: 972-364-2449 | |
| (Open Cr.: | 0.00) | | Last Pay: 09/23/10 | | Terms: WK | | | | | | | |
| 00076692 | 08/18/10 | / / | 62782.00 | 62782.00 | 37 | | | | | | 62782.00 | |
| 00076713 | 08/27/10 | / / | 54912.00 | 54912.00 | 28 | | | | | 54912.00 | | |
| 00076714 | 08/30/10 | / / | 55102.00 | 55102.00 | 25 | | | | 55102.00 | | | |
| *** Customer Total: | | | | 172796.00 | | 0.00 | 0.00 | 0.00 | 55102.00 | 54912.00 | 62782.00 | 0.00 |
| *** Customer: PFG Batesville | | | | PFGM | Contact: | | | | Phone: 866-208-0008 | | Fax: 662-578-9276 | |
| (Open Cr.: | 0.00) | | Last Pay: 09/27/10 | | Terms: WK 7 | | | | | | | |
| 00076721 | 09/02/10 | / / | 44284.80 | 44284.80 | 22 | | | | 44284.80 | | | |
| *** Customer Total: | | | | 44284.80 | | 0.00 | 0.00 | 0.00 | 44284.80 | 0.00 | 0.00 | 0.00 |
| *** Customer: ProPortion Foods, LLC | | | | PPF | Contact: greg | | | | Phone: 323-231-7777 | | Fax: 323-235-6635 | |
| (Open Cr.: | 0.00) | | Last Pay: 09/23/10 | | Terms: WK 10 | | | | | | | |
| 00076694 | 08/19/10 | / / | 3488.00 | 3488.00 | 36 | | | | | | 3488.00 | |
| 00076700 | 08/20/10 | / / | 1635.00 | 1635.00 | 35 | | | | | | 1635.00 | |
| *** Customer Total: | | | | 5123.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5123.00 | 0.00 |
| *** Customer: RSM | | | | RSM | Contact: GARY KAPLAN | | | | Phone: 818-880-9911 | | Fax: 818-880-9933 | |
| (Open Cr.: | 0.00) | | Last Pay: 09/16/10 | | Terms: WK N7 | | | | | | | |
| 00076723 | 09/03/10 | / / | 14336.00 | 14336.00 | 21 | | | | 14336.00 | | | |
| 00076724 | 09/07/10 | / / | 9112.40 | 9112.40 | 17 | | | 9112.40 | | | | |
| 00076725 | 09/07/10 | / / | 1792.00 | 1792.00 | 17 | | | 1792.00 | | | | |
| 00076728 | 09/07/10 | / / | 67523.60 | 67523.60 | 17 | | | 67523.60 | | | | |
| 00076729 | 09/08/10 | / / | 16583.20 | 16583.20 | 16 | | | 16583.20 | | | | |
| 00076730 | 09/08/10 | / / | 51200.00 | 51200.00 | 16 | | | 51200.00 | | | | |
| 00076731 | 09/09/10 | / / | 1257.60 | 1257.60 | 15 | | | 1257.60 | | | | |
| 00076732 | 09/09/10 | / / | 5749.20 | 5749.20 | 15 | | | 5749.20 | | | | |
| 00076733 | 09/09/10 | / / | 10752.00 | 10752.00 | 15 | | | 10752.00 | | | | |
| 00076735 | 09/10/10 | / / | 39900.00 | 39900.00 | 14 | | | 39900.00 | | | | |
| 00076736 | 09/15/10 | / / | 34963.20 | 34963.20 | 9 | | 34963.20 | | | | | |
| 00076737 | 09/15/10 | / / | 38400.00 | 38400.00 | 9 | | 38400.00 | | | | | |
| 00076742 | 09/17/10 | / / | 4736.00 | 4736.00 | 7 | | 4736.00 | | | | | |
| 00076743 | 09/17/10 | / / | 42840.00 | 42840.00 | 7 | | 42840.00 | | | | | |
| 00076745 | 09/17/10 | / / | 14976.00 | 14976.00 | 7 | | 14976.00 | | | | | |
| 00076748 | 09/22/10 | / / | 47160.00 | 47160.00 | 2 | 47160.00 | | | | | | |
| 00076749 | 09/22/10 | / / | 17280.00 | 17280.00 | 2 | 17280.00 | | | | | | |
| 00076752 | 09/23/10 | / / | 51200.00 | 51200.00 | 1 | 51200.00 | | | | | | |
| 00076753 | 09/24/10 | / / | 28820.00 | 28820.00 | 0 | 28820.00 | | | | | | |
| *** Customer Total: | | | | 498581.20 | | 144460.00 | 135915.20 | 203870.00 | 14336.00 | 0.00 | 0.00 | 0.00 |

