SCOTT O. SMITH  (SBN:  62839)
J. ALEXANDRA RHIM (SBN:  180636)
ANGELLA YATES (SBN:  245045)
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email:  arhim@buchalter.com

Attorneys for Secured Creditor
East West Bank

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>P&C POULTRY DISTRIBUTORS, INC.,<br><br>Debtor and Debtor-in-Possession. | Case No. 2:10:bk-46350-PC<br><br>Jointly Administered with<br>Case No. 2:10-bk-46362 BB<br><br>Chapter:  11 |
| In re<br><br>CUSTOM PROCESSORS, INC.,<br><br>Debtor and Debtor-in-Possession. | **CONDITIONAL OPPOSITION  BY EAST WEST BANK TO DEBTOR'S MOTION FOR ORDER APPROVING THE STALKING HORSE BIDDER PROTECTIONS SET FORTH IN THE LETTER OF INTENT WITH BALMORAL ADVISORS, LLC**<br><br>Date:  April 6, 2011<br>Time:  9:30 a.m.<br>Ctrm:  1539<br>      Edward Roybal Building<br>      255 E. Temple Street<br>      Los Angeles, CA 90012 |

East West Bank, a secured lender ("Lender"), to P&C Poultry Distributors, Inc., the debtor (the "Debtor") in the above-captioned case (the "Case"), hereby submits this conditional opposition ("Opposition") to the Debtor's Motion For Order Approving The Stalking Horse Bidder Protections Set Forth In The Letter Of Intent With Balmoral Advisors, LLC ("Balmoral")

BN 8645229v1

**OPPOSITION  BY EAST WEST BANK TO DEBTOR'S MOTION FOR ORDER APPROVING THE STALKING HORSE BIDDER PROTECTIONS SET FORTH IN THE LETTER OF INTENT WITH BALMORAL ADVISORS, LLC**

(the "Motion"). In support of its Opposition, Lender asserts as follows:

## I.  PRELIMINARY STATEMENT

The proposed bid procedures sought by the Debtor cannot be approved as they are premature at this time. The Debtor proposes bid protections to induce Balmoral to expend time and resources to decide whether it will become a stalking horse bidder. Typically, such bid procedures are sought when a more definitive transaction is underway. Given the highly preliminary nature of the LOI, Lender has concerns about the appropriateness of conferring bid protections at this stage. Of particular concern is the proposed no-shop agreement whereby Balmoral has exclusive rights to conduct due diligence for a certain period of time while it determines *if* it will even proceed with any transaction. The Debtor would also be prohibited from communicating with any other potential bidders and any such other bidders would be prohibited from conducting due diligence. The practical effect is that no other bidder will have sufficient opportunity to timely complete due diligence to tender an overbid. In conjunction with this no-shop provision, the Debtor seeks approval of a breakup fee and expense reimbursement, the reasonableness of which cannot be assessed ▮▮▮▮▮▮▮▮. As further discussed below, ▮▮▮▮▮▮▮▮ additional ambiguities exist. Without further clarification of key terms ▮▮▮▮▮▮▮▮, the appropriateness of the bid procedures cannot be assessed and, thus, cannot be approved.

## II.  SUMMARY OF LOI TERMS

1.  <u>No Shop; Exclusivity</u>. Section 8.A. of the LOI provides for a "No-Shop Period" from March 10 through April 29, 2011 (and possibly later). During that period, the Debtor and its advisors may only "<u>passively</u> continue to receive submissions, LOIs or offers relating to Third Party Transactions, and existing interested parties may continue to have access to data maintained by [the Debtor's investment banker] . . . and the [Debtor's] senior management." Section 8.D. of the LOI further provides that the "Bid Procedures shall provide for a due diligence period for all interested parties once the No-Shop Period expires if the Definitive Documents provide for a 363 Sale or the Company receives a Termination Notice."

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 8645229v1

2

**OPPOSITION BY EAST WEST BANK TO DEBTOR'S MOTION FOR ORDER APPROVING THE STALKING HORSE BIDDER PROTECTIONS SET FORTH IN THE LETTER OF INTENT WITH BALMORAL ADVISORS, LLC**

    2.    <u>Break-Up Fee</u>. Section 8.B. provides for a breakup fee of $350,000 and expense reimbursement of $250,000, each of which are to be afforded superpriority status under sections 503(b)(1) and 507(b).

