1

BRIAN L. DAVIDOFF (State Bar No. 102654)
bdavidoff@rutterhobbs.com

2

C. JOHN M. MELISSINOS (State Bar No. 149224)
jmelissinos@rutterhobbs.com

3

CLAIRE E. SHIN (State Bar No. 249492)
cshin@rutterhobbs.com

4

DAVID Y. JOE (State Bar No. 206507)
djoe@rutterhobbs.com

5

RUTTER HOBBS & DAVIDOFF
  INCORPORATED

6

1901 Avenue of the Stars, Suite 1700
Los Angeles, California 90067

7

Telephone: (310) 286-1700
Facsimile:  (310) 286-1728

8

9

Attorneys for Chapter 11 Debtors
And Plan Proponents

10

UNITED STATES BANKRUPTCY COURT

11

CENTRAL DISTRICT OF CALIFORNIA

12

LOS ANGELES DIVISION

13

In re:

Case No. 2:10-bk-46350-PC

14

P&C POULTRY DISTRIBUTORS, INC.,

Jointly Administered with
Case No. 2:10-bk-46362-PC

15

Debtor and Debtor in Possession.

16

Chapter 11

17

JOINT DISCLOSURE STATEMENT
DESCRIBING JOINT CHAPTER 11 PLAN
OF REORGANIZATION OF P&C POULTRY
DISTRIBUTERS, INC. AND CUSTOM
PROCESSORS, INC.

18

19

20

In re:

**Disclosure Statement Hearing:**
Date:     August 24, 2011
Time:     9:30 a.m.
Place:    255 East Temple Street
          Los Angeles, CA  90012

21

CUSTOM PROCESSORS, INC.,

22

Debtor and Debtor in Possession.

23

**Plan Confirmation Hearing:**
Date:
Time:
Place:    Same as Above

24

25

26

27

28

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

8313.001  923883.1

JOINT DISCLOSURE STATEMENT

## TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................................1

        A.      Purpose of This Document .......................................................................2

        B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing .........3

                1.      Time and Place of the Confirmation Hearing........................................4

                2.      Deadline for Voting For or Against the Plan .......................................4

                3.      Deadline for Objecting to the Confirmation of the Plan.........................4

                4.      Identity of Person to Contact for More Information Regarding the
                        Plan....................................................................................4

        C.      Disclaimer ...........................................................................................4

II.     BACKGROUND ...................................................................................................5

        A.      What Follows Is a Brief Summary of Debtors' Background, and Dates and
                Circumstances that Led the Debtors to File the Bankruptcy Case. ...................5

                1.      Debtors' Background. ...............................................................5

                2.      History of the Debtors. .............................................................5

                3.      The Debtors' Outstanding Obligations to East West Bank. .....................7

        B.      Events Occurring After Bankruptcy Filing. ................................................8

                1.      Employment of Professionals......................................................8

                2.      Significant Court Filings and Developments in the Chapter 11 Case......9

III.    SUMMARY OF THE PLAN...................................................................................14

        A.      Introduction. ......................................................................................14

IV.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE
        PLAN ...............................................................................................................15

        A.      What Creditors and Interest Holders Will Receive Under the Plan .................15

        B.      Unclassified Claims ............................................................................15

                1.      Administrative Expenses.........................................................15

                        a.      11 U.S.C. §§ 503(b)(9) and 507(a)(2)-Other Than Post
                                Petition Accounts Payable Incurred in the Ordinary Course of
                                Business..................................................................15

                        b.      11 U.S.C. §§ 507(a)(2)-Post Petition Accounts Payable
                                Incurred in the Ordinary Course of Business............................18

                2.      Priority Tax Claims.................................................................18

        C.      Classified Claims and Interests ..............................................................19

                1.      Class of Secured Claims..........................................................19

JOINT DISCLOSURE STATEMENT

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001  923883.1

2.  Classes of Priority Unsecured Claims ...................................................21

3.  Class of General Unsecured Claims......................................................21

4.  Class of Interest Holders ......................................................................22

D.  Means of Effectuating the Plan...................................................................23

1.  Funding for the Plan and Post Confirmation Management ..................23

2.  Disbursing Agent ..................................................................................23

3.  Objections to Claims.............................................................................23

4.  Interest Pending Allowance of Claims .................................................24

5.  Distributions to be Made Pursuant to the Plan ....................................24

6.  Exculpations and Releases....................................................................25

7.  Injunctions ............................................................................................26

E.  Risk Factors.................................................................................................26

F.  Other Provisions of the Plan.......................................................................27

1.  Executory Contracts and Unexpired Leases ........................................27

a.  Assumptions ..............................................................................27

b.  Rejections ..................................................................................28

2.  Retention of Jurisdiction ......................................................................28

3.  General Release of Claims Against Debtors' Insiders...........................30

G.  Tax Consequences of Plan ..........................................................................31

V.  CONFIRMATION REQUIREMENTS AND PROCEDURES.............................................32

A.  Wind Up of Custom Processors, Inc...........................................................32

B.  Who May Vote or Object ............................................................................32

1.  Who May Object to Confirmation of the Plan .....................................32

2.  Who May Vote to Accept/Reject the Plan ...........................................33

a.  What Is an Allowed Claim/Interest...........................................33

b.  What Is an Impaired Claim/Interest ..........................................33

3.  Who is Not Entitled to Vote.................................................................34

4.  Who Can Vote in More Than One Class...............................................34

5.  Votes Necessary to Confirm the Plan ..................................................34

6.  Votes Necessary for a Class to Accept the Plan ..................................34

7.  Treatment of Nonaccepting Classes .....................................................35

8.  Request for Confirmation Despite Nonacceptance by Impaired
    Class(es).................................................................................................35

C.  Liquidation Analysis....................................................................................35

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

JOINT DISCLOSURE STATEMENT

8313.001  923883.1

|     |     |                                                              |     |
| --- | --- | ------------------------------------------------------------ | --- |
|     | D.  | Feasibility                                                  | 38  |
| VI. |     | EFFECT OF CONFIRMATION OF PLAN                               | 38  |
|     | A.  | Discharge                                                    | 38  |
|     | B.  | Revesting of Property in the Reorganized Debtor              | 39  |
|     | C.  | Modification of Plan                                         | 39  |
|     | D.  | Post-Confirmation Status Report                              | 39  |
|     | E.  | Quarterly Fees                                               | 39  |
|     | F.  | Post-Confirmation Conversion/Dismissal                       | 39  |
|     | G.  | Final Decree                                                 | 40  |

DECLARATION OF MICHAEL BENNISH ..................................................................... 41

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

JOINT DISCLOSURE STATEMENT

8313.001  923883.1

I.    **INTRODUCTION**

P&C Poultry Distributors, Inc. ("P&C"), and its affiliate, Custom Processors, Inc. ("Custom"), California corporations, are the debtors and debtors-in-possession (collectively, the "Debtors"), in the jointly administered above-captioned chapter 11 bankruptcy case. These cases were commenced by the filing of voluntary Petitions under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), on August 27, 2010 (the "Petition Date"). Pursuant to an Order of the Court entered on September 1, 2010 authorizing their joint administration [Docket No. 16], the bankruptcy cases are jointly administered under case number 2:10-bk-46350-PC (the "Case").

Chapter 11 allows the Debtors, and in some cases their creditors and other parties in interest to propose a Plan of Reorganization. A Plan of Reorganization may provide for the Debtors to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtors submit this Disclosure Statement in connection with their solicitation of acceptances and rejections of the Debtors' Joint Plan of Reorganization dated _____ ___, 2011 (the "Plan" or the "Debtors' Plan"). The Debtors are the parties proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT ("Disclosure Statement"), FOR THE PLAN.

The Plan provides for the reorganization of the Debtors. Under the Plan, the Debtors will pay the claims provided for in the Plan through cash on hand at the Plan's Effective Date and through the income generated by the Debtors' business operations. If the Plan is not confirmed, it is extremely likely that East West Bank, which has a claim in excess of $9,000,000.00 which is secured by all assets of the Debtors, will obtain Court permission to foreclose its liens. In this event, it is likely that Debtors' insiders will be forced to file personal bankruptcy cases and no creditor other than East West Bank will receive anything in respect of their claims. In contrast, the Plan provides for the following:

•    The restructuring of the Debtors' secured obligations to East West Bank, as more fully set forth in Section IV.C.1 of the Disclosure Statement (page 22);

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

8313.001 923883.1

1       •    The cure and assumption of all or substantially all unexpired leases and

2 executory contracts of the Debtors, as more fully set forth in Section IV.F.1 (page 29) of the

3 Disclosure Statement;

4       •    The payment of priority taxes and chapter 11 administrative claims over time,

5 as more fully set forth in Sections IV.B.1 and IV.B.2 (pages 18-21) of the Disclosure

6 Statement;

7       •    A distribution over time to general unsecured creditors equal to ten percent

8 (10%) of each allowed claim, as more fully set forth in Section  IV.C.3 (page 24) of the

9 Disclosure Statement; and

10       •    The assignment of some or all the unexpired leases or executory contracts of

11 Custom to P&C upon Plan confirmation, the windup of Custom Processors, Inc., and the

12 consolidation of all of Debtors' operation in P&C Poultry Distributors, Inc., as more fully set

13 forth in Section V.A of the Disclosure Statement (page 36).

14       The term "Reorganized Debtor" as used herein or in the Plan refers to P&C following

15 Plan confirmation.

16       The effective date of the Plan ("Effective Date") will be the first business day which

17 is at least fourteen (14) days following the date of entry of the Bankruptcy Court order

18 confirming the Plan ("Plan Confirmation Order"), providing there has been no order entered

19 staying the effectiveness of the Plan Confirmation Order.  If there has been an order entered

20 staying the effectiveness of the Plan Confirmation Order, the Effective Date shall be the first

21 business day after the stay is no longer in effect with respect to the Plan Confirmation Order.

