Scott E. Blakeley (State Bar No. 141418)
E-Mail: seb@blakeleyllp.com
Ronald A. Clifford (State Bar No. 246542)
E-Mail: rclifford@blakeleyllp.com
BLAKELEY & BLAKELEY LLP
2 Park Plaza, Suite 400
Irvine, CA 92614
Telephone: (949) 260-0611
Facsimile: (949) 260-0613

Counsel for the
Official Committee of Unsecured Creditors
of P&C Poultry Distributors, Inc. and
Custom Processors, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>P&C POULTRY DISTRIBUTORS, INC.,<br><br>    Debtor and Debtor-in-Possession.<br><br>In re:<br><br>CUSTOM PROCESSORS, INC.,<br><br>    Debtor and Debtor-in-Possession. | Case No.: 2:10-bk-46350 PC<br><br>Chapter 11<br><br>Jointly Administered With<br>Case No.: 2:10-bk-46362 PC<br><br>**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO JOINT DISCLOSURE STATEMENT DESCRIBING JOINT CHAPTER 11 PLAN OF REORGANIZATION OF P&C POULTRY DISTRIBUTORS, INC. AND CUSTOM PROCESSORS, INC.**<br><br>Hearing Date and Time<br><br>Date: August 24, 2011<br>Time: 9:30 a.m.<br>Crtrm: Courtroom 1539<br>    Edward R. Roybal Fed. Bldg.<br>    255 East Temple Street<br>    Los Angeles, CA 90012 |

The Official Committee of Unsecured Creditors (the "Committee") of P&C Poultry Distributors, Inc. and Custom Processors, Inc. (the "Debtors," and the "Reorganized Debtor" when referred to post-confirmation), by and through its undersigned counsel, hereby submits its objection to the Joint Disclosure Statement Describing Joint Chapter 11 Plan of Reorganization of P&C Poultry Distributors, Inc. and Custom Processors, Inc. (the "Disclosure Statement"), stating as follows:

## PRELIMINARY STATEMENT

1.  On August 27, 2010 (the "Petition Date"), the Debtors filed their voluntary bankruptcy petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.  On November 24, 2010, the Office of the United States Trustee (the "OUST") appointed the Committee in both of the above-referenced cases pursuant to section 1102(a)(1) of the Bankruptcy Code.

3.  The Debtors filed the Disclosure Statement on June 20, 2011.

4.  As illustrated infra, the Committee believes that the Disclosure Statement does not contain adequate information as required under section 1125(b) of the Bankruptcy Code, and therefore the Debtors' request that the Disclosure Statement be approved should be denied.

## ARGUMENT

5.  To approve the Disclosure Statement, this Court must determine that it contains adequate information. *See In re Unichem Corp.*, 72 B.R. 95, 96 (ND IL 1987); *see also Matter of Texas Extrusion Corp.*, 844 F.2d 1142 (5th Cir. 1988). Adequate information means information of a kind, and in sufficient detail, as far as reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records to enable a "hypothetical investor" typical of the holders of claims and interests in the case to make an informed judgment about the plan. 11 U.S.C. § 1125(a)(1). Courts take a practical approach as to what is "adequate" based on the circumstances of each case. *In re Diversified Investors Fund XVII*, 91 B.R. 559, 560 (CD CA 1988).

**A.  The Disclosure Statement Does Not Accurately Describe the Administrative Expense Claims of the Debtors**

6.  The Disclosure Statement lists the total administrative expense claims, exclusive of post-petition ordinary course payables, as $1,001,620 ($575,000 in professionals fees and fees of the OUST,

and $426,620 in claims entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code). As illustrated below, this is a gross understatement of the amount of administrative expense claims in this case, and the feasibility of the Plan is materially affected by more reasonable estimates of administrative claims in the case. Using realistic estimates of the fees of the Debtors' and Committee's counsel alone, which is described more fully infra, would take the administrative expense total to no less than $1,292,846.10, $291,226.10 more than listed in the Disclosure Statement. The Debtor must more accurately estimate all of the administrative expense priority claims in the case to allow creditors to better assess the feasibility of the Plan.

