**LEWIS BRISBOIS BISGAARD & SMITH** LLP
DANIEL V. HYDE, SB#063365
  hyde@lbbslaw.com
CLAIRE HERVEY COLLINS, SB#233890
  hervey@lbbslaw.com
JOHANNA A. SANCHEZ, SB#247930
  jasanchez@lbbslaw.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Plaintiff County Sanitation
District No. 21 of Los Angeles County

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>P&C POULTRY DISTRIBUTORS, INC.,<br><br>Debtor and Debtor in Possession.<br><br>In Re:<br><br>CUSTOM PROCESSORS, INC.,<br><br>Debtor and Debtor in Possession. | CASE NO. 2:10-BK-46350-PC<br><br>Jointly Administered with<br>Case No.: 2-10-BK-46362-PC<br><br>**COUNTY SANITATION DISTRICT NO. 21'S OBJECTION TO CONFIRMATION OF DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION OF P&C POULTRY DISTRIBUTORS, INC. AND CUSTOM PROCESSORS, INC.**<br><br>Plan Confirmation and Disclosure Statement Hearing Date:<br>Date:   August 24, 2011<br>Time:  9:30 a.m.<br>Place:  255 East Temple Street<br>           Los Angeles, CA 90012 |

/ / /

/ / /

TO THE HONORABLE PETER CARROLL, UNITED STATES BANKRUPTCY JUDGE, TRUSTEE, DEBTORS, AND THEIR COUNSEL OF RECORD:

Creditor COUNTY SANITATION DISTRICT NO. 21 OF LOS ANGELES COUNTY, a special district (the "District") hereby objects to the Joint Chapter 11 Plan of Reorganization (the "Plan") of P&C POULTRY, INC. and CUSTOM PROCESSORS, INC.'S (collectively, "Debtors"), on the following grounds: The Plan has scheduled as unsecured claims on behalf of the District two claims in the amounts of $1,230,712.93 and $392,283.27, respectively. The District objects to the inclusion of these claims on the grounds that the contracts underlying these amounts are executory contracts that must be either assumed and cured or rejected.

## INTRODUCTION

The Debtors filed a Chapter 11 Plan (the "Plan") on August 27, 2010. The Debtors have listed on the Plan two unsecured debts to the District of $1,230,712.93 and $392,283.27, respectively. The District objects to the Plan on the grounds that these debts arose out of executory contracts. These executory contracts were entered into by the District with P&C Poultry Distributors, Inc. ("Debtor"). The contracts are based on a local ordinance that only allows for the District's performance <u>after</u> the Debtor's full performance. Therefore, these contracts must be rejected or assumed and cured; they should not be classified as general unsecured claims.

## MEMORANDUM OF POINTS AND AUTHORITIES

1. <u>The District and the Connection Fee Ordinance.</u> The County Sanitation Districts of Los Angeles County (the "Districts") are 23 separate special districts organized and existing pursuant to the provisions of the County Sanitation District Act, Health & Safety Code section 4700 et seq. The Districts jointly own,

operate, and maintain a sewerage system that collects, treats, and disposes of sewage and industrial waste. The District is authorized to fix fees, tolls, rates, rentals, or other charges for its services and facilities by ordinance. (Health & Safety Code Section 5471.) Pursuant to that authority, the District has adopted the Master Connection Fee Ordinance[1] (the "Ordinance") (Declaration of Johanna A. Sanchez ("Sanchez Decl.") ¶ 2, **Exhibit 1**), the purpose of which is "to impose fees for the privilege of connecting facilities to the sewerage system or for the privilege of increasing the strength or quantity of wastewater discharged from connected facilities, and to provide for the collection of those fees." (Ordinance §1.02.) Those fees are called "connection fees." (Ordinance §3.01.)

