PETER C. ANDERSON
UNITED STATES TRUSTEE
Jill M. Sturtevant, SBN 89395
Assistant United States Trustee
Kenneth G. Lau, SBN 155314
Trial Attorney
OFFICE OF THE UNITED STATES TRUSTEE
725 South Figueroa Street, 26th Floor
Los Angeles, California 90017
Telephone No. 213-894-4480
Facsimile No. 213-894-2603
e-mail: Kenneth.G.Lau@ust.doj.gov

# UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>P&C POULTRY DISTRIBUTORS, INC.,<br><br>Debtor and Debtor-in-Possession. | Case Number: 2:10-bk-46350-PC<br><br>Chapter 11<br><br>**OBJECTION TO DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN**<br><br>DATE:    August 24, 2011<br>TIME:    9:30 A.M.<br>CTRM:    1539<br>         255 E. Temple Street<br>         Los Angeles, CA 90012 |

**TO THE HONORABLE PETER CARROLL, UNITED STATES BANKRUPTCY JUDGE, DEBTORS AND DEBTORS' ATTORNEY OF RECORD, AND OTHER PARTIES IN INTEREST:**

The United States Trustee has reviewed the Plan and Disclosure Statement filed by P&C Poultry Distributors, Inc. (the "Debtor") herein. As a result of this careful review, the United States Trustee contends that the Disclosure Statement ("DS") does not contain "adequate information" upon which the parties in interest will be able to make an informed judgment about the Plan as required by 11 U.S.C. §1125.

1

I.

## MINIMUM DISCLOSURE REQUIREMENTS

Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan from the holder of a claim or interest unless a written Disclosure Statement, which the court has found to contain adequate information, has first been transmitted to such holder. "Adequate information" is defined as:

> "[I]nformation of a kind, and in sufficient detail, as far is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan. . .".

11 U.S.C. §1125(a)(1).

The phrasing of this section indicates that a finding of "adequate information" will be made on a case-by-case basis. No set of guidelines, therefore, could hope to be exclusive or exhaustive. However, there has developed some consensus around a "core" set of factors to be considered in most cases. The leading case setting forth these factors is *In re Metrocraft Publishing Services, Inc.*, 30 B.R. 567 (Bankr. N.D. Ga. 1984). The *Metrocraft* court found that factors relevant to evaluating the adequacy of a disclosure "may include" the following: "(1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the Disclosure Statement; (5) a disclaimer; (6) the present condition of the debtor while in chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountant's fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of the preferential or otherwise voidable

transfers; (17) litigation likely to arise in a non-bankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates."

*Metrocraft, supra,* 39 B.R. at 568.

## II.

## SUMMARY OF PROCEDURAL AND FACTUAL HISTORY

On August 27, 2010, the Debtor P&C Poultry Distributors, Inc. ("P&C") commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the Bankruptcy Code. *See* Case Docket No. 1. The Debtor and its affiliates, Custom, are "further processors" of chicken meat and distributors of processed poultry products. Disclosure Statement ("DS"), p. 5, line 5-8. Custom filed for bankruptcy on August 27, 2010. Case No. 2:10-bk-46362-BB. The P&C and Custom cases (collectively, "the Debtors") were later combined and jointly administered by the court. Order for Joint Administration with Case Number 10-46362 (Doc. No. 16). Michael Bennish, Howard Bennish, Stafford Bennish and Daniel Bennish (collectively, "Principals") are the principals of the Debtor. *Id.* Since 2000, the Principals have each owed twenty-five-percent of the P&C and Custom's corporate shares. DS, p. 7, line 10-12. The poultry facility is located in City of Industry, California. DS, p. 5, line 9. The Debtor produces value-added frozen and fresh poultry products for re-sale to major fast food restaurant chains and casual dining services. *Id.* at line 9-11. At first, the Debtor's management intended P&C and Custom to handle different operating functions when they were established. *Id.* at line 14-16. However, in practice, most of the business is conducted through P&C. *Id.* at line 15-16. Custom has few to no assets. *Id.*

P&C was formed as a poultry brokerage company in 1992. *Id.* at line 24-25. Custom was formed in 1999 as a processing plant because the Debtor changed its business structure. DS, p. 6, line 1-2. In 1998, Custom started building a second processing plant in Los Angeles, California, ("Los Angeles Plant") and relocated its operations to this facility in 2000. *Id.* at line 3-4. In 2005, P&C and Custom open a new facility in City of Industry, California ("City of Industry Plant"). *Id.* at line 5-6. The City of Industry Plant is leased by P&C from Chi-Ming Fan, Trustee of the Fan Family Trust. *Id.* at line 7-8. The lease for the City of Industry Plant expires on November 30, 2013. *Id.* at line 9. In 2008, Custom moved its Los Angeles processing operations to the City of