**EXHIBIT C**

Resource Sales & Marketing

5622 Las Virgenes Road Ste 11
Calabasas, CA 91302

# Invoice

| Date | Invoice # |
|---|---|
| 9/21/2010 | 13817 |

| Bill To |
|---|
| P&C Poultry Distributors, Inc.<br>1100 A John Reed Court<br>City of Industry, CA 91745 |

| Cust P.O. # | Terms | Route | RSM PO # |
|---|---|---|---|
| D0917D | Net 30 | DELD | 4989 |

| Item | Description | Cases | Lbs/Cs | Weight | Price | Extension |
|---|---|---|---|---|---|---|
| 40250 | Fresh Leg Meat | 162 | 40 | 6,480 | 1.04 | 6,739.20 |

**Total** $6,739.20

Resource Sales & Marketing

5622 Las Virgenes Road Ste 11
Calabasas, CA 91302

# Invoice

| Date | Invoice # |
|---|---|
| 9/21/2010 | 13818 |

**Bill To**

P&C Poultry Distributors, Inc.
1100 A John Reed Court
City of Industry, CA 91745

| Cust P.O. # | Terms | Route | RSM PO # |
|---|---|---|---|
| D0917C | Net 30 | DELD | 4988 |

| Item | Description | Cases | Lbs/Cs | Weight | Price | Extension |
|---|---|---|---|---|---|---|
| 40250 | Fresh Leg Meat | 300 | 40 | 12,000 | 1.04 | 12,480.00 |

**Total** $12,480.00

Resource Sales & Marketing

5622 Las Virgenes Road Ste 11
Calabasas, CA 91302

# Invoice

| Date | Invoice # |
|---|---|
| 9/22/2010 | 13821 |

| Bill To |
|---|
| P&C Poultry Distributors, Inc.<br>1100 A John Reed Court<br>City of Industry, CA 91745 |

| Cust P.O. # | Terms | Route | RSM PO # |
|---|---|---|---|
| D0917E | Net 30 | DELD | 4990 |

| Item | Description | Cases | Lbs/Cs | Weight | Price | Extension |
|---|---|---|---|---|---|---|
| 40250 | Fresh Leg Meat | 500 | 40 | 20,000 | 1.04 | 20,800.00 |

**Total** $20,800.00

Main Document Page 20 of 21

| In re:<br>P&C POULTRY DISTRIBUTORS, INC.<br>Debtor(s). | CHAPTER 11<br>CASE NO: :02-bk-46350-PC |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1901 Avenue of the Stars, Suite 1700, Los Angeles, California 90067

A true and correct copy of the foregoing documents described as:

**DEBTORS' REPLY TO LIMITED OPPOSTION BY EAST WEST BANK TO DEBTORS' MOTION FOR ORDER APPROVING DEBTORS' VENDOR FINANCING ARRAGNEMENT WITH RESOURCE SALES AND MARKETING; DECLARATION OF MICHAEL BENNISH IN SUPPORT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 29, **2010,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

J. Alexandra Rhim, Scott O. Smith: arhim@buchalter.com, ssmith@buchalter.com
David Neale: dln@lnbyb.com
OUST: Russell.clementson@usdoj.gov, ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 29, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

Honorable Peter Carroll
United States Bankruptcy Court
255 East Temple Street, Courtroom 1539
Los Angeles, California 90012

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.
*January 2009* **F 9013-3.1**

Main Document Page 21 of 21

| In re: P&C POULTRY DISTRIBUTORS, INC. Debtor(s). | CHAPTER 11<br>CASE NO: :02-bk-46350-PC |
|---|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

September 29, 2010 Sonа Akmakjian
*Date* *Type Name* *Signature*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.
*January 2009* **F 9013-3.1**