    3.    <u>Overbid</u>. Section 8.C. of the LOI provides for an ambiguous formulation of the initial overbid amount. That section provides that the initial overbid shall be no less than ███████; yet, at the same time, such amount can be no less than the "Closing Cash" and no more than the "Working Capital Commitment." If Balmoral makes a further overbid (which it presumably will by application of the breakup fee and expense reimbursement), Balmoral's bid will be deemed the highest and bid best.

    4.    <u>Purchase Price</u>. Section 3 of the LOI provides that the purchase price shall be an amount that results after deducting a "Working Capital Commitment" ███████████████████████████████.

### III.    ARGUMENT[1]

**A.    <u>The Bidder Protections Cannot be Approved Given The Highly Preliminary Nature of the Transaction.</u>**

Even by the Debtor's own admissions, any proposed transaction with Balmoral is merely preliminary at this time. Additionally, the LOI is ambiguous with respect to key terms. Given this uncertain posture, neither creditors nor the Court can assess whether the bid protections should be approved.

    1.    <u>The No-Shop Provision Cannot be Approved as it Stifles Bidding</u>.

No-shop clauses are strongly disfavored when debtors-in-possession have an overriding duty to minimize the value of assets it seeks to sell. <u>In re Big Rivers Elec. Corp.</u>, 233 B.R. 739, 752 (W.D. Ky. 1998) (holding that no-shop clauses violate public policy) (citing <u>Four B. Corp. v. Food Barn Stores Inc. (in re Food Barn Stores)</u>, 107 F.3d 558, 564-65 (8th Cir. 1997) (duty to

---

[1] In the interest of brevity, Lender does not again recite the factual background pertaining to the loan obligations owed by the Debtor. Information regarding such debt is set forth in the Declaration of William Nietschmann filed in support of Omnibus Opposition By East West Bank To: (1) Emergency Motion For Order Authorizing Debtors In Possession To Use Cash Collateral; (2) Emergency Motion Re Utilities; And (3) Emergency Motion To Honor Employee Wages And Benefits, filed on October 3, 2010 [docket no. 10]. On or about February 28, 2011, Lender also filed its proof of claim [claim no. 82].

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 8645229v1

3

**OPPOSITION BY EAST WEST BANK TO DEBTOR'S MOTION FOR ORDER APPROVING THE STALKING HORSE BIDDER PROTECTIONS SET FORTH IN THE LETTER OF INTENT WITH BALMORAL ADVISORS, LLC**

maximize); In re Midway Airlines, Inc., 6 F.3d 493, 494 (7th Cir. 1993) (duty to maximize). While a "window shopping" agreement may be permissible as it "allows a debtor to fulfill its fiduciary obligation by permitting third parties submitting a higher competing offer to *perform its due diligence*, but such competing offers must be made without any dialogue with the debtor." In re Bidermann Indus., 203 B.R. 547 (Bankr. S.D.N.Y. 1997) (emphasis added). In contrast, a no shop provision that prevents the debtor from communicating with a party that submits a bid and such bidder is prohibited from conducting due diligence stifles the bidding process and prevents a debtor from fulfilling its fiduciary duty:

> Thus, the *Bidermann* decision reveals the disfavor and potential problems with such window shopping provisions in the bankruptcy context when the debtor fails to extensively market its assets. In the present case, similar problems exist with the No Shop Clause contained in the Omnibus Agreement. <u>The Omnibus Agreement strictly prohibits Big Rivers from negotiating with any party offering a competing proposal to purchase or lease its assets. This prohibition violates the underlying policy of the Bankruptcy Code to maximize the value of the estate for the creditors by stifling the bidding process for the assets of the debtor</u>. The No Shop Clause places Big Rivers in a position of rejecting subsequent proposals to purchase its assets for a greater amount, thereby breaching its duty to the estate. <u>This Court particularly notes that this No Shop Clause completely locked up the debtor by preventing communication with any third party submitting a bid, whether that bid was higher or lower. Unlike the window shopping provisions in the above mentioned cases, such a condition provides no room for the debtor to fulfill its fiduciary obligation.</u>

Big Rivers, 233 B.R. at 753.