22 The Debtors, following the Effective Date, will be referred to herein as the "Reorganized

23 Debtor".

24       A.    <u>Purpose of This Document</u>

25       This Disclosure Statement summarizes what is in the Plan, and tells you certain

26 information relating to the Plan and the process the Court follows in determining whether or

27 not to confirm the Plan.

28       //

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

8313.001 923883.1

JOINT DISCLOSURE STATEMENT

<u>READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW</u> ABOUT:

(1)    WHO CAN VOTE OR OBJECT,

(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,

(3)    THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,

(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,

(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND

(6)    WHETHER THE PLAN IS FEASIBLE.

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as this Disclosure Statement. If there are any inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.

B.    <u>Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing</u>

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

8313.001 923883.1

3

JOINT DISCLOSURE STATEMENT

1                   **1.**     Time and Place of the Confirmation Hearing

2           The hearing where the Court will determine whether or not to confirm the Plan will

3 take place on _____ 2011 at __:_0_.m. in Courtroom 1539, located at 255 E. Temple

4 Street, Los Angeles, California 90012.

5                   **2.**     Deadline for Voting For or Against the Plan

6           If you are entitled to vote, it is in your best interest to timely vote on the enclosed

7 ballot and return the ballot in the enclosed envelope to Brian L. Davidoff, Esq., of Rutter

8 Hobbs & Davidoff Incorporated, at 1901 Avenue of the Stars, Suite 1700, Century City,

9 California 90067. Your ballot must be actually received by 5:00 p.m. PST, on _____,

10 2011, or it will not be counted.

11                   **3.**     Deadline for Objecting to the Confirmation of the Plan

12           Objections to the confirmation of the Plan must be filed with the Court and served

13 upon counsel for the Debtors, Rutter Hobbs & Davidoff Incorporated, Attn: Brian L.

14 Davidoff, Esq., at 1901 Avenue of the Stars, Suite 1700, Century City, California 90067 by

15 _____, 2011.

16                   **4.**     Identity of Person to Contact for More Information Regarding the Plan

17           Any interested party desiring further information about the Plan should contact Brian

18 L. Davidoff, Esq., of Rutter Hobbs & Davidoff Incorporated, at 1901 Avenue of the Stars,

19 Suite 1700, Century City, California 90067, telephone: (310) 286-1700.

20       **C.**    <u>Disclaimer</u>

21           The financial data relied upon in formulating the Plan is based on the Debtors' books

22 and records which, unless otherwise indicated, are unaudited. The information contained in

23 this Disclosure Statement is provided solely by the Debtors. The Debtors represent that

24 everything stated in this Disclosure Statement is true and correct to the Debtors' best

25 knowledge. The Court has not yet determined whether or not the Plan is confirmable and

26 makes no recommendation as to whether or not you should support or oppose the Plan.

27 //

28 //

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001  923883.1

4

## II.   BACKGROUND

### A.   What Follows Is a Brief Summary of Debtors' Background, and Dates and Circumstances that Led the Debtors to File the Bankruptcy Case.

#### 1.   Debtors' Background.

P&C and its affiliate, Custom, are "further processors" of chicken meats (i.e., chicken meats that have been cut, de-boned, marinated, battered, breaded, partially fried or "par-fried," frozen, or otherwise prepared for cooking by restaurants and other food service establishments), and distributor of processed poultry products operating out of a U.S.D.A.-certified facility located in City of Industry, California.  Debtors produce value-added frozen and fresh poultry products for re-sale to major fast food restaurant chains and casual dining services, including CKE Restaurants, Inc. (Carl's Jr., Hardee's), Yum! Brands, Inc. (KFC), Pickup Stix, T.G.I. Friday's and Popeye's Chicken & Biscuits.  The Debtors are well-regarded, top-tier food suppliers with annual sales topping $50 million in 2009.

Although when they were established, Debtors' management intended that P&C and Custom would handle different functions relating to the Debtors' operations, in practice, most business is conducted through P&C and Custom has few, if any assets (See Schedules A and B of each of the Debtors which were filed with the Court and are attached collectively as **Exhibit 1** hereto and which are incorporated herein by reference).  To the extent that Custom enters into contracts or incurs obligations (such as wage obligations, since most of the Debtors' employees receive their paychecks from Custom), such activity is in conjunction with the operations of P&C and inter-company accounting entries are made to reflect the liability of P&C for any such payments made by Custom.

#### 2.   History of the Debtors.

In 1992, two brothers, Howard Bennish and Stafford Bennish, formed P&C as a poultry brokerage company.  Howard's son, Michael Bennish, and Stafford's son, Daniel Bennish, entered the business in the mid-1990s.  Michael Bennish and Daniel Bennish saw opportunities for P&C to buy, process, and sell chicken products directly to customers in the fast food restaurant and casual dining service industries, and began to transition P&C's

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

8313.001 923883.1

5

JOINT DISCLOSURE STATEMENT

business accordingly.  In order to serve the specialized needs of their customers for high-quality, processed product, they formed Custom which, in 1999, opened its first processing plant, in Long Beach, California.  In 1998, Custom started building a second processing plant, in Los Angeles, California, and relocated its operations to that facility in 2000.  In 2005, P&C and Custom opened a new 55,000 square foot facility in City of Industry, California ("City of Industry Plant"), which includes a state-of-the-art, USDA-certified processing plant. This City of Industry Plant is leased by P&C from Chi-Ming Fan, Trustee of the Fan Family Trust Dated 1988, at a rental of approximately $41,800.00 per month.  The lease for the City of Industry Plant expires on November 30, 2013 (subject to renewal options).  A copy of the lease is attached to the Disclosure Statement as **Exhibit 2** and is incorporated herein by reference.

In 2008, Custom moved its Los Angeles processing operations to the City of Industry Plant and has, since that time, done all of its production there.  P&C now uses the Los Angeles location as a warehouse and cold storage facility (the "Los Angeles Facility").  The Los Angeles Facility is owned by an affiliated entity, Sotello Properties, LLC ("Sotello"), which is owned by P&C (40%), Michael Bennish, Howard Bennish, Stafford Bennish and Daniel Bennish (15% each).  P&C rents the Los Angeles Facility from Sotello, at a rental of approximately $30,000.00 per month.  Sotello has an outstanding loan from East West Bank, and this loan is collateralized by a deed of trust against the Los Angeles Facility.  East West Bank's loan to the Debtors is also collateralized by a second deed of trust against the Los Angeles Facility.  The lease for the Los Angeles Facility expires on June 30, 2018.  A copy of the lease is attached to the Disclosure Statement as **Exhibit 3** and is incorporated herein by reference.

Since 1999, the Debtors have grown significantly in size and annual revenue.  By September 2008, the new City of Industry Plant was fully operational.  In the same year, the Debtors procured new customer accounts with Chili's Grill & Bar, Popeye's Chicken & Biscuits and Long John Silver's, in addition to KFC and Rubio's Baja Grill.  In 2009, the Debtors' sales were in excess of $47 million.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

8313.001 923883.1

6

JOINT DISCLOSURE STATEMENT

1    In January 2010, P&C's sales dipped to $2.9 million per month (a rate of $34.8

2    million per year), primarily due to a change in sales strategies of its largest customer, KFC.

3    KFC started selling "grilled menu" items which P&C did not and does not supply to it.

4    Profitability also suffered because the price of raw poultry meat unexpectedly rose to its

5    highest level in 7 years during the first half of 2010 (an approximate 30% increase from the

6    average price during the previous 5 years) partly due to the heat wave that swept the

7    Southern states where the major U.S. chicken suppliers are located.  In general, the heat

8    wave caused chickens to eat less, thereby reducing their growth, reducing the overall

9    volume of chicken meat and leading to higher market prices.

10    Since 2000, Michael Bennish, Daniel Bennish, Howard Bennish and Stafford Bennish

11    (collectively, the "Bennishes") have each owned 25% of P&C's corporate shares, as well as

12    25% each of Custom's corporate shares.  Thus, P&C and Custom are each owned in the

13    same percentages by the same four individuals.

14                    3.    The Debtors' Outstanding Obligations to East West Bank.

15    East West Bank ("EWB"), extended a commercial term loan (the "Term Loan" (Loan

16    No. 2003087)) and revolving line of credit (the "Line of Credit Loan" (Loan No. 2003082))

17    in or about July 2006 (collectively, the "Loans") to P&C, originally in the principal amount

18    of $5 million for each Loan.  The principal amount of the Line of Credit Loan was later

19    increased to $5.5 million.

20    EWB asserts that the Line of Credit Loan is secured by a duly perfected first priority

21    lien in substantially all assets of the Debtors, and that it matured, as extended, in July 2010.

22    It is guaranteed by each and all of the Bennishes, the Bennish Family Trust dated July 3,

23    1997, Stafford B. Bennish and Pamela R. Bennish Living Trust dated February 12, 1987 as

24    Amended and Restated, Custom, Falkirk Sales Corporation (an affiliate of the Debtors also

25    owned by the Bennishes), and Sotello.  Historically, and as required by the Line of Credit

26    Loan, EWB made advances to the Debtors based on the Debtors' existing assets at the time,

27    for the Debtors to cover their operating expenses and purchase raw materials.  The Debtors'

28    ability to receive advances under this arrangement is determined using a formula based on

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001 923883.1

7

JOINT DISCLOSURE STATEMENT

1    eligible assets (borrowing base). Upon request of the Debtors for loan advances, pursuant to

2    this formula, EWB wired corresponding amounts to the Debtors.

3         The Term Loan is scheduled to mature on August 1, 2011 and is guaranteed by the

4    same individual and entity guarantors guaranteeing the Line of Credit Loan. The Term Loan

5    is also collateralized by a duly-perfected first priority security interest in substantially all of

6    the assets of P&C and a deed of trust against the Los Angeles Facility owned by Sotello

7    Properties. As such, the cash held by the Debtors are arguably the collateral of EWB

8    (collectively the "Cash Collateral"). The Loans require daily, weekly and monthly financial

9    reporting as well as compliance with financial, affirmative, and negative covenants.

10        The interest rates under the Loans are subject to change from time to time based on

11   changes in an independent index (Wall Street Journal Prime Rate), but were about 8.75%

12   per annum at the time the Loans were made.