*Debtors' Counsel's Fees*

7. The Disclosure Statement estimates the Debtors' general insolvency counsel's ("RHD") unpaid fees and expenses on the effective date of the Plan to be $335,000. RHD received a pre-petition retainer in the amount of $27,971.50. *See* Interim Application by Rutter Hobbs & Davidoff Inc. for Compensation and Reimbursement of Expenses for the Period August 27, 2010 Through December 31, 2010, Docket No. 187, p.1, lines 19-20. Post-petition, RHD has been paid $183,410.05 by the Debtors through monthly fee statements in accordance with the order approving their employment. *Id.* at line 23. RHD has filed eight (8) monthly fee statements with the Court requesting $462,986.50 in fees, and $26,465.84 in expenses, for a total of $489,452.34. These fee statements cover the fees and expenses of RHD through April 2011. After RHD's pre-petition retainer and the post-petition payments are applied to the eight (8) RHD fee statements, RHD is owed an additional $278,070.79 in fees and expenses through April 2011.

8. The Plan will be confirmed no earlier than September 2011. RHD's average monthly burn rate based on the fee statements filed through April 2011 totals $57,873. For the time period of May 2011 through September 2011, using RHD's average monthly burn rate, RHD will be seeking an additional $289,365 in fees and expenses. Ergo, a more reasonable estimate of the fees and expenses that RHD will likely be seeking through the effective date of the Plan, above and beyond those already paid, is $567,435.79 rather than the $335,000 listed in the Disclosure Statement.

///

///

*Committee's Counsel's Fees*

9. The Disclosure Statement estimates the Committee's counsel's ("B&B") fees and expenses on the effective date as totaling $65,000. B&B has filed four (4) monthly fee statements in the instant case for the time periods January 2011 through June 2011 totaling $82,526.93. *See* Docket Nos. 226, 299-302. B&B's monthly burn rate in the case averages out to $13,754.49 based on the fee statements filed through June 2011. Using the average burn rate, a more reasonable estimate of B&B's fees and expenses through the effective date of the Plan is $123,790.39.

10. Using reasonable estimates, the unpaid fees and expenses of RHD and B&B alone, putting aside the other professionals in the case, will total $1,292,846.10, and not the $1,001,620 as listed in the Disclosure Statement. Paid over twelve (12) months, without interest, and accounting for the initial $125,000 payment, the monthly payment to these creditors would be $97,320.51. ($1,292,846.10 - $125,000 = $1,167,846.10 / 12 months = $97,320.51). The Disclosure Statement calls for monthly payments of $66,885.40, which leaves a shortfall in payments to these creditors of $365,221.32 over the twelve (12) month time period. The Disclosure Statement must account for this increase and show the impact it will have on the Plan.

**B. The Disclosure Statement Does Not Disclose Amounts Owed Under the Court Approved Post-Petition Financing Arrangement**

11. The Court entered an order approving the Debtor's Motion for Order Approving Debtors' Vendor Financing Arrangement with Resource Sales and Marketing (the "Financing Motion") on October 14, 2010. *See* Docket No. 87. Under the terms of the Financing Motion, the Debtor was provided a $2.5 million line of credit for poultry purchases from the lending vendor. Interest begins to accrue on the line of credit to the extent the line of credit is not paid off within 21 days after creditor is extended.

12. The Disclosure Statement does not mention the existence of the line of credit, whether there is an amount owed under the line of credit, whether the line of credit will be available post-confirmation, or the effect its existence or non-existence will have on the Reorganized Debtor's post-confirmation operations. The disclosure of the status of the line of credit is crucial in a creditor's evaluation of the Plan.