    2. <u>Connection Fees and Capacity Units.</u> The purpose of the connection fee is to pay for future expansion of the District's capital facilities caused by increases in wastewater discharge. (Ordinance §1.02.) The connection fee is calculated based on a unit of measure called a "capacity unit" which represents the average annual burden a single-family home places on the sewerage system. (Ordinance §2.04) There are only two sources of capacity units attributable to a discharger: (1) capacity units based on historical usage between fiscal years 1976-77 and 1981-82, or (2) capacity units for which connection fees have been paid. (Ordinance §3.05.) Compliance with the connection fee ordinance is a condition of

///

---

[1] The Ordinance was amended and renumbered in 2007; all citations in this document reference this version. (Declaration of Johanna A. Sanchez ("Sanchez Decl." ¶2, **Exhibit 1**.) Prior to 2007, the Ordinance was last amended in 1997 and the payment provisions were numbered 3.01 through 3.06. (Sanchez Decl. ¶3, **Exhibit 2**.) The 2006-2007 Payment Schedule at Recital C cites Sections 3.01 through 3.06 as the payment provisions of the Ordinance, when in fact at the time the 2006-2007 Payment Schedule was entered, the payment provisions originally in Section 3.05 had been renumbered as Section 4.01. (See Sanchez Decl. ¶4, **Exhibit 3**.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-7014-1962.1    3    2:10-BK-46350-PC
COUNTY SANITATION DISTRICT'S OBJECTION TO CONFIRMATION OF CHAPTER 11 PLAN

the discharger's permit to discharge wastewater under the local implementation of the Clean Water Act.

3.      <u>The Debtor's 2008-2009 Connection Fee.</u> Debtor P&C Poultry, a food processor, discharges its wastewater into the District's sewerage system pursuant to a permit, and is classified as an "industrial discharger" under the Ordinance. As the result of a significant increase in the strength and quantity of wastewater the Debtor discharged in fiscal year 2006-2007, the District imposed a connection fee of $514,639.53, requiring the company to pay for the privilege of continued discharge of 293.21 capacity units of wastewater; in fiscal year 2008-2009, after another significant discharge the District imposed a connection fee in the amount of $1,383,348.73, requiring the company to pay for the privilege of continued discharge of 461.27 capacity units of wastewater.

4.      <u>Effect of Payment Schedules Under the Ordinance.</u> The Ordinance allows industrial dischargers to pay a connection fee pursuant to a written contract in "monthly installments over a period not to exceed six years." (Ordinance §4.01.) Monthly installment payments provide a temporary privilege to use additional capacity; for that privilege to ripen into a permanent attribution of capacity units, the full connection fee must be paid. "Capacity units associated with the principal portion of the connection fee shall be attributed to the industrial operation <u>only upon full payment of the entire installment payment obligation, including the principal amount of the connection fee, accrued interest, and penalties.</u>" (Ordinance §4.01 (emphasis added)[2].) Therefore, the permanent privilege to use the capacity units is not attributed until *after* the entire payment schedule is completed.

///

---

[2] The identical provision is in Section 3.05 of the Ordinance in effect in 2006. (Sanchez Decl, ¶3, Exhibit 2)

1    5.    <u>The Debtor's Payment Schedules.</u> The Debtor entered into two payment schedules, one for each of the 2006-2007 and 2008-2009 fiscal years. The 2006-2007 payment schedule is contained in a settlement agreement resulting from a lawsuit filed by the District against the Debtor after the Debtor failed to pay or elect a payment schedule within 45 days after notice of charges (as provided in Section 4.01 of the Ordinance[3]) ("2006-2007 Payment Schedule"). (Sanchez Decl., ¶4, Exhibit 3.) The Debtor elected to enter into a *Payment Schedule in Accordance with Section 4.01 of the Connection Fee Ordinance* for the 2008-2009 fiscal year connection fee ("2008-2009 Payment Schedule") on August 3, 2010. (Sanchez Decl., ¶5, Exhibit 4.)

6.    <u>Capacity Units are Only Attributed After Full Payment</u>. Each of the two payment schedules required monthly payments for six years, at the end of which time the Debtor would receive a permanent right to use the additional capacity, subject to certain conditions of the Ordinance. Under Section 6 of the 2008-2009 Payment Schedule, the Debtor "<u>acknowledges and agrees that the obligation to make monthly payments . . . shall not entitle the [Debtor] to any capacity in the District's system.</u>" (Sanchez Decl., ¶5, Exhibit 4, §6. Emphasis added.) Furthermore, the 2008-2009 Payment Schedule expressly states that "[u]pon receipt by the District of the <u>complete payment</u> of the prevailing monthly balance, the [Debtor] shall acquire an additional 461.27 capacity units...." (Ibid. Emphasis added.) The Ordinance and the payment schedules pursuant to the Ordinance clearly provide that capacity units will only be permanently attributed to the company *after* full payment of the entire connection fee is made. During the payment schedule period, "monthly payments . . . shall not entitle the [Debtor] to

---

[3] The identical provision is in Section 3.05 of the Ordinance in effect in 2006. (Sanchez Decl, ¶3, Exhibit 2.)