1  Industry Plant. *Id.* at line 12-13. P&C currently uses the Los Angeles Plant as a warehouse and
2  cold storage facility. *Id.* at line 13-14. The Los Angeles Plant is owned by an affiliated entity,
3  Sotello Properties, LLC ("Sotello"), which P&C owns forty-percent and the Principals own
4  fifteen-percent each. *Id.* at line 15-17. P&C rents the Los Angeles Plant from Sotello. *Id.*
5  Sotello has an outstanding loan from East West Bank ("EWB"). *Id.* at line 18. The loan is
6  collateralized by a first and second deed of trust against the Los Angeles Plant. *Id.* at line 19-21.
7  The lease for the Los Angeles Plant expires on June 30, 2018. *Id.* at line 21.

8      In 2009, the Debtor's sales were over $47 million. *Id.* at line 28. In January 2010, P&C's
9  revenue dropped to $2.9 million per month (approximately $34.8 million per year) because of a
10 change in KFC's sale strategies. DS, p. 7, line 1-2. KFC is the Debtor's largest customer. *Id.*
11 KFC started selling "grilled menu" items, which P&C did not and does not supply to KFC. *Id.* at
12 line 3. Further, the Debtor's profitability decreased because the price of raw poultry meat rose to
13 its highest level in seven years during the first half of 2010 (approximately a thirty-percent
14 increase from the average price during the previous five years). *Id.* at line 4-6.

15     EWB extended a commercial term loan and a revolving line of credit to P&C in July 2006.
16 *Id.* at line 15-17. The principal amount for the term loan was $5 million; the principal amount for
17 the line of credit was $5.5 million. *Id.* at line 18-19. The line of credit matured in July 2010. *Id.*
18 at line 21. The term loan matured on August 1, 2011. DS, p. 8, line 3.

III.

DISCLOSURE STATEMENT

21     The United States Trustee hereby objects to the Debtor's' Disclosure Statement as follows:
22 1.    <u>Claims</u>
23     a.    <u>Priority Creditors</u>
24     The Debtor's proposed Disclosure Statement is internally inconsistent regarding the
25 amount due to its two listed taxing authority creditors, the California Franchise Tax Board and the
26 Los Angeles County Tax Assessor. In the body of the Disclosure Statement, describing a
27 Summary of the Plan, Debtor states that the Franchise Tax Board will be paid the principal
28 amount of $452.61; this figure is consistent with the Proof of Claim, no. 40 on Debtor's Claims

4

Register, filed by the Franchise Tax Board. However, on pages 18-19, in the section detailing Debtor's plan treatment of "Priority Tax Claims," the table lists the claim of the Franchise Tax Board as only $62.99, with no explanation for the difference.

Similarly, In the body of the Disclosure Statement, describing a Summary of the Plan, Debtor states that the Los Angeles County Tax Assessor will be paid the principal amount of $70,910.27. However, on pages 18-19, in the section detailing Debtor's plan treatment of "Priority Tax Claims," the table lists the claim of the Los Angeles County Tax Assessor at the increased amount of $77,150.13; this figure is consistent with the Proof of Claim, no. 73 on Debtor's Claims Register, filed by the Los Angeles County Treasurer and Tax Collector.

At a minimum, Debtor should amend its proposed Disclosure Statement to make these internally inconsistent figures, which switch places at different points, conform to the correct amounts presumably listed in their related Proofs of Claim.

  b.  Missing Secured Creditor

On the Debtor's Schedule D, the Debtor listed "Raymond Leasing Corporation" as a secured creditor with a claim of $19,173.72. However, the Debtor does not appear to account for this secured creditor at all in its Disclosure Statement.1 The Debtor should address whether this claim had been paid or otherwise resolved, and specify the present status of this claim.

  c.  Insider Claims and Revested Equity Interests

The Debtors' Insiders, as that term is defined in the Disclosure Statement, referring to Daniel Bennish, Howard Bennish, Michael Bennish and Stafford Bennish, reportedly have claims against the Debtors in excess of $5,500,000.00. DS, p. 30, line 10. The Debtors paid the Insiders' salaries and repaid a portion of the loans owed by the Debtors' to the Insiders in the year prior to the Petition Date. *Id.* at line 15-16. The Debtor claims that it can avoid these transfers to the Insiders, but that the Insiders dispute that these "ordinary course" payments could, would or