Similar to Big Rivers, the Debtor is prohibited from communicating with any other bidder. Further, Section 8.D. of the LOI contains an absolute prohibition against any other bidder conducting due diligence until Balmoral determines that the transaction will proceed as a sale under Section 363 or issues a termination notice. Hence, no due diligence can be conducted by an interested party until either of these events occur. Moreover, by the wording of Section 8.D., even if the transaction were to proceed but under a plan and not under Section 363 sale, no due diligence can be conducted at all. These limitations serve to lockup the process and, thus, result in bid chilling and are impermissible for the reasons explained in Big Rivers.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 8645229v1

4

**OPPOSITION BY EAST WEST BANK TO DEBTOR'S MOTION FOR ORDER APPROVING THE STALKING HORSE BIDDER PROTECTIONS SET FORTH IN THE LETTER OF INTENT WITH BALMORAL ADVISORS, LLC**

2. <u>The Reasonableness of the Proposed Breakup Fee Cannot be Assessed</u>

As acknowledged by the Debtor, the general rule of thumb is that a breakup fee in the range of 3% of the purchase price is deemed reasonable. A three part test is applied to assess the reasonableness of break-up fees: (1) whether the relationship between the parties who negotiated the break-up fee tainted by self-dealing and manipulation; (2) whether the fee hampers, rather than encourages bidding; (3) whether the amount of the fee is unreasonable relative to the proposed purchase price. <u>In re Integrated Resources</u>, 147 B.R. 650, 657 (S.D.N.Y. 1992).

The <u>Integrated</u> court continued, "The usual rule is that if break-up fees encourage bidding, they are enforceable; if they stifle bidding they are not enforceable." <u>Integrated</u>, at 659. The court continued, "[T]he court should consider whether the proposed acquirer attracted other bidders or simply received a potential windfall. Break-up fees and other strategies may 'be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking." <u>Integrated</u>, at 660. The <u>Integrated</u> court continued, "The appropriate question is whether the break-up fee served any of three possible useful functions: (1) to attract or retain a potentially successful bid, (2) to establish a bid standard or minimum for other bidders to follow, or (3) to attract additional bidders." <u>Integrated</u> at 662.

In this case, the three-part test enunciated in <u>Integrated</u> is not satisfied. <u>First</u>, there is no evidence to establish that the parties who negotiated the break-up fee did so without any motivation that would impair the Debtor's ability to meet its fiduciary duty to maximize the estate. It is important to note that integral to any transaction with Balmoral are management agreements with the Debtor's senior management (Michael Bennish and Daniel Bennish). [See Exh. 3 to Motion.] Hence, it is imperative that creditors and this Court have additional information regarding the negotiation of the LOI.

<u>Second</u>, Lender fears that the breakup fee will hamper rather than encourage bidding. ███████████████████████████████████ ████████████, the current proposal does not establish a minimum bid standard. Moreover, without being able to assess at this time ███████████████████ ████████████████, the breakup fee could ultimately be unreasonable and discourage

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 8645229v1

5

**OPPOSITION BY EAST WEST BANK TO DEBTOR'S MOTION FOR ORDER APPROVING THE STALKING HORSE BIDDER PROTECTIONS SET FORTH IN THE LETTER OF INTENT WITH BALMORAL ADVISORS, LLC**

other bidders. This is especially the case in conjunction with the no-shop requirement and Balmoral's ability to overbid by crediting the breakup fee (and expense reimbursement) so that it is deemed the highest and best bid.

<u>Lastly,</u> ███████████████████████████████ it is currently unknown whether the amount of the breakup fee is reasonable relative to the proposed purchase price. Neither creditors nor the Court can assess ███████████████████████████████ . For these reasons, the Debtor cannot demonstrate that the breakup fee, as proposed, is reasonable and, thus, it cannot be approved.

### 3. <u>Overbid Amount and Credit Bid</u>

Section 8.C. of the LOI requires an overbid in an initial amount not less than ██████ in cash, and be accompanied by a cash deposit of $600,000. Section 8.C. then states that the "Qualifying Bid" "shall provide no less than the net Closing Cash (plus the required $600,000 overbid) and no more than the net Working Capital Commitment provided for herein." Given these statements, the formulation of the initial overbid amount is ambiguous. Moreover, notwithstanding the uncertain amount of the initial overbid, the LOI confers Balmoral a distinct advantage in that it has the right to match any competing bid and to have its bid considered the highest and best bid.