13        As of the Petition date, there was approximately $5,513,371.00 owed on account of

14   the Line of Credit Loan and approximately $3,310,846.00 owed on account of the Term

15   Loan, for a total indebtedness as of the Petition Date of approximately $8,824,217.00, plus

16   interest and costs (including, as contended by EWB, attorneys' fees and costs) incurred

17   thereafter.

18        B.    Events Occurring After Bankruptcy Filing.

19             1.    Employment of Professionals.

20        At the inception of the Case, Debtors sought and received Court approval to retain

21   Rutter Hobbs & Davidoff Incorporated ("RH&D"), to serve as their general bankruptcy

22   counsel. On December 10, 2010, the Court entered an order authorizing the Debtors to

23   employ RH&D as general bankruptcy counsel to assist in the administration of the Case and

24   reorganization of the Debtors' business affairs.

25        The Debtors also sought and received Court approval to retain Solomon, Ross, Grey &

26   Company, LLP ("SRG"), to serve as accountants for the Debtors. On November 23, 2010,

27   the Court entered an order authorizing the Debtors to employ SRG as accountants for the

28   Debtors.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001  923883.1

8
JOINT DISCLOSURE STATEMENT

1   Also in or about November, 2011, Debtors also sought Court approval to retain

2   Mosaic Capital, LLC ("Mosaic"), as investment bankers for the Debtors. On December 21,

3   2010, the Court entered an order authorizing the Debtors to employ Mosaic as investment

4   bankers for the Debtors.

5      2.  Significant Court Filings and Developments in the Chapter 11 Case.

6     Since filing for chapter 11 relief, the Debtors have greatly improved their business

7   operations, realizing internal efficiencies which will lead to sustained profitability. The

8   Debtors have done so by employing Bruce Weinstein as the Debtors' turnaround consultant

9   and Chief Financial Officer. Mr. Weinstein has implemented new costing and cash

10  management systems and has made recommendations to Debtors' management to reduce

11  expenses. Debtors' management has also carefully assessed its customer base and sales,

12  eliminated unprofitable and less profitable sales and increased the Debtors' most profitable

13  business lines. The re-targeting of the Debtors' sales efforts, cost controls (including with

14  respect to purchasing chicken meat) and cash management will allow the Debtors to operate

15  profitably as a reorganized company. The following chart lists significant Court filings and

16  developments during the Case.

| Date | Event |
| --- | --- |
| August 27, 2010 | P&C filed its Emergency Motion for Order Authorizing Joint Administration of Related Cases Pursuant to 11 U.S.C. Section 105 and Bankruptcy Rule 1015(b) |
| August 27, 2010 | P&C filed an Emergency Motion for Order Authorizing Debtors in Possession to Use Cash Collateral |
| August 27, 2010 | P&C filed an Emergency Motion for Order (1) Prohibiting Utilities from Altering, Refusing or Discontinuing Service, (2) Deeming Utilities Adequately Assured of Future Performance, and (3) Establishing Procedures for Determining Adequate Assurance of Payment Under Section 366 of the Bankruptcy Code |
| August 27, 2010 | P&C filed an Emergency Motion for Order Authorizing Debtor in Possession to Honor Certain Pre-Petition Employee Wages and Benefits in the Ordinary Course of Business; Memorandum of Points and Authorities in Support Thereof |

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001 923883.1

JOINT DISCLOSURE STATEMENT

| Date | Event |
|------|-------|
| September 1, 2010 | Hearing held re Debtors' Emergency Motion for Order Authorizing Debtors in Possession to Use Cash Collateral |
| September 1, 2010 | Court entered its Order for Joint Administration with Case Number 10-46362 |
| September 2, 2010 | Court entered its Order Granting Debtors' Motion for Order Authorizing Debtor in Possession to Honor Certain Pre-Petition Employee Wages and Benefits in the Ordinary Course of Business |
| September 2, 2010 | Court entered its Order Granting Motion for Order (1) Prohibiting Utilities from Altering, Refusing or Discontinuing Service, (2) Deeming Utilities Adequately Assured of Future Performance, and (3) Establishing Procedures for Determining Adequate Assurance of Payment Under Section 366 of the Bankruptcy Code |
| September 7, 2010 | Court entered its Order Granting Motion for Order Authorizing Debtors in Possession to Use Cash Collateral |
| September 16, 2010 | Court Granted Debtors' Emergency Motion for Order Authorizing Debtors in Possession to Use Cash Collateral after final hearing |
| September 21, 2010 | P&C filed its adversary case Complaint against Lawrence Wholesale (this was later dismissed) |
| September 24, 2010 | Debtors filed their Joint Application to Employ Rutter, Hobbs & Davidoff, Inc. As General Bankruptcy Counsel |
| September 28, 2010 | Court entered its Order Granting Stipulation Between Debtor and P&C and US Growers Regarding Holding of Deposit in Lieu of Asserted Warehousers Lien |
| October 1, 2010 | P&C and Custom filed their Summary of Schedules and Schedules A through H |
| October 1, 2010 | P&C and Custom filed their Statement of Financial Affairs and Schedule 3(b) - Part 1 |
| October 4, 2010 | Court entered its Order granting Debtors' Motion to use Cash Collateral |
| October 14, 2010 | Court entered its Order granting Debtors' Motion for Order Approving Debtors' Vendor Financing Arrangement with Resource Sales and Marketing |
| October 14, 2010 | Court entered its Order granting Debtors' Motion for Order Setting Notice Procedures |

JOINT DISCLOSURE STATEMENT

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

8313.001  923883.1

| Date | Event |
| --- | --- |
| October 18, 2010 | 341(a) Meeting of Creditors held |
| October 22, 2010 | Debtors filed their Joint Application to Employ Solomon Ross Grey & Company, LLP as Accountants |
| October 27, 2010 | Debtors filed their Motion for Order Authorizing Continued Use of Cash Collateral |
| November 3, 2010 | East West Bank filed its Opposition to Debtors' Motion for Order Authorizing Continued Use of Cash Collateral |
| November 23, 2010 | Debtors filed their Joint Application to Employ Mosaic Capital, LLC as Investment Bankers for the Debtors |
| November 23, 2010 | Court entered its Order Overruling the Objection of EWB to Notices of Setting/Increasing Insider Compensation |
| November 23, 2010 | Court entered its Order Granting the Debtors' Joint Application to Employ Solomon Ross Grey & Company, LLC as Accountants for Debtors |
| November 24, 2010 | UST filed its Notice of Appointment of Creditors' Committee |
| November 24, 2010 | Debtor filed its Motion to Extend Exclusivity Period for the Filing of Chapter 11 Plan and Disclosure Statement |
| November 29, 2010 | Court entered its Order granting Debtors' Motion for Order Authorizing Continued Use of Cash Collateral |
| December 15, 2010 | Court held hearing granting Motion to Extend/Limit Exclusivity Period |
| December 21, 2010 | Court entered its Order granting Debtors' Joint Application to Employ Mosaic Capital, LLC as Investment Bankers |
| December 21, 2010 | Court entered its Order Granting Debtors' Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement |
| December 22, 2010 | P&C filed its Motion for Order Extending Time During Which P&C Must Assume, Assume and Assign, or Reject Nonresidential Real Property Lease with Fan Family Trust |
| December 22, 2010 | P&C filed its Ex Parte Motion for an Order Setting Deadline for filing Proofs of Claim and Approving Related Notice Procedures |
| December 28, 2010 | Court Entered its Order Setting Deadline for filing Proofs of Claim |

JOINT DISCLOSURE STATEMENT

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001  923883.1

| Date | Event |
|------|-------|
| December 28, 2010 | Court entered its Order granting the Stipulation between P&C and Sotello Properties, LLC to Extend time for Debtor to Assume, Assume and Assign or Reject Lease |
| January 13, 2011 | Court entered its Order granting Motion for Order Extending Time During Which P&C Must Assume, Assume and Assign or Reject Nonresidential Real Property Lease with Fan Family Trust |
| January 13, 2011 | Debtors filed their Case Status Report |
| January 24, 2011 | Debtors filed their Further Motion for Order Authorizing Continued Use of Cash Collateral |
| January 26, 2011 | Timberlake Foods filed its Motion for Allowance and Immediate Payment of Administrative Expenses |
| January 28, 2011 | Court entered its Order Granting Debtors' Motion to Continue Use of Cash Collateral |
| January 31, 2011 | Interim Application by Rutter Hobbs & Davidoff, Inc. For compensation an reimbursement of Expenses for the period August 27, 2010 through December 31, 2010 |
| January 31, 2011 | Committee filed its Application to Employ Blakely & Blakely, LLC as Counsel to the Official Committee of Unsecured Creditors |
| February 3, 2011 | Committee filed its Comments to Debtors' Further Motion for Order Authorizing Continued Use of Cash Collateral |
| February 11, 2011 | Court entered its Order Granting Debtors' Motion for Continued Use of Cash Collateral |
| February 14, 2011 | Court entered its Order Granting Ally Financial, Inc.'s Motion for Relief from the Automatic Stay |
| February 16, 2011 | East West Bank filed its Joint/Joinder to Debtors Opposition to Timberlake Food, Inc.'s Motion for Allowance and Immediate Payment of Administrative Expenses |
| February 17, 2011 | Court entered its Order granting Committee's Application to Employ Blakely & Blakely, LLC |
| February 28, 2011 | Creditor Debt Acquisition Group, LLC filed its Motion for Allowance and an Administrative Claims |
| March 4, 2011 | Debtors filed their Stipulation with EWB and Creditors' Committee for Continuance of Case Status Conference |