**C.    The Disclosure Statements Fails To Disclose the Post-Petition Ordinary Course Payables That Will Be Due and Owing On the Effective Date of the Plan**

13.    The Disclosure Statement states that there will be ordinary course payables that will be due and owing on the effective date of the Plan. However, a list of those payables will not be disclosed until ten (10) days prior to the Plan confirmation hearing. This presents two (2) issues. First, creditors will be forced to vote on a plan where the administrative expense debt is not fully known at the time they vote on the Plan, which non-disclosure at that point in time will make it impossible to test the feasibility of the Plan. As discussed supra, the administrative expense debt is large, and depending on the amount of the post-petition trade payables that will be due and owing on the effective date, the Reorganized Debtor may be unable to meet its post-confirmation obligations regarding the proposed treatment of administrative expense creditors under the Plan. Second, those creditors that are owed for post-petition goods and services will not know until days before the confirmation hearing, which will likely be after the opposition deadline, what the Debtors believe they owe those creditors. This creates a due process issue. The disclosure of these post-petition trade payables must be completed prior to the time the creditors must vote on the Plan.

**D.    The Disclosure Statement Does Not Adequately Disclose the Employment of Post-Confirmation Management**

14.    The Disclosure Statement must identify insiders that are to be employed by the Reorganized Debtor post-confirmation, and disclose any and all proposed compensation. 11 U.S.C. § 1129(a)(5). The Disclosure Statement provides that Michael Bennish will be the Reorganized Debtor's CEO, Bruce Weinstein will be the Reorganized Debtor's CFO and Daniel Bennish will be the Reorganized Debtor's COO. *See* Disclosure Statement, p. 23, lines 6-8. The Disclosure Statement fails to disclose what the salaries of the proposed officers of the Reorganized Debtor will be.

15.    The Disclosure Statement also provides that the Reorganized Debtor's officers will "be entitled to ordinary and customary medical and automobile benefits, expense reimbursement and such bonuses as may be approved by the Board." *Id.* at lines 8-10. However, the Disclosure Statement does not disclose what the ordinary and customary medical and automobile benefits are, or the guidelines for the awarding of any bonuses. Given the fact that Michael Bennish and Daniel Bennish would be the

sole insiders post-confirmation, and as majority board members would have the ability to award themselves bonuses and perquisites as they saw fit, it is imperative that creditors understand the guidelines by which bonuses would be awarded and an outline of the perquisites to be provided to the officers by the Reorganized Debtor.

**E.  The Executory Contracts and Unexpired Leases That Are To Be Assumed or Rejected, and Related Cure Amounts/Rejection Damages Are Not Disclosed**

16.    The Disclosure Statement does not include a list of the executory contract and unexpired leases that the Debtors intend on rejecting and/or assuming, and the related cure/rejection amounts related thereto.  Given the fact that there could be cure amounts that need to be paid on the effective date of the Plan, and the fact that rejection damages could add significantly to the classes of claims in the case, it is imperative that there is full disclosure of these executory contracts and unexpired leases.

**F.  The Disclosure Statement Does Not Contemplate the Avoidance Actions in the Case**

17.    The Debtors do not propose to pay unsecured non-priority creditors in full.  A source for payment for unsecured creditors is the avoidance actions available to the estate pursuant to chapter 5 of the Bankruptcy Code.  The Disclosure Statement does not disclose the avoidance actions that exist and the benefit creditors would stand to gain from the prosecution of those avoidance actions.  If the Debtor is waiving the avoidance actions in the case it must disclose to creditors what the extent of any avoidance actions are.

**G.  The Disclosure Statement Does Not Disclose the Scope of the Proposed Releases of the Debtors' Insiders**

18.    The Disclosure Statement provides that:

> In order to retain the services of Michael and Daniel Bennish and allow the reorganization to proceed, Debtors' counsel and counsel for the Insiders have negotiated an resolution pursuant to which the Insiders will waive their claims against the Debtors and forego a distribution of up to approximately $550,000 in exchange for a general release of all claims against the Insiders by the Debtors, their estates…

*See* Disclosure Statement, p. 30, lines 23-28.