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

any capacity in the District's system" and the only benefit received by the Debtor during the payment period is that "the [Debtor] will be given the benefit of the new baseline of [the additional] capacity units for any discharge evaluations during the term of th[e] agreement." (Ibid.) Discharge evaluations are conducted by the District on an annual basis, pursuant to the separate Wastewater Ordinance.

7. <u>The Payment Schedules are Executory Contracts Because Both Parties' Performance Obligations Are Substantially Unperformed.</u> An executory contract is "one on which performance is due to some extent on both sides. In executory contracts the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." *(In re Texscan Corp.,* 976 F.2d 1269, 1272 (9th Cir. 1992). Citations omitted.) Executory contracts are therefore contracts for which both parties have yet to substantially perform.

8. <u>There Has Been No Substantial Performance.</u>  The Debtor has not substantially performed its obligations under either payment schedules because it has not yet paid the vast majority of the amounts owing.  The District has not yet substantially performed its obligations under the payment schedules because it has not yet attributed the capacity units to the Debtor.  The District will not attribute those capacity units until "full payment of the entire installment payment obligation" as stated under Section 4.01 of the Ordinance.

9. <u>Because the Payment Schedules are Executory Contracts, They Should Be Scheduled Accordingly and Either Accepted and Cured, or Rejected.</u> Executory contracts must be accepted and cured, or rejected. (11 U.S.C. §365(a).) The consequence of acceptance and cure or rejection of the payment schedules is as follows:

   a. <u>Rejection</u>. If the payment schedules are rejected, the District will attribute to the Debtor "[t]he number of capacity units for which connection fees have been paid . . .." pursuant to Section

3.05(1)(a) of the Ordinance. Based on payments made by the Debtor prior to filing for bankruptcy protection, the District will attribute 98.47 capacity units to the Debtor for the payments made under the 2006-2007 Payment Schedule and 50.90 capacity units for the payments made under the 2008-2009 Payment Schedule, based on the principle portion of the payments made and as described in the 2008-2009 Payment Schedule. Assuming the unpaid amounts would convert to an unsecured non-priority claim, the District would attribute to the Debtor additional capacity units based on the final distribution amount at $1,681.00 per capacity unit for the 2006-2007 Payment Schedule and at $2,999.00 per capacity unit for the 2008-2009 Payment Schedule.

    b. <u>Acceptance/Cure</u>. The cost to cure the 2006-2007 Payment Schedule is $138,915.00, which would return the Debtor to its pre-bankruptcy position and enable it to complete the 2006-2007 payment schedule based on the original terms for the remainder with payments beginning October 1, 2011. The cost to cure the 2008-2009 Payment Schedule is $334,699.10 which would return the Debtor to its pre-bankruptcy position and enable it to complete the 2008-2009 payment schedule based on the original terms for the remainder with payments beginning October 1, 2011. The calculations of the cure amounts are shown on **Exhibit 1** to the Declaration of Sharie Pike.

    10. <u>The District Did Not File Claims for Connection Fees</u>. The District filed a claim in the amount of $8,878.03 for wastewater treatment surcharges (governed under the separate Wastewater Ordinance), which has been scheduled as unsecured Claim No. 4. The District has no objection to that claim as scheduled. The District did not file a claim for the connection fee payment

schedules because they are executory contracts; the Debtor has not yet filed its schedule of executory contracts.

## CONCLUSION

The connection fee payment schedules are executory contracts pursuant to local law: they provide for the District's attribution of capacity units only after complete performance by the Debtor. The Debtor has not yet completed its performance, and therefore the District's obligation to attribute the capacity units has not yet arisen. The Plan should be amended to remove the connection fee debts from the unsecured claims schedule, and should instead be scheduled as executory contracts and either be assumed and cured or rejected under the Plan.