---

[1] The U.S. Trustee notes that Debtor does list and provide plan treatment for an unsecured creditor called "Raymond Handling Solutions" with a claim of $5,481.00 (Proof of Claim No. 24), but in addition to being unsecured rather than secured, "Raymond Handling Solutions" has an address in Sante Fe Springs, California while the missing "Raymond Leasing Corporation" bears a Corporate Headquarters address in Greene, New York. "Raymond Handling Solutions" is also separately listed on Debtor's Schedule F as an unsecured creditor.

should be so avoided. *Id.* at lines 17-19. Instead, the Debtor and its Insiders report that they have negotiated and agreed, through their respective counsel, that the Insiders will waive their claims against the Debtors and forego a distribution of up to "$550,000.00" in exchange for a general release of all claims against the Insiders by the Debtors. *Id.* at line 26.

First of all, the U.S. Trustee suspects that the Disclosure Statement's reference to the Insiders' waiver of a distribution amount is a typographical error which is supposed to reference a waiver of potential distribution of the much larger amount of $5,500,000.00. If so, this correction should be made to prevent further unnecessary confusion.

Further, it is unclear if the Debtor's proposed cancellation of all equity interests upon Plan confirmation, i.e. the four equal 25% equity interests held respectively by the four Insiders, coupled with a simultaneous vesting of equity of 70% to Insider Michael Bennish and 30% to Insider Daniel Bennish, is another component of this negotiated resolution. At present, the Disclosure Statement states only that the stock of the Reorganized Debtor is vested in only Michael Bennish and Daniel Bennish ".. [i]n consideration of the post-confirmation services of Micheal Bennish and Daniel Bennish to the Reorganized Debtor." (DS, p. 22, ll. 21-28).

It does not appear that either Michael Bennish or Daniel Bennish is providing any financial consideration of any amount, i.e. new value, for their improved equity holdings as a result of the proposed Plan– instead they are waiving their rights to repayment of $1,478,697.31 (Daniel Bennish) and $821,073.99 (Michael Bennish) from the Debtor. However, Insiders Howard Bennish and Stafford Bennish are similarly waiving their rights to repayment of $1,706,399.74 and $1,247,280.00 respectively from the Debtor– but, by contrast, they relinquish their equity interests post-confirmation. Therefore, the U.S. Trustee contends that Debtor should provide more detailed information regarding the nature and timing of the claims held by and against the Insiders, including an assessment of the probability of who might prevail on these claims, so that interested parties can make an informed choice and vote on this aspect of the proposed Plan.

d. <u>Internal Inconsistency regarding Classification of Classes Entitled to Vote</u>

On page 22 of the Disclosure Statement, the Debtor states that "allowed claims" in Class 3 are entitled to vote on the Plan. However, on page 34, the Debtor states that "only Class 1 and 2"

are entitled to vote to accept or reject the Plan. The Debtor should amend its Disclosure Statement so that these related statements are internally consistent.

2. Compensation for Post-Confirmation Management

Section 1129(a)(5)(B) requires that the "the proponent of the plan has [to] disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider." On the Debtor's Post Confirmation Management Plan, however, the Debtor does not list any numerical compensation amounts for Michael Bennish, Daniel Bennish or Bruce Weinstein, whom will be managing the Debtor post confirmation. (DS, p. 23, line 1-8).

3. Analysis of Historical Financial Statements

a. Negative Net Income

The Debtor has negative net income for seven out of the last ten months. *See* 2011 January Monthly Operating Report (MOR), p. 14; 2011 June MOR, p. 14. Given its current situation, it appears unlikely that the Debtor will be able to generate enough revenue to pay off its creditors.

b. Fluxuating Insider Compensation

As demonstrated by the Debtor's income statements, payroll expenses for Insiders are not constant. *E.g.* $59,500 for June 2011; $39,359 for May 2011; and $78,718 for April 2011. *See* June 2011 MOR, p. 14. The Notice of Setting Insider Compensation in this matter was approved on November 23, 2010 for a constant amount, rather than a variable amount, for Insider compensation. *See* Order Overruling Objection of East West Bank to Notices of Setting/Increasing Insider Compensation (Docket No. 122), p. 2, line 12-13. *See also* Response by Debtor to Objection of East West Bank to Notices of Setting/Increasing Insider Compensation (Doc. 109), Exhibit 1-3. The Debtor should account for and explain these apparent fluctuations in the amount of Insider Compensation month-to-month.

c. Depreciation Expenses

The Debtor may be overstating net income by not accounting for depreciation expenses each month in both its income statement and balance sheet. June 2011 MOR, p. 14. Further, the Debtor should expressly state what accounting method it is and has been employing.

4.     Analysis of Projected Financial Statements

    a.     Projected Revenue and Expenses

The Debtor should explain and detail the basis for its projection that it will be able to substantially increase revenues (from $2,583,800 to $3,242,100) and simultaneously cut costs (from $348,400 to $328,900) during the short 30-day period between the forecasted October 2011 to the forecasted November 2011 income statements. (DS, Exhibit 6, p. 2).

    b.     Projected Increase in Accounts Payable

The Debtor should explain and detail the basis for its projected increase in additional accounts payable incurred for direct labor and warehouse during the same short 30-day period between October 2011 to November 2011, from $2,142,900 to $2,694,800, respectively. (DS, Exhibit 6, p. 3).

    c.     Material Increase in Debtor's Cash Account

The Debtor should explain and detail the specific basis for its projected material increase in its Cash account between June 2011 and July 2011, from $18,500 to $158,300; and to account for whether this forecast, a 756% change in the amount of cash on hand, took place or not. (DS, Exhibit 6, p. 10).

    d.     Inventory

The Debtor should explain and detail the factual basis for its immediate forecast of increased revenue, especially given Debtor's apparent plans to keep its inventory consistent at $1,750,000 until December 2012. DS, Exhibit 6, 7: Projected Consolidated Balance Sheets.

    e.     Inconsistent Financial Statements

The net income reported on the balance sheet is not consistent with the bottom line on the income statement. *See* Exhibit 6: Projected Income Statement; Projected Balance Sheet. As such, purely in terms of math, the Debtor either forgot to include an asset or liability because the balance sheet balances out.

  f. Projected Financial Changes

Especially since "[t]he primary risk of implementing the Plan is the failure of the Reorganized Debtor to achieve the sales and expense goals and equal or surpass the business performance regarding post confirmation operations ..." (DS, p. 26, ll. 23-25), the U.S. Trustee maintains and contends that Debtor should more fully explain in the Disclosure Statement the financial changes that will take place during the year 2012, since Debtor projected increases in revenues and expenses during this period. For example:

- Increase in annual "cash receipts" of $73,779,000 for 2012 compared to $16,603,300 for 2011;
- Increase in annual "accounts payable for payments on purchases and direct labor and warehouses" of $65,589,700 for 2012 compared to $13,584,900 for 2011; and
- Increase in annual "accounts receivable" of $4,366,900 for 2012 compared to $887,900 for 2011.

See Exhibit 6, 7: Projected Consolidated Statement of Cash Flows; Projected Consolidated Balance Sheet.

Although the 2011 financial projections only cover six months, the amounts for 2012 are more than double the amount for 2011. As noted previously, Debtor's Disclosure Statement did not expressly state that the Debtor is obtaining additional customers nor is the Debtor selling more inventories (*see, supra* Part III.4.d) to justify this increase. Further, the Debtor should discuss the collectability of the accounts receivable.

  g. Interest Expense

The Debtor should specifically explain why it begins paying interest expense of $49,800 each month starting October 2011. D(S, Exhibit 6, p. 2).

5. Monthly Operating Reports (MORs)

  a. Bank Reconciliation

On Debtor's Monthly Operating Reports, it states on its "Bank Reconciliation" that it has "various multiple checks outstanding" and states that "details [are] available at debtor['s] offices." *See e.g.* June 2011 MOR, p. 3, 6. However, the Debtor is required to list all of its outstanding

9

checks on its MORs.

b.  Increased Insider Compensation

The Debtor has recently disbursed an increased amount to certain Insiders for payment of health insurance– in particular: $2,450/month for Michael Bennish and $2,198/month for Daniel Bennish. *See* June 2011 MOR, p. 13. The Court had previously authorized compensation for health insurance of $2,048/month for Michael Bennish and $919/month for Daniel Bennish. Order Overruling Objection of East West Bank to Notices of Setting/Increasing Insider Compensation (Doc. No. 122). The Debtor stated that the increased amount was a result of Blue Cross instituting significant premium increases in health insurance rates. *See* June 2011 MOR, p. 13. However, the Debtor is required to file a Notice of Increasing Insider Compensation rather than simply stating the reason for the increase in the MORs in fine print.

6.  Preferences and Fraudulent Transfers

The Debtor did not affirmatively state whether there are any preferences and/or fraudulent transfers. Further, apart from the cursory description of the proposed resolution of the Insider unsecured claims, the Debtor did not state what steps, if any, it took to conduct a preference and fraudulent transfer analysis or report the results of this analysis.

7.  Assumptions and Rejection of Leases

To date, because Exhibits 8a and 8b remain blank, having not yet been filed with the Court, in the proposed Disclosure Statement, the Debtor did not and has not affirmatively stated whether it will assume or reject its current unexpired leases.

**WHEREFORE,** the United States Trustee requests that the Court require an amendment of the Disclosure Statement and Plan to address the aforementioned concerns.

Dated:    August 15, 2011

Peter C. Anderson
United States Trustee

By: _____
Kenneth G. Lau
Attorney for the United States Trustee

10

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**725 South Figueroa Street, Suite 2600, Los Angeles, California 90017-1574**

A true and correct copy of the foregoing document described as: **Objection to Disclosure Statement Describing Chapter 11 Plan** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 15, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**SEE ATTACHED SERVICE LIST (IF APPLICABLE)**

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On **August 15, 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**SEE ATTACHED SERVICE LIST (IF APPLICABLE)**

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 15, 2011** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed

**SEE ATTACHED SERVICE LIST (IF APPLICABLE)**

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 15, 2011 | Stephanie Hill | *Stephanie Hill* |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                **F.9013-3.1.PROOF.OF.SERVICE**

## ADDITIONAL SERVICE INFORMATION

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Sara Chenetz   chenetz@blankrome.com, chang@blankrome.com;darling@blankrome.com
- Ronald Clifford   rclifford@blakeleyllp.com
- Brian L Davidoff   bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
- Jeffrey S Goodfried   jgoodfried@perkinscoie.com
- David Joe   djoe@rutterhobbs.com, calendar@rutterhobbs.com
- Bernard J Kornberg   bjk@severson.com
- Duane Kumagai   dkumagai@rutterhobbs.com, calendar@rutterhobbs.com;mshabpareh@rutterhobbs.com
- Kenneth G Lau   kenneth.g.lau@usdoj.gov
- Craig A Loren   aloren@debtacquisitiongroup.com, bschwab@debtacquisitiongroup.com;jsarachek@debtacquisitiongroup.com
- Laura E Lynch   llynch@mohlaw.net
- C John M Melissinos   jmelissinos@rutterhobbs.com, jreinglass@rutterhobbs.com;calendar@rutterhobbs.com
- David L. Neale   dln@lnbrb.com
- Queenie K Ng   queenie.k.ng@usdoj.gov
- D Andrew Phillips   aphillips@mitchellmcnutt.com, dharwell@mitchellmcnutt.com
- Rosamond H Posey   rposey@mitchellmcnutt.com
- J Alexandra Rhim   arhim@buchalter.com, smartin@buchalter.com
- Johanna A Sanchez   jasanchez@lbbslaw.com
- James R Selth   jim@wsrlaw.net, charles@wsrlaw.net
- Claire Shin   cshin@rutterhobbs.com, jreinglass@rutterhobbs.com
- Claire Shin   cshin@seyfarth.com, jreinglass@rutterhobbs.com
- United States Trustee (LA)   ustpregion16.la.ecf@usdoj.gov

II. **SERVED BY U.S. MAIL:**

**DEBTOR:**
**P&C Poultry Distributors, Inc.**
1100 John Reed Court
City of Industry, CA 91745

**DEBTOR'S COUNSEL:**
**Brian L Davidoff**
1901 Avenue Of The Stars Ste 1700
Century City, CA 90067

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

**F.9013-3.1.PROOF.OF.SERVICE**

12

**INTERESTED PARTIES:**
BMW Bank of North America, Inc. Department
P.O. Box 201347
Arlington, TX 76006

Citibank, N.A.
701 East 60th Street North
SIOUX FALLS, SD 57117

**CREDITOR'S COMMITTEE:**
Lawrence Wholesale, LLC.
Attn: Allen Gilbert
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067

Consolidated Packaging
Attn: Steve Haight, Sr., CEO
9821 Pittsburgh Avenue
Rancho Cucamonga, CA 91730

Precision Refrigeration & Air Conditioning
Attn: Igor Cherdak, President
9726 Klingerman Street
South El Monte, CA 91733

Unifirst
Attn: Jeff Martin, Central Manager
700 S. Etiwanda Ave., Suite C
Ontario, CA 91761-8608

III.   **SERVED BY PERSONAL DELIVERY:**
   The Honorable Peter H. Carroll, U.S. Bankruptcy Judge
   U.S. Bankruptcy Court, Roybal Federal Building
   255 E. Temple Street
   Los Angeles, CA 90012
   Bin outside of Suite 1534

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                                **F.9013-3.1.PROOF.OF.SERVICE**