### 4. <u>The Bid Protections Cannot be Meaningfully Assessed Without Greater Certainty</u> ███████████████ .

Of particular concern to Lender is the current uncertainty ███████████████ . Currently, Section 3 of the LOI provides that the purchase price shall be an amount that results after deducting a "Working Capital Commitment" ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ . Absent further clarity regarding the terms of the transaction, ███████████████ the policy and purpose of providing bidder protections is not served here.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 8645229v1

6

**OPPOSITION BY EAST WEST BANK TO DEBTOR'S MOTION FOR ORDER APPROVING THE STALKING HORSE BIDDER PROTECTIONS SET FORTH IN THE LETTER OF INTENT WITH BALMORAL ADVISORS, LLC**

**B.  Further Clarification and Adjustments to the LOI Are Necessary to Permit Implementations of the Bid Procedures.**

As discussed above, further clarity to the LOI is necessary. For instance, with respect to ███████████████████████████, further clarification is necessary. Lender understands that Balmoral has commenced significant due diligence following execution of the LOI on March 10, 2011 and that it expects to enter into definitive agreements by the end of April 2011. Hence, Lender submits it is appropriate at this time to require further clarification ███████ ███████████████████. As for the initial overbid amount, clarification should be made that it should be a delineated dollar amount the actual consideration to be paid by Balmoral.

## IV.  CONCLUSION

Based upon the foregoing reasons, Lender respectfully requests that the Court deny the Motion, and grant such other relief as is just and proper.

DATED: April 1, 2011

BUCHALTER NEMER
A Professional Corporation


By:   /s/ J. Alexandra Rhim
       SCOTT SMITH
       J. ALEXANDRA RHIM
      Attorneys for Secured Creditor
      East West Bank

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 8645229v1

7

**OPPOSITION BY EAST WEST BANK TO DEBTOR'S MOTION FOR ORDER APPROVING THE STALKING HORSE BIDDER PROTECTIONS SET FORTH IN THE LETTER OF INTENT WITH BALMORAL ADVISORS, LLC**

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Buchalter Nemer, 1000 Wilshire Blvd., Suite 1500, Los Angeles, CA 90017
A true and correct copy of the foregoing document described as CONDITIONAL OPPOSITION BY EAST WEST BANK TO DEBTOR'S MOTION FOR ORDER APPROVING THE STALKING HORSE BIDDER PROTECTIONS SET FORTH IN THE LETTER OF INTENT WITH BALMORAL ADVISORS, LLC will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 1, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
See attached list.

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On April 1, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| Debtor: (via U.S. Mail) | UNREDACTED VERSION | Counsel for Debtor: (via overnight delivery) UNREDACTED VERSION |
| P&C Poultry Distributors, Inc. | | Brian L Davidoff, Esq. |
| 1100 John Reed Court | | Rutter Hobbs & Davidoff |
| City of Industry, CA 91745 | | 1901 Avenue Of The Stars Ste 1700 |
| | | Century City, CA 90067 |

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 1, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
Hon. Peter Carroll
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012 (courtesy copies bin outside courtroom 1539)- (via messenger)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 1, 2011 | Shirlene Martin | /s/ Shirlene Martin |
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010* **9013-3.1.PROOF.SERVICE**
C:\Documents and Settings\smartin\Desktop\Proof Of Service Document[5].doc

Via NEF: (REDACTED VERSION)

Sara Chenetz    chenetz@blankrome.com, chang@blankrome.com
Russell Clementson    russell.clementson@usdoj.gov
Ronald Clifford    rclifford@blakeleyllp.com
Brian L Davidoff    bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
Jeffrey S Goodfried    jgoodfried@perkinscoie.com
David Joe    djoe@rutterhobbs.com, calendar@rutterhobbs.com
Bernard J Kornberg    bjk@severson.com
Duane Kumagai    dkumagai@rutterhobbs.com, calendar@rutterhobbs.com;mshabpareh@rutterhobbs.com
Craig A Loren    aloren@debtacquisitiongroup.com, bschwab@debtacquisitiongroup.com;jsarachek@debtacquisitiongroup.com
C John M Melissinos    jmelissinos@rutterhobbs.com, jreinglass@rutterhobbs.com;calendar@rutterhobbs.com
David L. Neale    dln@lnbrb.com
D Andrew Phillips    aphillips@mitchellmcnutt.com, dharwell@mitchellmcnutt.com
Rosamond H Posey    rposey@mitchellmcnutt.com
J Alexandra Rhim    arhim@buchalter.com, smartin@buchalter.com
James R Selth    jim@wsrlaw.net, charles@wsrlaw.net
Claire Shin    cshin@rutterhobbs.com, jreinglass@rutterhobbs.com
Claire Shin    cshin@seyfarth.com, jreinglass@rutterhobbs.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                                                **9013-3.1.PROOF.SERVICE**

C:\Documents and Settings\smartin\Desktop\Proof Of Service Document[5].doc