RUTTER
HOBBS
DAVIDOFF
INCORPORATED
LAWYERS

12

JOINT DISCLOSURE STATEMENT

8313.001 923883.1

| Date | Event |
|------|-------|
| March 8, 2011 | Court entered its Order Granting the Stipulation between Debtors, East West Bank and the Creditors' Committee for Continuance of Case Status Conference |
| March 10, 2011 | Court entered its Order Granting Debtors' Motion for Allowance and Immediate Payment of Administrative Expenses Under Section 503(b) |
| March 10, 2011 | Court entered its Order Granting the Debtors' Application for Compensation for Rutter Hobbs & Davidoff, Inc. |
| March 23, 2011 | Debtors' filed their Motion for Order Approving the Stalking Horse Bidder Protections Set forth in the Letter of Intent with Balmoral Advisors, LLC |
| March 24, 2011 | Court entered its Order granting the Stipulation Between Debtors and the Fan Family Trust Dated 1988 to Extend Time for Debtor to Assume, Assume and Assign, or Reject Nonresidential Real Property |
| March 30, 2011 | Debtors' filed their Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement |
| April 4, 2011 | Committee filed its Opposition to Debtors' Motion for Order Approving the Stalking Horse Bidder Protections Set forth in the Letter of Intent with Balmoral Advisors, LLC |
| April 4, 2011 | EWB filed its Conditional Opposition to Debtors' Motion for Order Approving the Stalking Horse Bidder Protections Set forth in the Letter of Intent with Balmoral Advisors, LLC |
| April 13, 2011 | Court entered its Order continuing hearing on Debtors' Motion for Order Approving the Stalking Horse Bidder Protections Set forth in the Letter of Intent with Balmoral Advisors, LLC |
| April 19, 2011 | Debtors filed their Notice of Intent to Withdraw their Motion for Order Approving the Stalking Horse Bidder Protections Set forth in the Letter of Intent with Balmoral Advisors, LLC |
| May 2, 2011 | Court entered its Order granting Debtors' Motion to Extend Exclusivity Period for Filing Chapter 11 Plan and Disclosure Statement |
| May 12, 2011 | Debtors filed Stipulation with East West Bank and Official Committee of Unsecured Creditors to Extend Terms of Current Cash Collateral Order |

JOINT DISCLOSURE STATEMENT

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001   923883.1

III.    **SUMMARY OF THE PLAN**

A.    Introduction.

Provided the Plan is supported by creditors and is confirmed by the Court, creditors can expect the following:

The Plan provides that EWB's secured claim will be allowed in the amount of $8,900,000.00, which amount shall accrue interest at six percent (6%) per annum, will be fully amortized over ten (10) years and will be all due and payable on the fifth (5th) anniversary of the Effective Date. East West Bank will receive monthly payments of $98,808.25, commencing on the first (1st) day of the first (1st) full month following the Effective Date.

Priority tax claims will be paid in full under the Plan. The claim of the Franchise Tax Board for the State of California in the amount of $452.61 will be paid in full on the Effective Date, while the claims of the Los Angeles County Tax Assessor totaling approximately $70,910.27 shall accrue interest at four percent (4%) per annum and will be fully amortized over six (6) years following the Effective Date.

Administrative priority claims will also paid in full. Allowed administrative claims other than post-petition accounts receivable incurred in the ordinary course of Debtors' business, which are projected to total approximately $1,001,620.00 as of the Effective Date, shall be paid a pro rata share of cash on hand of $125,000.00, and the balance of their allowed claims with four percent (4%) interest in monthly installments over the twelve months following Plan confirmation. The claims of post-petition ordinary course vendors (accounts payable) shall be paid in the ordinary course of business by the Reorganized Debtor in accordance with the terms of each invoice, purchase order or contract.

Some or all of the Debtors' unexpired leases and executory contracts shall be assumed upon Plan confirmation (or in the case of Custom, assumed and assigned to P&C), as identified in the Plan, with any cure payments made in accordance with Section IV.F.1.a.i, below. As set forth in the Plan, the Debtors can revise Exhibit 8a or Exhibit 8b prior to the ten (10) days before the hearing on confirmation of the Plan.

JOINT DISCLOSURE STATEMENT

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001  923883.1

1    General unsecured non-insider creditors, which the Debtors currently estimate will

2    total approximately $16,500,000.00 in allowed claims as of the Petition Date, will receive

3    payments on their claims equal to ten percent (10%) of each allowed claims in the manner

4    set forth in the Plan. The unsecured claims of the Debtors' insiders (totaling approximately

5    $5,427,451.04) receive no distribution under the Plan in consideration of a general release

6    of claims by the estates.

7    In contrast, if the Plan is not confirmed, the Case will likely be converted to Chapter 7

8    (liquidation of assets) and no creditor other than EWB will receive anything as EWB asserts

9    that it has a lien in all assets of the Debtors and the balance due in respect of its secured

10   claim likely exceeds the value of the Debtors assets in a liquidation.

11   IV.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE

12         PLAN

13         A.    What Creditors and Interest Holders Will Receive Under the Plan

14   As required by the Bankruptcy Code, the Plan classifies claims and interests in various

15   classes according to their right to priority. The Plan states whether each class of claims or

16   interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

17         B.    Unclassified Claims

18   Certain types of claims are not placed into voting classes; instead they are

19   unclassified. They are not considered impaired and they do not vote on the Plan because

20   they are automatically entitled to specific treatment provided for them in the Bankruptcy

21   Code. As such, the Debtors have not placed the following claims in a class:

22               1.    Administrative Expenses

23                     a.    11 U.S.C. §§ 503(b)(9) and 507(a)(2)-Other Than Post Petition

24                           Accounts Payable Incurred in the Ordinary Course of Business

25   Administrative expenses are claims for costs or expenses of administering the Case

26   that are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires

27   that all administrative claims be paid on the Effective Date unless a particular claimant

28   agrees to a different treatment.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001  923883.1

15

JOINT DISCLOSURE STATEMENT

1    The Debtors are not able to pay all administrative claims in full on the Effective Date.

2    Because the only alternative to the Plan appear to be a conversion to chapter 7 or a distress

3    sale of assets, which would cause a total loss to administrative claim holders, the Debtors

4    have proposed alternate treatment and believes it can, prior to the Plan confirmation

5    hearing, obtain the consents of the holders of administrative claims necessary to confirm the

6    Plan.

7    Under the Plan, administrative priority claims against the Debtors, other than post-

8    petition accounts payable incurred in the ordinary course of business, which are discussed in

9    Section IV.B.1.b (page 20) below, will receive their pro rata share of $125,000.00 ("Admin

10   Claim Fund") of cash on hand on the Effective Date, paid on the later of the Effective Date

11   or the date such claim is allowed, with the balance paid within one (1) year with interest at

12   the rate of four percent (4%) per annum.

13   The following chart lists all of the Debtors' § 507(a)(2) administrative claims (other

14   than the claims of vendors for post-petition goods and services) and their treatment under

15   the Plan:

| Name | Amount Owed | Treatment |
| --- | --- | --- |
| Rutter Hobbs & Davidoff Inc. | $335,000.00 (estimated) | A cash payment of their pro rata share of the Admin Claim Fund on the later of the Plan's Effective Date or the Court's allowance of the claim.

4% interest rate

The balance due to allowed administrative claim holders after application of the Admin Claim Fund shall accrue interest at the rate of four percent (4%) interest and fully amortized over 1 (one) year follow the Effective Date.

The Debtor shall make a monthly payment to the Plan Disbursing Agent in the amount of $66,885.40, which shall disbursed to the allowed administrative claims described in this section of the Plan on a pro rata basis. |
| Mosaic Capital, LLC | $75,000.00 (estimated) | |
| Solomon, Ross Grey & Company, LLP | $85,000.00 (estimated) | |
| Blakely & Blakely (Committee) | $65,000.00 (estimated) | |
| Office of the U.S. Trustee Fees | $15,000.00 (estimated) | |
| TOTAL | $575,000.00 (estimated) | |

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001 923883.1

| | | The monthly payment shall commence on the first day of the first full month following the Effective Date and shall be applied first to any accrued and unpaid interest and then to the principal balance due to allowed administrative claims holders. |
| --- | --- | --- |

11 U.S.C. §503(b)(9) gives vendors an administrative priority claim for "the value of any goods received by the debtor within 20 days before" the date the bankruptcy petition was filed, as long as "the goods have been sold to the debtor in the ordinary course of such Debtors' business." The following chart lists all of the Debtors' § 503(b)(9) administrative claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
| --- | --- | --- |
| Timber Lake Bankruptcy Code Section 503(b)(9) | $ 226,620.00 | Same treatment as set forth above for 507(a)(2) administrative claims other than ordinary course accounts payable. |
| Debt Acquisition Group Bankruptcy Code Section 503(b)(9) | $200,000.00[1] | |
| TOTAL | $ 426,620.00 | |

Court Approval of Fees Required:

The Court must allow all fees listed in this chart before the fees can be paid, except for fees owing to the Clerk's Office and U.S. Trustee or fees to be paid from non-Debtor sources. The professional in question must file and serve a properly noticed fee application, and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under the Plan.

//

---

[1] Creditor, Debt Acquisition Group, alleges that its claims in the amount of $200,000.00 are entitled to administrative expense treatment pursuant to Bankruptcy Code Section 503(b)(9). Debtors dispute the total amount asserted by Debt Acquisition Group. In the event, following a hearing on notice to the Debtors and such parties as is required by the Bankruptcy Code, Bankruptcy Rules and Local Rules, a final non appealable order is entered by the Court, that the claim of Debt Acquisition Group is determined to have administrative expense priority, the Plan shall be automatically amended without further order of the Court and the allowed administrative expense treatment shall be afforded the treatment set forth above.


RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

17

b.    11 U.S.C. §§ 507(a)(2)-Post Petition Accounts Payable Incurred
in the Ordinary Course of Business

Vendors providing goods and services to the chapter 11 estate are entitled to administrative expense for any unpaid balance. Because the only alternative to the Plan is a conversion to chapter 7, which would cause a total loss to administrative claim holders, the Debtors have proposed alternate treatment and believe they can obtain the consents necessary to confirm the Plan prior to the Plan confirmation hearing.

**Exhibit 4** to the Disclosure Statement shows all vendors who have provided goods or services to the Debtors after the Case was filed who have open invoices as of the hearing on Plan confirmation. The Debtors anticipate continuing to do business with some or all of these parties up to and following the Plan Confirmation hearing. The Debtors shall file an updated version of **Exhibit 4** not less than ten (10) days prior to the Plan confirmation hearing and will serve the exhibit upon all creditors listed in such exhibit. The Plan provides that the Debtors will bring current any past due balances on or before the Plan confirmation hearing and shall pay all other balances according to each invoice in the ordinary course of the Debtors' post confirmation business. The Debtors shall seek consents from such creditors prior to the confirmation hearing.

2.    Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Bankruptcy Code Section 507(a)(8). The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in regular installments of cash over a period not exceeding six (6) years from the date of the order for relief.

The following chart lists all of the Debtors' Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Los Angeles County Tax Assessor | $77,150.13 | Treatment<br>Fully amortized over six (6) years following the Effective Date. Payments of $1,109.40 per month, commencing on the first day of the first full month |

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001  923883.1

| | | following the Effective Date of the Plan. Such payments will be applied first to any unpaid interest from the Effective Date and then to the principal balance of the Tax Assessor. |
| | | Interest Rate Four percent (4%) fixed rate |
| | | Maturity Date Sixth (6th) anniversary of the Effective Date. |
| Franchise Tax Board of the State of California | $62.99 | Paid in full on the Effective Date. |
| TOTAL | $ 77,213.12 | |

automatically amended without further order of the Court and the allowed administrative expense treatment shall be afforded the treatment set forth above.

### C.    Classified Claims and Interests

#### 1.    Class of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following chart lists the classes containing the Debtors' secured pre-petition claims and their treatment under the Plan:

//

//

//

//

//

//

//

//

//

//

//

//

//

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

19

JOINT DISCLOSURE STATEMENT

8313.001 923883.1

## Secured Claim

| | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of: East West Bank <br><br> Total Amount of Claim = $8,728,895.26 (per Proof of Claim, plus post-petition interest, costs and attorneys' fees) | N | Y <br><br> (Creditor in this class is entitled to vote on the Plan) | **Allowed Claim** <br> East West Bank ("EWB") shall have an allowed secured claim, inclusive of all principal, interest, costs and attorneys' fees in the amount of $8,900,000.00 <br><br> **EWB Lien** <br> Notwithstanding any other term of the Plan or any other document, the Class 1 claim of EWB shall be secured by a first priority lien and security interest in favor of EWB encumbering all assets of the Reorganized Debtor (and the Debtor, as the case may be), which shall be senior in all respects to all other interests and liens affecting such assets (the "EWB Lien"). The granting, attachment and perfection of the EWB Lien shall be immediately valid, enforceable, irrevocable and effective upon and by virtue of the entry of the Confirmation Order. EWB shall not be required to take any act with respect to the validity, granting, attachment or perfection of the EWB Lien; provided, however, EWB, if it so chooses in its discretion, may take any act or require an act to be taken with respect to evidencing the validity, granting, attachment or perfection of the EWB Lien. <br><br> **Treatment/Payment** <br> Amortized over ten (10) years following the Effective Date all due and payable on the fifth (5th) anniversary of the Effective Date. <br><br> Payments of $98,808.25 per month, commencing on the first day of the first full month following the Effective Date of the Plan. Such payments will be applied first to any unpaid interest from the Effective Date and then to the principal balance of the EWB Class 1 Claim. <br><br> **Interest Rate** <br> Six percent (6 %) fixed rate <br><br> **Maturity Date** <br> Fifth (5th) anniversary of the Effective Date <br><br> **Retention of Guarantees** <br> EWB shall retain the guarantees of Michael Bennish, Daniel Bennish, Howard Bennish, Stafford Bennish and Sotello Properties, LLC, which are unaffected by the Plan and EWB shall retain the liens securing such guarantees, provided however that any and all defaults which exist with respect to such guarantees, security agreements or deed of trust shall be deemed cured as of the entry of an order of the Bankruptcy Court confirming the Plan. |

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

8313.001  923883.1

## 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims. The Debtors are not aware of any claims that would qualify as Sections 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims under the Plan.

## 3.    Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a). **Exhibit 5** consists of a chart showing all unsecured claims against the estate. The following chart identifies the Plan's treatment of the classes containing all of the Debtors' general unsecured claims:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Claims:<br>All General Unsecured Claims-Other than Claims Held by the Debtors' Insiders<br><br>Amount of all claims Approximately 16,500,000.00 (per Schedule F undisputed claims plus filed claims, net of claims to which Debtors believe objections will be sustained)<br><br><br>Total: $16,500,000.00 (Approximately) | N | Y<br><br>(Allowed claims in this class are entitled to vote on the Plan) | Treatment<br>The allowed Class 2 claim holders shall receive distributions which in the aggregate equal ten percent (10%) of each allowed claim.<br><br>Interest<br>Class 2 claims shall not accrue interest.<br><br>Payment<br>Payments shall be made in quarterly distributions, amortized over seven (7) years and shall be all due and payable in five (5) years following the Effective Date.<br><br>Debtors shall make a quarterly payment to the Plan Disbursing Agent in the amount sufficient to provide for the Class 3 claim holders' distribution.<br><br>Start Date<br>The first quarterly payment shall be made on the first day of the third (3rd) full month following the Effective Date. No payment here if any |

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001 923883.1

| | | | | default in payment to a senior class<br><u>Maturity</u><br>The date which is the five (5) years following the Court's entry of its Order confirming the Plan. |
|---|---|---|---|---|

| <u>CLASS<br>#</u> | <u>DESCRIPTION</u> | <u>INSIDER</u><br><u>(Y/N)</u> | <u>IMPAIRED</u><br><u>(Y/N)</u> | <u>TREATMENT</u> |
|---|---|---|---|---|
| 3 | <u>Claims:</u><br>All General Unsecured Claims of the Debtors' Insiders<br><br><u>Amount of all claims</u><br>Approximately $5,427,451.04 (per Schedule F undisputed claims plus filed claims)<br><br>Total: $5,427,451.04 | Y | Y<br><br>(Allowed claims in this class are entitled to vote on the Plan) | <u>Treatment</u><br>The allowed Class 3 claim holders shall receive no cash distribution in respect of their allowed unsecured claims.<br><br>In consideration for the waiver, release and withdrawal of their priority wage claims, general unsecured claims against the estate and any other claims they may have against the estate, including administrative wage claims, if any, the order confirming the Plan shall constitute a general release of all claims of the Debtors, the bankruptcy estates of Debtors and any party who could assert claims belonging to the Debtors' or their bankruptcy estates, including but not limited to the Committee against Debtors' Insiders. |

### 4.    Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtors.  The following chart identifies the Plan's treatment of the class of interest holders:

| <u>CLASS<br>#</u> | <u>DESCRIPTION</u> | <u>INSIDER</u><br><u>(Y/N)</u> | <u>IMPAIRED</u><br><u>(Y/N)</u> | <u>TREATMENT</u> |
|---|---|---|---|---|
| 4 | All Equity Interests in Debtor –<br><br>Daniel Bennish  - 25%<br><br>Howard Bennish - 25%<br><br>Michael Bennish - 25%<br><br>Stafford Bennish - 25% | Y | Y | As of the Effective Date, the pre-petition interest in the Debtors shall be cancelled,  In consideration of the post-confirmation services of Michael Bennish and Daniel Bennish to the Reorganized Debtor, the stock in the Reorganized Debtor shall be vested as follows:<br><br>Michael Bennish = 70%<br><br>Daniel Bennish = 30% |

RUTTER
HOBBS
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001  923883.1

D.   <u>Means of Effectuating the Plan</u>

1.   Funding for the Plan and Post Confirmation Management

The Plan will be funded by cash on hand as of the Effective Date and the Reorganized Debtor's post confirmation business operations and earnings.  The Reorganized Debtor's post confirmation Board of Directors ("Board") shall be comprised of Michael Bennish, Daniel Bennish and Bruce Weinstein.  The Reorganized Debtor's officers shall be Michael Bennish, CEO (annual salary ($_____); Bruce Weinstein, CFO (annual salary $_____); and Daniel Bennish, COO (annual salary $_____).  The Debtors' officers shall also be entitled to ordinary and customary medical and automobile benefits, expense reimbursement and such bonuses as may be approved by the Board.

2.   Disbursing Agent

The Reorganized Debtor will act as its own disbursing agent ("Plan Disbursing Agent'), with the assistance of BMS, Inc., which will provide "Trustworks" software and software support through a software licensing agreement which will facilitate the calculation and distribution of the pro-rata share for each general unsecured claimant.  BMS, Inc. is bonded.  The software licensing agreement will be at no cost to Reorganized Debtor but includes a stipulation that Reorganized Debtor deposit the funds to be distributed with J.P. Morgan Chase Bank, N.A. ("Chase").  Chase is also bonded.  BMS, Inc. will also cause the payments to be mailed to each recipient at no extra cost, but will pass through the expense of postage to Reorganized Debtor.

3.   Objections to Claims

Pursuant to 11 U.S.C. § 502(a), any party in interest may assert objections to claims.  Objections to claims shall be served and filed no later than one hundred and twentieth (120) day following the Effective Date. Such deadline is extended by the Court by motion filed prior to the expiration of the deadline.  Attached as **Exhibit 5** hereto is a claims chart, which identifies all of the Debtors' scheduled claims, and all proofs of claim which have been filed[2] against the Debtors. As provided by Section 502(c) of the Bankruptcy Code, the

---

[2] All filed claims are subject to objections by Debtors as set forth herein.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

JOINT DISCLOSURE STATEMENT

8313.001 923883.1

1    Court may estimate any contingent or unliquidated disputed claim for purposes of

2    confirmation of the Plan. The Court shall retain jurisdiction over the Debtors, the

3    Reorganized Debtor and the Case to resolve such objections to claims following the

4    confirmation of the Plan.

5         Nothing contained in the Plan shall constitute a waiver or release by the Debtors of

6    any rights of setoff or recoupment, or of any defense, they may have with respect to any

7    claim. The Disbursing Agent will withhold from property to be distributed under the Plan

8    and will place in reserve a sufficient amount of cash to be distributed on account of claims

9    that are disputed and have not been allowed as of the date of distribution to creditors

10   ("Disputed Claims") of any particular class as if such claims were allowed in full.

11        4.    Interest Pending Allowance of Claims

12        Except as specifically provided for in the Plan, in the order confirming the Plan, or in

13   some other order of the Court, interest shall not accrue on claims and no holder of a claim

14   shall be entitled to interest accruing on or after the Petition Date on any claim. Nothing set

15   forth herein shall limit or impair the accrual of interest provided for the Class 1 secured

16   claim.

17        To the extent the Debtors or any other party in interest objects to the allowance of

18   any claim, nothing in the Plan or herein shall be deemed to imply or create for the holders

19   of any Disputed Claims any entitlement to receive interest upon the allowed amount of any

20   such Disputed Claims as a result, inter alia, of the delay in payment of such claims, except as

21   expressly stated in the treatment pursuant to the Plan.

22        5.    Distributions to be Made Pursuant to the Plan

23        Distributions to be made under the Plan on account of any claim shall be made as

24   promptly as practicable. Distributions to be made by the Disbursing Agent under the Plan

25   shall be made by check drawn on a domestic bank or by wire transfer, at the sole election of

26   the Disbursing Agent.

27        Except as otherwise agreed to by the Disbursing Agent in writing, distributions to be

28   made to holders of allowed claims pursuant to the Plan may be delivered by regular mail,

RUTTER
HOBBS
DAVIDOFF
INCORPORATED
L A W Y E R S          8313.001  923883.1

24

JOINT DISCLOSURE STATEMENT

1    postage prepaid, to the address shown in the Debtors' schedules, as they may from time to

2    time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is

3    stated in a proof of claim duly filed with the Court, to such address.

4        Checks issued by the Reorganized Debtor or the Disbursing Agent to pay allowed

5    claims shall be null and void if not negotiated within 60 days after the date of issuance

6    thereof. Requests for reissuance of any check shall be made to the Reorganized Debtor by

7    the holder of the allowed claim to whom such check originally was issued, prior to the

8    expiration of 120 days from the date of issuance of such check. After such date, the claim

9    shall be deemed disallowed and the monies otherwise payable on account of such claim

10   shall revest in the Reorganized Debtor free and clear of all claims and interests. The Debtors

11   shall not be required to make any distributions less than $10.00 but any interim

12   distributions not so made shall be segregated with later distributions which may be due for

13   calculating this amount.

14       In connection with the Plan and any instruments issued in connection therewith, the

15   Reorganized Debtor shall comply with all applicable withholding and reporting

16   requirements imposed by any federal, state or local taxing authority, and all distributions

17   under the Plan shall be subject to any such withholding or reporting requirements.

18       6.    Exculpations and Releases

19       To the maximum extent permitted by law, none of the Debtors, the Reorganized

20   Debtor, the estates, the Disbursing Agent, nor any of their officers, directors, shareholders,

21   employees, agents, representatives, or the professionals employed or retained by any of

22   them, whether or not by Court order (each, a "Released Person"), shall have or incur

23   liability to any person or entity for an act taken or omission made in connection with or

24   related to the case, the formulation of the Plan, the Disclosure Statement, or a contract,

25   instrument, release, or other agreement or document created in connection therewith, the

26   solicitation of acceptances for or confirmation of the Plan, or the consummation and

27   implementation of the Plan and the transactions contemplated therein. Each Released

28

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001  923883.1

25

JOINT DISCLOSURE STATEMENT

1  Person shall in all respects be entitled to reasonably rely on the advice of counsel with

2  respect to its duties and responsibilities under the Plan.

3              7.    Injunctions

4          The occurrence of the Effective Date after the entry of the Confirmation Order shall

5  enjoin the prosecution against the Debtors, the Reorganized Debtor, the estates, or their

6  property, whether directly, derivatively or otherwise, of any claim, obligation, suit,

7  judgment, damage, demand, debt, right, cause of action, liability or interest released,

8  discharged or terminated pursuant to the Plan.

9          Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all

10  entities that have held, currently hold or may hold a claim or other debt or liability that is

11  discharged or an interest or other right of an equity security holder that is terminated

12  pursuant to the terms of the Plan are permanently enjoined from taking any of the following

13  actions against the Debtors, the Reorganized Debtor, the estates, or their property on

14  account of any such discharged claims, debts or liabilities or terminated interests or rights:

15  (i) commencing or continuing, in any manner or in any place, any action or other

16  proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment,

17  award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv)

18  asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability

19  or obligation due to the Debtors; and (v) commencing or continuing any action in any

20  manner, in any place that does not comply with or is inconsistent with the provisions of the

21  Plan.

22          E.    Risk Factors

23          The primary risk of implementing the Plan is the failure of the Reorganized Debtor to

24  achieve the sales and expense goals and equal or surpass the business performance

25  regarding post confirmation operations as set forth in Exhibits 6 and 7 hereto, which consist

26  of Debtors' projected cash flow projections and projected balance sheet as of the Effective

27  Date and during the term of the Plan.

28  //


RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001  923883.1

JOINT DISCLOSURE STATEMENT

1    F.    <u>Other Provisions of the Plan</u>

2         1.    Executory Contracts and Unexpired Leases

3              a.    Assumptions

4                   i.    Schedule of Assumed Agreements.

5    On the Effective Date, P&C and Custom will assume the executory contracts and

6    unexpired leases identified in **Exhibit 8a** (P&C) and **Exhibit 8b** (Custom) and the assumed

7    contracts and leases of Custom shall be assigned to P&C. The Confirmation Order, subject

8    to the occurrence of the Effective Date, will constitute a Court order approving the

9    assumption, on the Effective Date, of the executory contracts and unexpired leases identified

10   in **Exhibit 8a** and **Exhibit 8b** and the assignment of all executory contracts and unexpired

11   leases in **Exhibit 8b** to P&C, Reorganized Debtor.

12                  ii.    Cure Payments.

13   Exhibit 8a and Exhibit 8b will also identify the amounts, if any, that the Debtors

14   believe would be required to pay under Bankruptcy Code Sections 365(b)(1)(A) or (B) in

15   order to cure any defaults under each such executory contract and unexpired lease to be

16   assumed in accordance with the Plan. Any and all monetary defaults and "cure" amounts to

17   be paid under any executory contract or unexpired lease to be assumed under the Plan will

18   be satisfied by the Disbursing Agent in one of the following ways: (a) payment of the

19   monetary default or "cure" amount, as set forth in **Exhibit 8a** and **Exhibit 8b** for the

20   executory contract or unexpired lease to be assumed, to the non-debtor counter-party, in

21   cash, on, or as soon as reasonably practicable after, the Effective Date; (b) satisfaction of

22   any alternative monetary terms which the Debtor and the non-debtor counter party to such

23   executory contract or unexpired lease agree upon; or (c) payment of any monetary default

24   amounts or "cure" amounts which may be allowed by order of this Court.

25                  iii.    Objections to Assumption or Proposed Cure Payments.

26   Any person who is a party to an executory contract or unexpired lease that will be

27   assumed under the Plan and who either contends that there exists a default requiring cure

28   payments, or otherwise objects to the contemplated assumption <u>must</u> file with the Court and

RUTTER
HOBBS ▣
DAVIDOFF
INCORPORATED
LAWYERS

27

JOINT DISCLOSURE STATEMENT

8313.001 923883.1

1    serve upon the Debtors and the Debtors' counsel a written statement, together with

2    supporting declaration stating the basis for its objection and any supporting documentation

3    for such objection. Such statement, declaration and documentation must be filed and

4    served not later than 10 days before the date of the Plan confirmation hearing. Any person

5    who fails to timely file and serve such a statement and declaration will be deemed to have

6    waived any and all objections to both the proposed assumption and the proposed cure

7    amount in connection with such assumption.

8        The Disbursing Agent shall not be required to make any payment of any proposed or

9    allowed cure amounts until that date which is 30 days after entry of a final order resolving

10   any objection or other dispute regarding: (a) the proposed cure amount under the executory

11   contract or unexpired lease which the Debtors seek to assume; (b) whether the Debtors or

12   Reorganized Debtor have provided adequate assurance of future performance under such

13   executory contract or unexpired lease; or (c) any other matter pertaining to a proposed

14   assumption, the dispute and approving the assumption.

15            b.    Rejections

16       To the extent that an executory contract or unexpired lease is not assumed on the

17   Effective Date, all such executory contracts and unexpired leases shall be deemed rejected.

18   The Confirmation Order, subject to the occurrence of the Effective Date, shall constitute an

19   Order approving the Debtors' rejection of all such executory contracts and unexpired leases.

20       THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING

21   FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL BE

22   30 DAYS AFTER DATE OF ENTRY OF THE CONFIRMATION ORDER. Any claim based on

23   the rejection of an executory contract or unexpired lease will be barred if the proof of claim

24   is not timely filed, unless the Court orders otherwise.

25            2.    Retention of Jurisdiction

26       After confirmation of the Plan and occurrence of the Effective Date, in addition to

27   jurisdiction which exists in any other court, the Bankruptcy Court will retain such

28   jurisdiction as is legally permissible including for the following purposes:

RUTTER
HOBBS ⬛
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001 923883.1

28
JOINT DISCLOSURE STATEMENT

1           a.     To resolve any and all disputes regarding the operation and

2 interpretation of the Plan and the Confirmation Order;

3           b.     To determine the allowability, classification, or priority of claims

4 and interests upon objection by the Debtors, the Reorganized Debtor, or by other parties in

5 interest with standing to bring such objection or proceeding;

6           c.     To determine the extent, validity and priority of any lien asserted

7 against property of the Debtors or property of the Debtors' estates;

8           d.     To construe and take any action to enforce the Plan, the

9 Confirmation Order, and any other order of the Court, issue such orders as may be necessary

10 for the implementation, execution, performance, and consummation of the Plan, the

11 Confirmation Order, and all matters referred to in the Plan, the Confirmation Order, and to

12 determine all matters that may be pending before the Court in this case on or before the

13 Effective Date with respect to any person or entity related thereto;

14           e.     To determine (to the extent necessary) any and all applications

15 for allowance of compensation and reimbursement of expenses of professionals for the

16 period on or before the Effective Date;

17           f.     To determine any request for payment of administrative

18 expenses;

19           g.     To determine all applications, motions, adversary proceedings,

20 contested matters, and any other litigated matters instituted during the pendency of this

21 case whether before, on, or after the Effective Date;

22           h.     To determine such other matters and for such other purposes as

23 may be provided in the Confirmation Order.

24           i.     To modify the Plan under Section 1127 of the Bankruptcy Code

25 in order to remedy any apparent defect or omission in the Plan or to reconcile any

26 inconsistency in the Plan so as to carry out its intent and purpose;

27           j.     Except as otherwise provided in the Plan or the Confirmation

28 Order, to issue injunctions to take such other actions or make such other orders as may be

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

1  necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or

2  the execution or implementation by any person or entity of the Plan or the Confirmation

3  Order;

4          k.     To issue such orders in aid of consummation of the Plan or the

5  Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with

6  respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or

7  Federal Rules of Bankruptcy Procedure; and

8          l.     To enter a final decree closing the Case.

9      3.     General Release of Claims Against Debtors' Insiders

10  The Debtors' Insiders have claims against the Debtors in excess of $5,500,000.00 as

11  set forth in **Exhibit 9** and in Schedule F filed with the bankruptcy court by the Debtors.

12  Michael and Daniel Bennish are both critical to the Debtors' business operations and

13  successful reorganization as together they oversee, among other things, all purchasing, sales,

14  production, warehousing, shipping and general and administrative tasks of the Debtors. The

15  Debtors paid the Insiders salaries and repaid a portion of the loans owed by the Debtors' to

16  the Insiders in the year prior to the Petition Date. One or more of these payments may give

17  rise to transfer avoidance claims against the Insiders. The Insiders dispute that any such

18  claims exist and believe that such payments were in the ordinary course of business and are

19  defensible. If the Insiders were sued by the estates, Michael Bennish and Daniel Bennish

20  would no longer provide services to the Debtors, thereby making liquidation of the Debtors

21  likely and eliminating any recovery for administrative, priority or general unsecured

22  creditors.

23  In order to retain the services of Michael and Daniel Bennish and allow the

24  reorganization to proceed, Debtors' counsel and counsel for the Insiders have negotiated an

25  resolution pursuant to which the Insiders will waive their claims against the Debtors and

26  forego a distribution of up to approximately $550,000.00 in exchange for a general release

27  of all claims against the Insiders by the Debtors, their estates and to the broadest extent

28  possible, any person or entity who could assert a claim against the Insiders which arises

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

30

JOINT DISCLOSURE STATEMENT

8313.001 923883.1

1   under or is related to the these chapter 11 cases.  Accordingly, in consideration of the

2   waiver, release and withdrawal of their general unsecured claims against the estate by the

3   Insiders, the entry of the Confirmation Order shall release, remise and forever discharge

4   Michael Bennish, Daniel Bennish, Howard Bennish, Stafford Bennish, the Bennish Family

5   Trust dated July 3, 1997, the Stafford B. Bennish and Pamela R. Bennish Living Trust dated

6   February 12, 1987 as Amended and Restated, Falkirk Sales Corporation and Sotello

7   Properties, LLC, their past and present agents, partners, partnerships, spouses,

8   representatives, affiliates, assigns, heirs, successors in interest (collectively, the "Released

9   Parties") from any and all claims, demands or cause or causes of action belonging to the

10  Debtors or the bankruptcy estates of Debtors, or arising under or related to these chapter 11

11  Cases, or which any party could assert on behalf of or in the place the Debtors' or their

12  bankruptcy estates, including but not limited to the Committee which have or may be

13  asserted against the Released Parties and which arises out of, is connected with or is

14  incidental to the dealings between the Released Parties and the Debtors.

15        This general release of all estate claims against the Released Parties is immediately

16  valid, enforceable, irrevocable and effective upon and by virtue of the entry of the

17  Confirmation Order.

18        G.    <u>Tax Consequences of Plan</u>

19        CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY

20  AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS,

21  ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is

22  intended solely for the purpose of alerting readers about possible tax issues the Plan may

23  present to the Debtors.  The Debtors CANNOT and DO NOT represent that the tax

24  consequences contained below are the only tax consequences of the Plan because the Tax

25  Code embodies many complicated rules which make it difficult to state completely and

26  accurately all of the tax implications of any action.

27  //

28  //


RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

8313.001 923883.1

31

1   The Debtors do not anticipate that confirmation of the Plan will have a significant or

2   material effect on their tax liability.  The Debtors make no representations regarding the

3   potential tax consequences to creditors.

4   V.    CONFIRMATION REQUIREMENTS AND PROCEDURES

5   PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

6   SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

7   CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion

8   is intended solely for the purpose of alerting readers about basic confirmation issues, which

9   they may wish to consider, as well as certain deadlines for filing claims. The Debtors

10   CANNOT and DO NOT represent that the discussion contained below is a complete

11   summary of the law on this topic.

12   Many requirements must be met before the Court can confirm the Plan.  Some of the

13   requirements include that the Plan must be proposed in good faith, acceptance of the Plan,

14   whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7

15   liquidation, and whether the Plan is feasible.  These requirements are not the only

16   requirements for confirmation.

17   A.    Wind Up of Custom Processors, Inc.

18   Following the Effective Date, when prudent, Michael Bennish, or such persons as he

19   authorizes, shall be permitted (but not directed) to undertake any and all steps necessary to

20   wind up the affairs of Custom.  Such acts may include the filings of final state and federal

21   tax returns and such documents with the Office of the California Secretary of State as are

22   necessary to fully and finally wind up the affairs of Custom.  Such actions shall not alter,

23   limit or in any way affect the obligations of the Reorganized Debtor to pay creditors as set

24   forth in the Plan.

25   B.    Who May Vote or Object

26   1.    Who May Object to Confirmation of the Plan

27   Any party in interest may object to the confirmation of the Plan, but, as explained

28   below, not everyone is entitled to vote to accept or reject the Plan.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

8313.001 923883.1

32

JOINT DISCLOSURE STATEMENT

### 2. Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

#### a. What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, as will any non-contingent, undisputed and liquidated scheduled claim, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE was February 28, 2011 for non-governmental and governmental entities (because the date that is 180 days after the order for relief was entered in these cases, February 23, 2011, is earlier than the bar date set by the Court). A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtors' schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

#### b. What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

//

JOINT DISCLOSURE STATEMENT

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

8313.001 923883.1

In this case, the Debtors believe that Classes 1 through 4 are impaired and Classes 1 and 2 are entitled to vote to accept or reject the Plan. Parties who dispute the Debtors' characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Debtors have incorrectly characterized the class.

### 3.    Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

34

JOINT DISCLOSURE STATEMENT

8313.001  923883.1

1   voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan

2   when at least two-thirds (2/3) in amount of the interest-holders of such class which actually

3   voted, voted to accept the Plan.

4
### 7.    Treatment of Nonaccepting Classes

5       As noted above, even if <u>all</u> impaired classes do not accept the Plan, the Court may

6   nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required

7   by the Bankruptcy Code. The process by which nonaccepting classes are forced to be bound

8   by the terms of the Plan is commonly referred to as "cramdown." The Bankruptcy Code

9   allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it

10   meets all consensual requirements except the voting requirements of 1129(a)(8) and if the

11   Plan does not "discriminate unfairly" and is "fair and equitable" towards each impaired class

12   that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable

13   case law.

14
### 8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es)

15       The Debtors will request cramdown on any impaired classes which do not vote to

16   accept the Plan.

17
### C.    Liquidation Analysis

18       Another confirmation requirement is the "Best Interest Test", which requires a

19   liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an

20   impaired class and that claimant or interest holder does not vote to accept the Plan, then

21   that claimant or interest holder must receive or retain under the Plan property of a value not

22   less than the amount that such holder would receive or retain if the Debtors were liquidated

23   under Chapter 7 of the Bankruptcy Code.

24       The Debtors therefore believe that unsecured creditors will undoubtedly receive more

25   under the Plan than they would receive in a Chapter 7 liquidation of the Debtors.

26       In a Chapter 7 case, the Debtors' assets are usually sold by a Chapter 7 trustee.

27   Secured creditors are paid first from the sales proceeds of properties on which the secured

28   creditor has a lien. Administrative claims are paid next. Next, priority claims are paid in

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001 923883.1

35

JOINT DISCLOSURE STATEMENT

1  full and finally general unsecured creditors are paid from any remaining sales proceeds.

2  Unsecured creditors with the same priority share in proportion to the amount of their

3  allowed claim in relationship to the amount of total allowed unsecured claims. Finally,

4  interest holders receive the balance that remains after all creditors are paid, if any.

5       For the Court to be able to confirm this Plan, the Court must find that all creditors

6  and interest holders who do not accept the Plan will receive at least as much under the Plan

7  as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains

8  that this requirement is met here.

9       Below is a demonstration, in balance sheet format, that all creditors and interest

10  holders will receive at least as much under the Plan as such creditor or interest holder would

11  receive under a Chapter 7 liquidation.  (See Exhibit 6 (projected balance sheet covering the

12  final six (6) months of 2011) for a detailed explanation of how the following assets are

13  valued.)  This information is provided by Michael Bennish, the Debtors' President.

14  **ASSETS VALUE AT LIQUIDATION  AS OF MAY 31, 2011**

15

16  CURRENT ASSETS
a.  Cash on hand                       $ 25,000.00

17  b.  Accounts receivable            $637,282.71
c.  Inventories                      $175,259.43

18

19      TOTAL CURRENT ASSETS      $

20  FIXED ASSETS
a.  Machinery & equipment

21      TOTAL FIXED ASSETS         $500,000.00

22  OTHER ASSETS                  $0.00

23  a.  Customer list                $0.00
b.  Other intangibles          $

24

25      TOTAL OTHER ASSETS       $

26                        =========

27  **TOTAL ASSETS AT LIQUIDATION VALUE**   $1,337,572.14

28  **Less:**                        $9,300,000.00
Secured creditor's recovery       (estimated)

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

JOINT DISCLOSURE STATEMENT

8313.001 923883.1

| | | |
|---|---|---|
| 1 | **Less:** Chapter 7 trustee fees | $ |
| 2 | **Less:** | $ |
| 3 | Chapter 7 administrative expenses | $ |
| 4 | **Less:** Chapter 11 administrative expenses/sales tax/trade accounts payable | $ |
| 5 | | |
| 6 | **Less:** Priority claims, | $ N/A |
| 7 | excluding administrative expense claims | ========= |
| 8 | **Less:** Debtors' claimed exemptions | $ |

9   **TOTAL COSTS: $**

10   (1) Balance for unsecured claims

11

12   (2) Total amt. of unsecured claims (incl. lease obligations of
$_____ )

13

14   % OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR

15   RETAIN IN A CH. 7 LIQUIDATION: = 0.00%

16

17   % OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN

18   UNDER THIS PLAN:      = 10.00%

19

20   Below is a demonstration, in tabular format, that all creditors and interest holders

21   will receive at least as much under the Plan as such creditor or holder would receive under a

22   Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION | PAYOUT PERCENTAGE UNDER THE PLAN |
|---|---|---|
| Administrative Claims-503(b)(1) | 0% | 100% |
| Reclamation Claims-503(b)(9) | 0% | 100% |
| Priority Tax Claims-507(a)(8) | 0% | 100% |

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

8313.001  923883.1

| Class 1 - Secured (EWB) | 14% | 100% |
|---|---|---|
| Class 2 – General Unsecured (Non Insiders) | 0% | 10% |
| Class 3 - General Unsecured-(Insiders) | 0% | 0% |
| Class 4 - Interest Holders | 0% | 0% |

### D.   Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtors will have enough cash on hand on the Effective Date to pay all the claims and expenses which are entitled to be paid on such date. The Debtors maintain that this aspect of feasibility is satisfied as the Debtors will have sufficient funds on hand to pay all cure payments and fees due to the Office of the United States Trustee and will have the consents of administrative claim holders and the ability to pay such claims within one year from confirmation.

The second aspect considers whether the Debtors will have enough cash over the life of the Plan to make the required Plan payments. Attached hereto as part of **Exhibit 6** is a cash flow statement reflecting Debtors' projected cash flow over the last six (6) months of 2012. Attached hereto as part of **Exhibit 7** is a projected cash flow statement reflecting the cash flow over the term of the Plan of after January 1, 2012.

## VI.   EFFECT OF CONFIRMATION OF PLAN

### A.   Discharge

The Debtors will receive a discharge under the Plan pursuant to and in accordance with the provisions of Section 1141 of the Bankruptcy Code.

//

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

JOINT DISCLOSURE STATEMENT

8313.001  923883.1

1

    B.    Revesting of Property in the Reorganized Debtor

2          Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of

3   the property of the estates in the Reorganized Debtor.  In addition, on the Effective Date, all

4   of the claims against and/or interests in third parties that constitute property of the estate

5   shall be revested in the Reorganized Debtor.

6

    C.    Modification of Plan

7          The Debtors may modify the Plan at any time before confirmation.  However, the

8   Court may require a new disclosure statement and/or revoting on the Plan.

9          The Debtors may also seek to modify the Plan at any time after confirmation only if

10  (1) the Plan has not been substantially consummated and (2) the Court authorizes the

11  proposed modifications after notice and a hearing.

12

    D.    Post-Confirmation Status Report

13         Within 120 days of the entry of the order confirming the Plan, the Debtors shall file a

14  status report with the Court explaining what progress has been made toward consummation

15  of the confirmed Plan.  The status report shall be served on the United States Trustee and

16  those parties who have requested special notice after the Effective Date.  Further status

17  reports shall be filed every 120 days and served on the same entities.

18

    E.    Quarterly Fees

19         Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be

20  paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees

21  accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States

22  Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of

23  an order of dismissal or conversion to chapter 7.

24

    F.    Post-Confirmation Conversion/Dismissal

25         A creditor or party in interest may bring a motion to convert or dismiss the Case

26  under § 1112(b) after the Plan is confirmed if there is a default in performing the Plan.  If

27  the Court orders the Case converted to Chapter 7 after the Plan is confirmed, then all

28  property that had been property of the Chapter 11 estates, and that has not been disbursed

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

39

JOINT DISCLOSURE STATEMENT

8313.001  923883.1

1  pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be

2  reimposed upon the revested property, but only to the extent that the Court did not

3  previously authorize relief from stay during the Case.

4       The order confirming the Plan may also be revoked under very limited circumstances.

5  The Court may revoke the order if the order of confirmation was procured by fraud and if

6  the party in interest brings an adversary proceeding to revoke confirmation within 180 days

7  after the entry of the order of confirmation.

8       **G.    Final Decree**

9       Once the estate has been fully administered as referred to in Bankruptcy Rule 3022,

10  the Debtors or other party as the Court shall designate in the order confirming the Plan,

11  shall file a motion with the Court to obtain a final decree to close the Case.

12

13  Dated: _____, 2011          P&C Poultry Distributors, Inc.

14

15                                      By: _____

16                                          Michael Bennish, Owner

17  Dated: _____, 2011          Custom Processors, Inc.

18

19                                      By: _____

20  Presented By:                           Michael Bennish, Owner

21  RUTTER, HOBBS & DAVIDOFF
    INCORPORATED

22

23  By: _____
        Brian L. Davidoff

24  Attorney for Debtors and Debtors-in-Possession,
    P&C Poultry, Inc. and Custom Processors, Inc.

25

26

27

28

RUTTER
HOBBS ■
DAVIDOFF
INCORPORATED
LAWYERS

                        40
               JOINT DISCLOSURE STATEMENT
8313.001  923883.1

## DECLARATION OF MICHAEL BENNISH

I, Michael Bennish, hereby declare:

1.     I am the Chief Executive Officer of P&C Poultry Distributors, Inc., and Custom Processors, Inc., the debtors and debtors-in-possession herein.  Unless otherwise set forth herein, I have personal knowledge of the facts set forth herein and, if called to testify, I could and would competently testify thereto.

2.     I make this declaration in support of this disclosure statement ("Disclosure Statement") which describes the Debtors' Plan of Reorganization.

3.     To the best of my knowledge, information and belief, all of the information contained in this Disclosure Statement is truthful and accurate.

I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this __ day of June, 2011, in City of Industry, California.

_____
MICHAEL BENNISH

RUTTER
HOBBS
DAVIDOFF
INCORPORATED
LAWYERS

8313.001  923883.1

41
JOINT DISCLOSURE STATEMENT

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1901 Avenue of the Stars, Suite 1700, Los Angeles, California 90067

A true and correct copy of the foregoing document described will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:
**JOINT DISCLOSURE STATEMENT DESCRIBING JOINT CHAPTER 11 PLAN OF REORGANIZATION OF P&C POULTRY DISTRIBUTERS, INC. AND CUSTOM PROCESSORS, INC.** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 20, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒   Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On June 20, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

VIA OVERNITE EXPRESS
Honorable Peter Carroll
United States Bankruptcy Court
255 East Temple Street
Suite 1534
Los Angeles, CA  90012

VIA U.S. MAIL
Michael Bennish, Chief Executive Officer
P&C Poultry Distributors, Inc.
Custom Processors, Inc.
1100 John Reed Court
City of Industry, California 91745

VIA U.S. MAIL
OUST
Russell Clementson, Esq.
Office of the United States Trustee
725 South Figueroa Street, 26th Floor
Los Angeles, California 90071

VIA U.S. MAIL
COUNSEL FOR EAST WEST BANK
Alexandra Rhim, Esq.
Buchalter Nemer
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457

VIA U.S. MAIL
COUNSEL FOR CREDITORS' COMMITTEE
Ronald A. Clifford, Esq,
Blakely & Blakely LLP
2 Park Plaza , Suite 400
Irvine, California 92614

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 20, 2011 | Nikki Shlosser | /s/ Nikki Shlosser |
|---|---|---|
| Date | Type Name | Signature |

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001  923883.1

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Sara Chenetz on behalf of Creditor Timberlake Foods
chenetz@blankrome.com, chang@blankrome.com

Ronald Clifford on behalf of Attorney Blakeley & Blakeley LLP
rclifford@blakeleyllp.com

Jeffrey S Goodfried on behalf of Creditor Debt Acquisition Group, LLC
jgoodfried@perkinscoie.com

Bernard J Kornberg on behalf of Creditor Ally Financial, Inc., fka GMAC, Inc.
bjk@severson.com

Kenneth G Lau on behalf of U.S. Trustee United States Trustee (LA)
kenneth.g.lau@usdoj.gov

Craig A Loren on behalf of Creditor Debt Acquisition Group, LLC
aloren@debtacquisitiongroup.com,
bschwab@debtacquisitiongroup.com;jsarachek@debtacquisitiongroup.com

Laura E Lynch on behalf of Creditor Co-West Commodities
llynch@mohlaw.net

David L. Neale on behalf of Creditor Lawrence Wholesale, LLC
dln@lnbrb.com

Queenie K Ng on behalf of U.S. Trustee United States Trustee (LA)
queenie.k.ng@usdoj.gov

D Andrew Phillips on behalf of Creditor Timberlake Foods
aphillips@mitchellmcnutt.com, dharwell@mitchellmcnutt.com

Rosamond H Posey on behalf of Creditor Timberlake Foods
rposey@mitchellmcnutt.com

J Alexandra Rhim on behalf of Creditor East West Bank
arhim@buchalter.com, smartin@buchalter.com

James R Selth on behalf of Interested Party Courtesy NEF
jim@wsrlaw.net, charles@wsrlaw.net

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

JOINT DISCLOSURE STATEMENT

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

8313.001  923883.1