/ / /

/ / /

19.  A couple of issues present themselves from this proposed release.  As a starting point, the Disclosure Statement does not flesh out what possible actions the estate has against the Insiders.  Creditors do not know what the estate is giving up through the release.  There are no less than eight (8) Insiders receiving broad releases through the Disclosure Statement.  An analysis as to the estate's claims against each of the Insiders should be disclosed.

20.  Further, the Disclosure Statement does not provide an analysis as to the legitimacy of the $5.5 million in claims the Insiders claim to have against the estate.  The Disclosure Statement, in a conclusory fashion, simply states that the Insiders have $5.5 million in claims against the estate, but does not provide an analysis as to the legitimacy of those claims.  These claims may be subject to, *inter alia*, equitable subordination or recharacterization, but the Disclosure Statement does not flesh out any such theories.  A representation should be made that the Debtors have at least completed an analysis as to the veracity of the Insiders' claims against the estate.

**H.    The Liquidation Analysis Contained In the Disclosure Statement Is Inaccurate**

21.  The liquidation analysis contained in the Disclosure Statement does not list all of the Debtors' assets.  According to the Debtors' recently filed monthly operating report, the Debtor has an investment in the Sotello property in an amount of $337,516.  What the amount of that interest would be in liquidation is not listed in the Disclosure Statement's liquidation analysis.  Further, the Disclosure Statement does not provide an amount for the Debtors' customer lists and other intangibles.  These amounts must be included for there to be a complete liquidation analysis.

22.  What is more, the liquidation analysis lists the Debtors' fixed assets' liquidation value as $500,000. The Debtors' schedules list the fixed assets' going concern value at $5,541,799.09.  The inventory is listed as having a value of $1,752,894.33 in the May monthly operating report, but is listed as having a liquidation value of $175,259.43 in the Disclosure Statement.  Although liquidation values are often less than going concern values or booked values, liquidation values that are 9% of the going concern value seems extreme given the type of FF&E and inventory these Debtors own.  The inventory is easily sold on an open market with set prices, and the equipment is useable and in newer condition.  An explanation as to this difference in values should be disclosed.

/ / /

**I.      The Plan is Clearly Non-Confirmable as Drafted**

23.     "Disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible." *Id.* at 764.  Where a plan is clearly non-confirmable, it is a waste of time and resources to go through the confirmation process. *In re Valrico Square Ltd. Partnership*, 113 B.R. 794, 795-796 (BC SD FL 1990).

**1.     The Debtor Should Be Made to Prove That Administrative Expense Creditors Are Willing To Take Payment over Time at the Disclosure Statement Approval Hearing**

24.     Section 1129(a)(9)(A) provides in relevant part that:

> The court shall confirm a plan only if…except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.

25.     As noted above, the administrative expense claims in the instant case total no less than $1,292,846.10.  The Disclosure Statement projects cash on hand for October 1, 2011, which would likely be the effective date of the Plan if the Plan were confirmed at the end of September, as being $512,200.  Putting aside the fact that the cash-on-hand projections are inaccurate, the Debtors clearly will not have the cash-on-hand to pay administrative expense claims in full on the effective date of the Plan.

26.     Therefore, the Disclosure Statement proposes that the administrative expense creditors share pro rata in an initial $125,000 payment, and be paid the balance over twelve (12) months. *See* Disclosure Statement, p. 16, lines 7-12.  The Disclosure Statement states that the Debtors believe that "it can, prior to the Plan confirmation hearing, obtain the consents of the holders of administrative claims necessary to confirm the Plan." *Id.* at lines 4-6.  There is no evidence that administrative expense creditors have been contacted regarding the proposed treatment of their claims, or that those creditors have agreed to the proposed treatment.  If the Debtors cannot prove that they have obtained unanimous consent of the administrative claimants in the case regarding their treatment under the Plan, moving forward towards confirmation will be a futile exercise.

### 2. The Plan Violates the Absolute Priority Rule

27. Courts have held that unsecured creditors must be paid in full prior to any junior class receiving or retaining any property under a plan of reorganization. *See In re Tucson Self-Storage, Inc.*, 166 B.R. 892, 900 (9th Cir. BAP 1994); *Norwest Bank Worthington*, 485 U.S. 197, 2002 (1988). This concept is termed the absolute priority rule. It is important to take note of the timing of the triggering of the absolute priority rule. The general nonpriority unsecured creditors must be provided for in full *before* any junior class can receive or retain any property under a plan. *Norwest*, 485 U.S. at 202.

28. Courts in the "Ninth Circuit now recognize the new value exception to the absolute priority rule." *In re Tucson Self-Storage, Inc.* at 899. In short, "[t]he new value exception allows the equity owners of a debtor in bankruptcy to obtain an interest in the reorganized debtor in exchange for new capital contributions over the objections of a class of creditors that have not received full payment on [their] claims." *Id.* Courts have also made it clear that a mere promise to contribute future services (e.g., labor, management or expertise) is insufficient. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 204 (1988). Further, the release of claims by insiders is insufficient. *See In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 78 (9th Cir. BAP 1994).

29. The Disclosure Statement provides that Class 2 creditors, which class is comprised of the general unsecured non-priority creditors, are to receive approximately 10% of the value of their claims over five (5) years. *See* Disclosure Statement, p. 22, lines 4-16. At the same time, two (2) of the current equity holders, Michael Bennish and Daniel Bennish, will receive 100% of the equity in the Reorganized Debtor. *Id.* at lines 20-28. The Disclosure Statement also provides that the equity in the Reorganized Debtor is being provided to Michael Bennish and Daniel Bennish "[i]n consideration of [their] post-confirmation services…" *Id.*

30. The Disclosure Statement is providing equity holders, who are subordinate to the unsecured non-priority creditors and the administrative expense creditors in terms of payment priority, with an interest in the Reorganized Debtor without first paying those creditors in full. This violates the absolute priority rule. Pursuant to the authority cited supra, the providing of future services for the Reorganized Debtor is insufficient to create new value as an exception to the absolute priority rule.

1     **WHEREFORE,** the Committee respectfully requests that the Court not approve the Disclosure Statement as drafted as containing adequate information as required under section 1125(b) of the Bankruptcy Code, and for such other and further relief as the Court deems just and proper.

Dated: August 11, 2011                    BLAKELEY & BLAKELEY LLP

                                          By: */s/ Ronald A.Clifford*
                                                Scott E. Blakeley
                                                Ronald A. Clifford
                                           Counsel for the Official
                                           Committee of Unsecured Creditors
                                           of P&C Poultry Distributors, Inc. and
                                           Custom Processors, Inc.

| In re: | CHAPTER 11 |
|---|---|
| P&C POULTRY DISTRIBUTORS, INC., | CASE NUMBER 2:10-bk-46350-PC |
| Debtor(s). | JOINTLY ADMINISTERED WITH CASE NUMBER 2:10-bk-45362-PC |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2 Park Plaza, Suite 400, Irvine, California 92614


A true and correct copy of the foregoing document described as **OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO JOINT DISCLOSURE ST ATEMENT DESCRIBING  JOINT CHAPTER 11 PLAN OF REORGANIZATION OF P&C POULTRY DISTRIBUTORS, INC. AND CUSTOM PROCESSORS, INC.**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 11, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **August 11, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL:**
Honorable Peter H. Carroll
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building & Courthouse
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 11, 2011,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 11, 2011 | Lauren Thomas | /s/ Lauren Thomas |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010* **F 9013-3.1.PROOF.SERVICE**

| | |
|---|---|
| In re:<br><br>P&C POULTRY DISTRIBUTORS, INC.,<br><br>                                                                  Debtor(s). | CHAPTER 11<br><br>CASE NUMBER  2:10-bk-46350-PC<br><br>JOINTLY ADMINISTERED WITH CASE NUMBER 2:10-bk-45362-PC |

## ADDITIONAL SERVICE INFORMATION:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING**

Sara Chenetz    chenetz@blankrome.com, chang@blankrome.com
Ronald Clifford    rclifford@blakeleyllp.com
Brian L Davidoff    bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
Jeffrey S Goodfried    jgoodfried@perkinscoie.com
David Joe    djoe@rutterhobbs.com, calendar@rutterhobbs.com
Bernard J Kornberg    bjk@severson.com
Duane Kumagai    dkumagai@rutterhobbs.com, calendar@rutterhobbs.com;mshabpareh@rutterhobbs.com
Kenneth G Lau    kenneth.g.lau@usdoj.gov
Craig A Loren    aloren@debtacquisitiongroup.com, bschwab@debtacquisitiongroup.com;jsarachek@debtacquisitiongroup.com
Laura E Lynch    llynch@mohlaw.net
C John M Melissinos    jmelissinos@rutterhobbs.com, jreinglass@rutterhobbs.com;calendar@rutterhobbs.com
David L. Neale    dln@lnbrb.com
Queenie K Ng    queenie.k.ng@usdoj.gov
D Andrew Phillips    aphillips@mitchellmcnutt.com, dharwell@mitchellmcnutt.com
Rosamond H Posey    rposey@mitchellmcnutt.com
J Alexandra Rhim    arhim@buchalter.com, smartin@buchalter.com
James R Selth    jim@wsrlaw.net, charles@wsrlaw.net
Claire Shin    cshin@rutterhobbs.com, jreinglass@rutterhobbs.com
Claire Shin    cshin@seyfarth.com, jreinglass@rutterhobbs.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov


**II. SERVED BY U.S. MAIL**

**Debtor**
P&C Poultry Distributors, Inc.
Custom Processors, Inc.
1100A John Reed Court
City of Industry, CA 91745

**Counsel for the Debtor**
Brian L. Davidoff, Esq.
C. John M. Melissinos, Esq.
David Y. Joe, Esq.
Claire E. Shin, Esq.
Rutter Hobbs & Davidoff, Inc.
1901 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

**Counsel for the United States Trustee**
Kenneth G. Lau, Esq.
Office of the United States Trustee
725 S. Figueroa St., 26th Floor
Los Angeles, CA 90017

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                                                                  **F 9013-3.1.PROOF.SERVICE**

| | |
|---|---|
| In re:<br><br>P&C POULTRY DISTRIBUTORS, INC.,<br><br>                                                          Debtor(s). | CHAPTER 11<br><br>CASE NUMBER  2:10-bk-46350-PC<br><br>JOINTLY ADMINISTERED WITH CASE NUMBER 2:10-bk-45362-PC |

**Counsel for East West Bank**
Scott O. Smith, Esq.
J. Alexandra Rhim, Esq.
Buchalter Nemer
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457

**Special Notice:**

David Neale, Esq.
Levene Neale Bender Yoo & Brill LLP
10250 Constellation Blvd Ste 1700
Los Angeles, CA 90067
(Counsel for Lawrence Wholesale)

Rosamond Hawkins Posey, Esq.
D. Andrew Phillips, Esq.
Mitchell, McNutt & Sams P.A.
P.O. Box 947
Oxford, Mississippi 38655
(Counsel for Timber Lake Foods, Inc.)

Jeffrey S. Goodfried, Esq.
Perkins Coie LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
(Counsel for Debt Acquisition Group, LLC)

Bernard J. Kornberg, Esq.
Severson & Werson PC
One Embarcedero Center, Suite 2600
San Francisco, CA 94111
(Counsel for Ally Financial, Inc. fka GMAC, Inc.)

James R. Selth, Esq.
Weintraub & Selth, APC
11766 Wilshire Blvd., Suite 1170
Los Angeles, CA 90025

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                                          **F 9013-3.1.PROOF.SERVICE**