DATED: August 12, 2011    LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
Johanna A. Sanchez
Attorneys for Plaintiff, County Sanitation
District No. 21 of Los Angeles County

**Note:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

**PROOF OF SERVICE RE DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 221 N. Figueroa Street, Suite 1200, Los Angeles, CA 90012-2601

A true and correct copy of the foregoing document described **DECLARATION OF SHARIE PIKE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _August 12, 2011_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

[X] Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**

On August 12, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[ X ] Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR E-MAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

[ ] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 12, 2011 | Marsha A. Petty | /s/ Marsha A. Petty |
|---|---|---|
| Date | Type Name | Signature |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

2:10-BK-46350- PC

PROOF OF SERVICE

# SERVICE LIST

**Debtor**

Mike Bennish, Chief Executive Officer
P&C Poultry Distributors, Inc.
1100 John Reed Court
City of Industry, CA 91745

**Attorney for Debtor(s)**
Brian Davidoff
C. John M. Melissinos
Claire E. Shin
David Y. Joe
Rutter Hobbs & Davidoff, Inc.
1901 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

**United States Trustee**
Russell Clementson, Esq.
Office of the U.S. Trustee
725 So. Figueroa St., 26th Floor
Los Angeles, CA 90071

**Counsel for Creditors' Committee**
Ronald A. Clifford, Esq.
Blakely & Blakely LLP
2 Park Plaza, Suite 400
Irvine, CA 92614

**Counsel for East West Bank**
Alexandra Rhim
Buchalter Nemer
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017-2457

The Honorable Peter Carroll
U.S. Bankruptcy Court
Roybal Federal Building, Courtroom 1539)
255 E. Temple Street
Los Angeles, CA 90012

**2:10-bk-46350-PC Notice will be electronically mailed to:**

Sara Chenetz on behalf of Creditor Timberlake Foods
chenetz@blankrome.com, chang@blankrome.com;darling@blankrome.com

Ronald Clifford on behalf of Attorney Blakeley & Blakeley LLP

Jeffrey S Goodfried on behalf of Creditor Debt Acquisition Group, LLC
jgoodfried@perkinscoie.com

David Joe on behalf of Debtor P&C Poultry Distributors, Inc.
djoe@rutterhobbs.com, calendar@rutterhobbs.com

Bernard J Kornberg on behalf of Creditor Ally Financial, Inc., fka GMAC, Inc.
bjk@severson.com

Duane Kumagai on behalf of Plaintiff P&C Poultry Distributors, Inc.
dkumagai@rutterhobbs.com, calendar@rutterhobbs.com;mshabpareh@rutterhobbs.com

Kenneth G Lau on behalf of U.S. Trustee United States Trustee (LA)
kenneth.g.lau@usdoj.gov

Craig A Loren on behalf of Creditor Debt Acquisition Group, LLC
aloren@debtacquisitiongroup.com,
bschwab@debtacquisitiongroup.com;jsarachek@debtacquisitiongroup.com

Laura E Lynch on behalf of Creditor Co-West Commodities
llynch@mohlaw.net

C John M Melissinos on behalf of Accountant Solomon Ross Grey & Company LLC
jmelissinos@rutterhobbs.com, jreinglass@rutterhobbs.com;calendar@rutterhobbs.com

David L. Neale on behalf of Creditor Lawrence Wholesale, LLC
dln@lnbrb.com

Queenie K Ng on behalf of U.S. Trustee United States Trustee (LA)
queenie.k.ng@usdoj.gov

D Andrew Phillips on behalf of Creditor Timberlake Foods
aphillips@mitchellmcnutt.com, dharwell@mitchellmcnutt.com

Rosamond H Posey on behalf of Creditor Timberlake Foods
rposey@mitchellmcnutt.com

J Alexandra Rhim on behalf of Creditor East West Bank
arhim@buchalter.com, smartin@buchalter.com

Claire Shin on behalf of Attorney --- Rutter Hobbs & David
cshin@rutterhobbs.com, jreinglass@rutterhobbs.com

Claire Shin on behalf of Debtor P&C Poultry Distributors, Inc.
cshin@seyfarth.com, jreinglass@rutterhobbs.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov