SCOTT O. SMITH (SBN: 62839)
J. ALEXANDRA RHIM (SBN: 180636)
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email: arhim@buchalter.com

Attorneys for Secured Creditor
East West Bank

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>P&C POULTRY DISTRIBUTORS, INC.,<br><br>Debtor and Debtor-in-Possession. | Case No. 2:10-bk-46350-PC<br><br>Jointly Administered with<br>Case No. 2:10-bk-46362 PC<br><br>Chapter: 11 |
| In re:<br><br>CUSTOM PROCESSORS, INC.,<br><br>Debtor and Debtor-in-Possession. | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EAST WEST BANK'S MOTION FOR EXPEDITED RELIEF FROM THE AUTOMATIC STAY; DECLARATION OF J. ALEXANDRA RHIM IN SUPPORT THEREOF<br><br>Date:    [TO BE SET]<br>Time:<br>Ctrm:    1539<br>             Edward Roybal Building<br>             255 E. Temple Street<br>             Los Angeles, CA 90012 |

East West Bank (the "Bank"), by and through its undersigned counsel, hereby submits this Memorandum of Points & Authorities in Support of its Motion for Expedited Relief from the Automatic Stay.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EAST WEST BANK'S MOTION FOR EXPEDITED RELIEF FROM THE
AUTOMATIC STAY; DECLARATION OF J. ALEXANDRA RHIM IN SUPPORT THEREOF

## MEMORANDUM OF POINTS & AUTHORITIES

### I.

### INTRODUCTION

Immediate relief from stay and termination of authority to use cash collateral is warranted for the following reasons: (1) the current cash collateral order provides for relief from stay after a determination as early as <u>September 1, 2011</u> whether a sales covenant has been satisfied; (2) the Debtors have violated the cash collateral order which requires weekly reporting; specifically, the Debtors have failed to provide weekly reporting due on August 15 and 22, 2011 and such failure is likely designed to prevent testing of the covenant on September 1, 2011; (3) the updated budget attached to the cash collateral order demonstrates that the Debtors cannot satisfy the sales covenant entitling the bank to relief from stay; and (4) the status of the Bank's collateral is unknown since the Debtors are admittedly winding down their operations yet refusing to provide information regarding the collateral. The Bank is currently in the proverbial dark regarding the status of operations and its collateral. The Bank is particularly concerned due to the perishable nature of the inventory (poultry) and whether its collateral is being properly maintained.

The failure to provide reporting is neither a harmless nor mere technical default under the consensual cash collateral order entered on August 25, 2011. Recognizing that it could offer no other form of adequate protection to the Bank, the Debtors agreed to relief from stay immediately effectively upon the Debtors failure to achieve certain financial covenants. Those covenants relate to the achievement of certain sales and profit levels. The cash collateral order provides that on September 1, 2011 the sales covenant is to be measured through the reporting. The Debtors, however, have created a situation designed to prevent the Bank from testing the covenant.

Notwithstanding what appears an intentional refusal or inability to generate reporting, the Debtors have already admitted in their own revised budget appended to the cash collateral order that they will be unable to meet the sales covenants. Under the cash collateral order, among other requirements, the Debtors are required to generate $2,250,000 in net sales during the month of August 2011. The Debtors' revised budget[1] reflects projected sales of $1,600,000, which is far

---

[1] The Debtors voluntarily attached a revised budget to the cash collateral order that reflects a significant downward

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

2

1   below the required amount under the order, and reflects operating losses.  For this reason, and

2   their failure to provide reporting, the Debtors are in default under the cash collateral order, and

3   the Bank should be entitled to immediate relief from stay in accordance with the cash collateral

4   order.

5          In addition to the current untenable situation, the critical facts are that the Debtors are

6   operating at a loss, have no other exit strategy, have no ability to confirm a plan, and have now

7   violated several of this Court's cash collateral orders.  The Debtors' actions cannot be

8   countenanced given the year delay that the Bank has suffered.

9                                           II.

10                              **FACTUAL BACKGROUND**

11  **Loan Obligations**

12         1.      The Bank made prepetition loans to P&C Poultry Inc. ("P&C").[2]  The Bank

13  possesses a blanket lien upon substantially all of P&C's assets to secure the loan obligations.

14  Custom Processing, Inc. guaranteed P&C's loan obligations owed to the Bank.

15         2.      On or about February 28, 2011, the Bank filed proofs of claim in each of the

16  Debtors' cases asserting claims in a principal amount not less than $8,728,895.26, not including

17  all accrued interest, fees and costs.  As of June 24, 2011, the Bank is owed in excess of $8.9

18  million, due to unpaid accrued interest and other charges.  The Debtors do not dispute the debt.

19  **Cash Collateral Use**

20         3.      The Debtors were authorized to use cash collateral pursuant to numerous cash

21  collateral orders.  Notwithstanding contested hearings during the early stages of the cases, the

22  Bank opposed the Debtors' further requests to use cash collateral to facilitate the Debtors'

23  reorganizational efforts in reliance on certain deadlines and conditions.

24         4.      The cash collateral order entered on February 11, 2011 (the "February 2011

25  Order") required the Debtors to either accomplish a sale of its assets by May 31, 2011 or have a

---

26  adjustment compared to the original budget that was attached to their cash collateral motion (the "Cash Collateral
    Motion").
27  [2]     In the interest of brevity, the background regarding the loan transaction was described in the Declaration of
    William Nietschmann (the "Nietschmann Declaration"), previously filed with the Court on August 31, 2010.  All
28  pertinent loan documents were appended to the Nietschmann Declaration.

1    plan confirmation hearing by June 30, 2011 and to achieve other tasks by various additional

2    deadlines. The Debtors failed to meet these deadlines. [See February 2011 Order, at pp. 3-4,

3    appended as Exhibit 4 to the Declaration of Bruce Weinstein filed in support of the Cash

4    Collateral Motion.]

5         5.        Subsequently, the Bank entered into a cash collateral stipulation (the "June 2011

6    Stipulation") which authorized further use of cash collateral. The June 2011 Stipulation at Recital

7    H provides" "The Bank's consent is based expressly in reliance upon the Debtors'

8    representations regarding commitments for purchase of additional volume of product with

9    expected increased sales to be realized starting in June 2011." These increased sales did not ever

10   materialize.

11        6.        Most recently, on August 25, 2011, the Court entered the Interim Order

12   Authorizing Continued Use of Cash Collateral (the "Cash Collateral Order).[3] The Cash Collateral

13   Order provides for self-executing relief from stay as follows:

14        5.    Relief from the automatic Stay. Upon the Debtors' failure
     to achieve the Covenants in accordance with section 4 above (the
15   "Default"), the automatic stay arising under section 362 of the
     Bankruptcy Code is terminated to permit the Bank (and any of its
16   successors or assigns) to exercise any of its rights and remedies
     under the loan documents and applicable law; provided, further,
17   such termination of the automatic stay shall become effective
     immediately on the second business day following the date of: (i)
18   the Bank's delivery by email to the Debtors' counsel and counsel
     for the Official Committee of Unsecured Creditors (no later than 5
19   p.m. PST on such day); and (ii) filing with the Bankruptcy Court
     (no later than 5 p.m. PST on such day), of a written notice
20   specifying in detail the Default, without the need for a further
     application , motion, hearing, order of the Court, or any other
21   action.

22   Section 4 of the Cash Collateral Order provides, among other things:

23   The Debtors shall achieve each of the following requirements
     (collectively, the "Covenants"): (A) Net sales in an amount no less
24   than $2,250,000 generated during the calendar month of August
     2011 ("Net Sales"), which sales: (i) shall be calculated in
25   accordance with the Debtors' practices utilized during these
     bankruptcy cases with reference to the Sixth Budget; and **(ii) shall
26   be measured on September 1, 2011 by reference to the
     reporting the Debtors are required to provide to the Bank;**

27

28   [3] A true and correct copy of the Cash Collateral Order is attached as Exhibit 1 to the Request for Judicial Notice filed
     separately and concurrently.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EAST WEST BANK'S MOTION FOR EXPEDITED RELIEF FROM THE
AUTOMATIC STAY; DECLARATION OF J. ALEXANDRA RHIM IN SUPPORT THEREOF

7.      Section 6 of the Cash Collateral Order further requires that a weekly reporting must be provided on each Monday pertaining to each preceding week.  The reporting shall consist of weekly sales and collections journals, accounts payable aging reports and accounts receivable aging report.  Such reporting has been required throughout the pendency of these cases.

8.      The weekly reports due on August 15 and 22, 2011 have not been provided to the Bank.  No information has been provided regarding collateral status.  The Bank has made numerous requests and such reporting is either intentionally being withheld or the Bank suspects the Debtors lack the ability to generate and provide such reporting.

**Operating Losses/Diminishing Sales**

9.      During these cases, the Debtors have achieved the sales, which are all well below projected amounts and result in operating losses.  By late December 2010, the Debtors lost significant business resulting from a significant customer cutting back its orders.  [See Case Status Report (docket no. 173) filed on January 13, 2011, pp. 3-4.]

10.     On each occasion the Debtors presented projections, they were substantially revised downward to reflect their poor performance.  To illustrate the erratic and inaccurate nature of the projections, below is a summary of forecasted sales presented in a number of the Debtors' cash collateral budgets[4]:

| Date | 9/7/10 Projections Amount | 11/29/10 Projections Amount | 2/11/11 Projections Amount | 5/13/11 Projections Amount | 6/20/11 Projections Amount | 8/22/11 Projections Amount |
|---|---|---|---|---|---|---|
| 8/27/10 | $690,000.00 | | | | | |
| 9/3/10 | $850,000.00 | | | | | |
| 9/10/10 | $750,000.00 | | | | | |
| 9/17/10 | $1,700,000.00 | | | | | |
| 9/24/10 | $900,000.00 | | | | | |
| 10/1/10 | $1,500,000.00 | | | | | |
| 10/8/10 | $1,700,000.00 | | | | | |
| 10/15/10 | $1,100,000.00 | | | | | |
| 10/22/10 | $1,800,000.00 | | | | | |
| 10/29/10 | $2,000,000.00 | $538,900.00 | | | | |
| 11/5/10 | $2,000,000.00 | $687,500.00 | | | | |
| 11/12/10 | $2,000,000.00 | $700,000.00 | | | | |

[4]     The projections were presented in budgets appended to various cash collateral orders, which are appended as Exhibits to the Declaration of Bruce Weinstein filed in support of the Cash Collateral Motion.  The August 22, 2011 projections were set forth in the revised budget appended to the Cash Collateral Order.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EAST WEST BANK'S MOTION FOR EXPEDITED RELIEF FROM THE
AUTOMATIC STAY; DECLARATION OF J. ALEXANDRA RHIM IN SUPPORT THEREOF

| Date | 9/7/10 Projections Amount | 11/29/10 Projections Amount | 2/11/11 Projections Amount | 5/13/11 Projections Amount | 6/20/11 Projections Amount | 8/22/11 Projections Amount |
|---|---|---|---|---|---|---|
| 11/19/10 | $2,000,000.00 | $1,000,000.00 | | | | |
| 11/26/10 | | $1,000,000.00 | | | | |
| 12/3/10 | | $1,200,000.00 | | | | |
| 12/10/10 | | $1,200,000.00 | | | | |
| 12/17/10 | | $1,200,000.00 | | | | |
| 12/24/10 | | $1,200,000.00 | | | | |
| 12/31/10 | | $1,200,000.00 | | | | |
| 1/7/11 | | $800,000.00 | | | | |
| 1/14/11 | | $800,000.00 | | | | |
| 1/21/11 | | $950,000.00 | | | | |
| 1/28/11 | | $950,000.00 | | | | |
| 2/4/11 | | $950,000.00 | | | | |
| 2/11/11 | | $1,100,000.00 | | | | |
| 2/18/11 | | | $700,000.00 | | | |
| 2/25/11 | | | $700,000.00 | | | |
| 3/4/11 | | | $750,000.00 | | | |
| 3/11/11 | | | $750,000.00 | | | |
| 3/18/11 | | | $800,000.00 | | | |
| 3/25/11 | | | $750,000.00 | | | |
| 4/1/11 | | | $800,000.00 | | | |
| 4/8/11 | | | $800,000.00 | | | |
| 4/15/11 | | | $800,000.00 | | | |
| 4/22/11 | | | $800,000.00 | | | |
| 4/29/11 | | | $900,000.00 | | | |
| 5/6/11 | | | $900,000.00 | $351,000.00 | | |
| 5/13/11 | | | $900,000.00 | $430,000.00 | | |
| 5/21/11 | | | | $526,000.00 | | |
| 5/28/11 | | | | $526,000.00 | | |
| 6/4/11 | | | | $526,000.00 | | |
| 6/11/11 | | | | $606,000.00 | | |
| 6/18/11 | | | | $606,000.00 | | |
| 6/25/11 | | | | $606,000.00 | | |
| 7/2/11 | | | | $606,000.00 | | |
| 7/9/11 | | | | | $500,000.00 | |
| 7/16/11 | | | | | $740,000.00 | |
| 7/23/11 | | | | | $675,000.00 | |
| 7/30/11 | | | | | $675,000.00 | |
| 8/6/11 | | | | | $675,000.00 | |
| 8/13/11 | | | | | $700,000.00 | |
| 8/20/11 | | | | | $650,000.00 | |
| 9/3/11 | | | | | $625,000.00 | |
| 9/10/11 | | | | | $575,000.00 | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EAST WEST BANK'S MOTION FOR EXPEDITED RELIEF FROM THE
AUTOMATIC STAY; DECLARATION OF J. ALEXANDRA RHIM IN SUPPORT THEREOF

**Collateral Status**

11.    In the past, the Debtors have assigned the following inflated values to the Bank's collateral, which values have diminished:

| | | |
|---|---|---|
| AR: | $ | unknown (reported $670,000 as of 5/31/11 |
| Cash: | $ | 57,200 (per budget) |
| Inventory: | $ 1,750,000 (per budget) | |
| FFE | $5,600,000 (requires reduction for depreciation; other factors) | |
| Total: | $8,077,200 *(requires further reduction)* | |

12.    The Debtors reported that accounts receivable were initially $2.3 million as of the petition date. Their current accounts receivable position is unknown due to their failure to provide recent reporting. The Debtors' (former) Chief Restructuring Officer acknowledged in his declaration that "It is true that during the last few months, as the Debtors have scaled their operations to what they believe is a sustainable level of future orders, *the outstanding amount of accounts receivable have fallen, decreasing the collateral base.*"[5]

13.    The Debtors asserted and still maintain that their furniture, fixtures and equipment ("FFE" or "Fixed Assets") are valued at approximately $5.5 million as of the petition date. Schedule B29 reflects that the Debtors' opinion is based on the *cost* value of such items after deduction of accumulated depreciation for tax purposes. Schedule B29 specifically reflects a deduction was made for annual depreciation for 2010 of $636,053 and for 2009 of $614,011.[6] Since ten (10) months will have elapsed since the petition date, a further deduction for depreciation is necessary.

14.    Schedule B29 reflects that 40% of the value of the FFE consists of leasehold improvements. Such leasehold improvements are likely uniquely useful to the particular premises. Upon the removal of such improvements, their utility and value is greatly diminished. Inherent costs and difficulties are attendant to removal of such items that are integral with realty.

15.    According to the budget appended to the Cash Collateral Order, the Debtors

---

[5]    See Bruce Weinstein Declaration, at p. 24 ll. 1-3.
[6]    The Debtors' Schedule B29 is appended as Exhibit 11 to Request for Judicial Notice.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EAST WEST BANK'S MOTION FOR EXPEDITED RELIEF FROM THE
AUTOMATIC STAY; DECLARATION OF J. ALEXANDRA RHIM IN SUPPORT THEREOF

1     project a shortfall each week due to their diminishing weekly sales.

2         16.      When compared to the Bank's debt that exceeds $8.9 million, there is no equity

3     in their assets.

4                                     **III.**

5                              **ARGUMENT**

6     **A.     Cause Exists under Section 362(d)(1) to Allow the Bank to Exercise Any and All of**

7         **Its Rights and Remedies Available under Applicable Law and the Loan Documents.**

8         By enacting § 362(d) of the Bankruptcy Code,[7] Congress recognized that the protections

9     of the automatic stay should not be used to unduly bind a secured creditor when cause exists and

10     its interest in its collateral is not adequately protected.  In addition, a secured creditor should not

11     be prevented from exercising its rights and remedies with respect to property where a debtor has

12     no prospects, is in a state of financial decline, has no equity in the property and the property is

13     unnecessary to an effective reorganization.  In the instant case, all of these reasons are amply

14     present and warrant relief from the automatic stay.

15         Upon the request of a party in interest, a court shall grant relief from the automatic stay

16     for cause, which includes the lack of adequate protection of the party's interest in property.

17     11 U.S.C. § 362(d)(1).  The debtor carries the burden of proof to establish adequate protection.

18     11 U.S.C. § 362(g).  In addition to lack of adequate protection, cause can be established by virtue

19     of other factors and is to be determined on a case-by-case basis.  In re Tucson Estate, Inc.,

20     912 F.2d 1162 (9th Cir. 1990); In re Trident Associates Ltd. Partnership, 52 F.3d 127 (6th Cir.

21     1995).  As discussed below, cause exists for numerous reasons, including the lack of adequate

22     protection.

23         **1.     Cause Exists Due to the Relief from Stay Provisions Under the Cash Collateral Order and the Debtor's Failure to Provide Reporting**.

24         Ample cause exists because the relief from stay provisions under the Cash Collateral

25     Order have been triggered.  The Debtors' projections in their budget appended to the Cash

26     Collateral Order reflect that they will not be able to meet the sales covenant required therein to

27     avoid the grant of relief from stay in favor of the Bank.  Given these projections, relief from stay

---

28    [7]     Statutory references herein are to the Bankruptcy Code unless otherwise noted.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EAST WEST BANK'S MOTION FOR EXPEDITED RELIEF FROM THE
AUTOMATIC STAY; DECLARATION OF J. ALEXANDRA RHIM IN SUPPORT THEREOF

1    should be effective immediately.

2    Additionally, the Debtors are either intentionally withholding the reporting or lack the

3    ability to generate such reporting. This failure constitutes a violation of the Cash Collateral

4    Order. Due to this failure alone, the Bank is not adequately protected and relief from stay should

5    be granted.

6    **2.    Additional Cause Exists Due to the Debtors' Violations under Prior Cash Collateral Orders**

7    **a.    The Debtors Have Failed to Meet the Milestones in the February 2011 Order.**

8    The February 2011 Order required the Debtors accomplish a sale of its assets by May 31,

9    2011 or have a plan confirmation hearing by June 30, 2011 and to achieve other tasks by various

10    additional deadlines. The Debtors were unable to sell its assets by May 31, 2011 and also failed

11    to propose a plan and have a hearing by the June 30, 2011 hearing date.

12    The Debtors did not seek relief from these deadlines. Yet, the Bank detrimentally relied

13    upon the Debtors to act expeditiously to meet these deadlines. Hence, the Debtors' violation of

14    the requirements under the February 2011 Order is inexcusable.

15    **b.    The Bank Detrimentally Relied Upon Representations of Increased Sales Starting in Tune 2011.**

16

17    The June 2011 Stipulation contains a recital that expressly sets forth that the Bank

18    consented to further cash collateral use based upon reliance on the Debtors' representations

19    regarding increased sales to be realized starting in June 2011. The Debtors' sales levels in June

20    were similar to those in May 2011. Moreover, the Debtors' failure to perform in accordance with

21    their representations is consistent with their ongoing failure to accurate forecast sales and

22    repeatedly broken promises.

23    **3.    Cause Exists Due to the Lack of Equity Cushion and Collateral Erosion**

24    **a.    No Equity Cushion Exists**

25    An equity cushion of at least 20% has been held as sufficient adequate protection in

26    certain instances. *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1401 (9th Cir. 1984); *see also*

27    *Downey Sav. & Loan Ass'n v. Helionetics, Inc.* (*In re Helionetics, Inc.*), 70 B.R. 433, 440 (Bankr.

28    C.D. Cal. 1987); *Kost v. First Interstate Bank of Greybill* (*In re Kost*), 102 B.R 829 (D. Wyo.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EAST WEST BANK'S MOTION FOR EXPEDITED RELIEF FROM THE
AUTOMATIC STAY; DECLARATION OF J. ALEXANDRA RHIM IN SUPPORT THEREOF

1  1989) (equity cushion of 11.5% not sufficient); *In re Franklin Equipment Co.*, 416 B.R. 483

2  (Bankr. E.D. Va. 2009) (equity cushion of 4.87% is not sufficient).

3        In this case, there is no equity cushion even based upon the Debtors' values.  That is

4  woefully short of meeting the standard under Mellor.

5        **b.**    **The Debtors' Use of Going Concern Values is Improper.**[8]

6        It is recognized that the method of valuation turns on the prospects of a reorganization, the

7  risk of decline to collateral values and the nature of the Debtors' business.  Some courts hold that

8  collateral should be valued at "the most commercially reasonable disposition practicable in the

9  circumstances. . . " *In re American Kitchen Foods, Inc.*, 9 C.B.C. 537 (D. Me. 1976); *In re*

10  *Savannah Gardens-Oaktree*, 146 B.R. 306 (Bankr. S.D. Ga. 1992).  "This standard will require

11  reference to the debtor's prospects for rehabilitation; if these appear dim, liquidation value may be

12  the appropriate standard." 3 Collier on Bankruptcy, 1361.04[4] (17th rev. ed. 2011).

13        The Debtors have no prospect of reorganizing.  The use of going concern methodology is

14  not appropriate under the circumstances.  Because the circumstances indicate that the Debtors'

15  operations are not viable, a liquidation standard should be employed.

16        Additionally, the values ascribed by the Debtors are faulty.  For instance, the value is

17  based on their tax reporting; the value is arrived at taking the acquisition cost and deducting

18  accumulated depreciation.  The Debtors' value also fails to take into consideration that the bulk of

19  the 1414E consists of leasehold improvements which are costly to remove and problematic in

20  their utility if removed from their site.  The Debtors have failed to provide an accurate value of

21  the FFE.

22        No other form of adequate protection exists or can be provided by the Debtors.  Any

23  replacement lien is illusory given the decrease to the collateral pool.  Any reporting only confirms

24  collateral erosion and poor operations.  In sum, the Debtors have wholly failed to meet their

25  burden of proof to show that the Bank is adequately protected.

26

27

28  [8] The Bank reserves all rights in connection with the valuation of the collateral.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**B.**    **Relief from Stay Must Be Granted Because the Debtor Has No Meaningful Equity in the Property, and the Property is Not Necessary for An Effective Reorganization.**

Upon the request of a party in interest, a court must grant relief from the automatic stay regarding an act against property of the estate if the debtor lacks equity in the property and if the property is not necessary for an effective reorganization which can be accomplished within a reasonable time.  11 U.S.C. § 362(d)(2).  In the instant case, both elements of § 362(d)(2) exist and relief must be granted.

**1.**    **The Debtors Lacks Equity in the Property.**

Equity has been defined as "the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of unsecured creditors." Mellor, 734 F.2d at 1400, n.2; *see also Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984).  A comparison of the sum of the liens against the Property to its value conclusively demonstrates that Debtor has no equity in the Property.

As set forth above, the debt exceeds $8.9 million not including the cost to liquidate the collateral.  According to the Debtors' own inflated values, which are highly questionable, the collateral is worth at best $8 million on a going concern basis.  On a liquidation bases, the collateral is worth far less.  Therefore, no equity exists in the collateral for purposes of section 362(d)(2).

**2.**    **The Property Is Not Necessary for a Reorganization by the Debtors.**

After establishing that a debtor lacks equity, it is the debtor's burden to prove that the property involved is necessary to an effective reorganization. 11 U.S.C. § 362(g).  In this case, the Debtor cannot meet her burden.  If a creditor proves there is no equity in the subject property, the stay should be lifted because there can be no question that the property is not necessary for an effective reorganization where the debtor only seeks to liquidate its assets. *See In re Knight Jewelry,* 168 B.R. 199 (Bankr. W.D. Mo. 1994); *In re Roxrum Estates, Inc.*, 74 B.R. 997 (Bankr. S.D.N.Y. 1987).

By no means hyperbole, all of the facts and circumstances lead to the conclusion that the Debtors lack the ability to reorganize.  The Debtors are winding down.  The Debtors' most recent

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EAST WEST BANK'S MOTION FOR EXPEDITED RELIEF FROM THE AUTOMATIC STAY; DECLARATION OF J. ALEXANDRA RHIM IN SUPPORT THEREOF

1  projections reflect that their operations are not viable and that they cannot operate the business

2  they have promised for nearly a year.  Under these circumstances, it is a *certainty* that the Debtors

3  cannot ever fund a plan and pay the relatively staggering administrative costs which exceed

4  $1,000,000.

5                                   IV.

6                              **CONCLUSION**

7           For the reasons above, the Bank requests that the Court grant immediate relief from stay.

8  The Bank also requests that the Court grant any other relief it deems necessary.

9

10  DATED: August 25, 2011                    BUCHALTER NEMER
                                              A Professional Corporation

11

12                                            By:    /s/ J. Alexandra Rhim

13                                                   J. ALEXANDRA RHIM
                                                     Attorneys for East West Bank
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EAST WEST BANK'S MOTION FOR EXPEDITED RELIEF FROM THE
AUTOMATIC STAY; DECLARATION OF J. ALEXANDRA RHIM IN SUPPORT THEREOF

### DECLARATION OF J. ALEXANDRA RHIM

I, J. Alexandra Rhim, declare:

1.      I am an attorney at Buchalter Nemer, A Professional Corporation ("Buchalter"), attorneys of record for East West Bank (the "Bank") in the above-captioned bankruptcy cases (the "Cases"). I am one of the attorneys primarily responsible for representing the Bank in the Cases. The following facts are true of my own personal knowledge, except where stated on information and belief, and as to those facts, I believe them to be true. If called as a witness, I could and would testify competently to the facts as set forth herein.

2.      On August 18 and 19, 2011, I inquired by way of email correspondence with counsel for the Debtors, C. John M. Melissinos, regarding the status of the weekly reporting that is due under the Cash Collateral Order. The only response I received was from Mr. Melissinos on August 19, 2011 who simply stated "I have no further information for you on this." A true and correct copy of the email thread is attached hereto as Exhibit 1.

3.      It has been the practice during this case that Debtors' counsel would forward the reporting directly to me by email transmission. To date, despite my requests, I have not received the reporting due on August 15 and 22, 2011 or any response on when the reporting could be expected. Also, I have received no further information regarding the Debtor's operations..

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration is executed on August 25, 2011, at Los Angeles, California.

_/s/ J. Alexandra Rhim_____
J. Alexandra Rhim

# Exhibit 1

## McGarva, Bronwen

| | |
|---|---|
| **From:** | Rhim, Alexandra |
| **Sent:** | Thursday, August 25, 2011 6:07 PM |
| **To:** | McGarva, Bronwen |
| **Subject:** | FW: P&C - Draft of further interim order authorizing further use of cash collateral |

Exhibit to Rhim Declaration.

**From:** Rhim, Alexandra
**Sent:** Friday, August 19, 2011 9:26 PM
**To:** 'C. John M. Melissinos'
**Cc:** michaelbennish@hotmail.com; Claire E. Shin; dan@wsrlaw.com; Smith, Scott; Brian L. Davidoff
**Subject:** RE: P&C - Draft of further interim order authorizing further use of cash collateral

John -

Given the status of the debtor's operations and your statements that the debtor is considering converting its case to chapter 7, the bank is uncertain as to the need to make a counterproposal to the debtor's plan. However, we are particularly concerned that we have not received the weekly reporting that was due on August 15, 2011, which is required as a form of adequate protection to the bank under the cash collateral order. Despite numerous inquiries, we have yet to receive anything more than the response below, which I would consider evasive. Absent receipt of such reporting, the bank is unable to meaningful assess and respond to the debtor's plan which on its face has feasibility issues.

In any event, as you know, we were requested to have a call on Monday. We can further discuss at that time the need for a response by the bank. In view of the current circumstances, we are simply unable to respond until we have a further discussion and are advised of the status of the prior week sales.

Alex

**From:** C. John M. Melissinos [mailto:jmelissinos@rutterhobbs.com]
**Sent:** Friday, August 19, 2011 4:21 PM
**To:** Rhim, Alexandra
**Cc:** michaelbennish@hotmail.com; Claire E. Shin; dan@wsrlaw.com; Smith, Scott; Brian L. Davidoff
**Subject:** RE: P&C - Draft of further interim order authorizing further use of cash collateral

Alex:

I have no further information for you on this. A revised version of the order, in accordance with your comments from yesterday, is attached. A blackline will follow separately.

John

**From:** Rhim, Alexandra [mailto:ARHIM@buchalter.com]
**Sent:** Friday, August 19, 2011 12:19 PM

**To:** C. John M. Melissinos
**Cc:** michaelbennish@hotmail.com; Claire E. Shin; dan@wsrlaw.com; Smith, Scott
**Subject:** RE: P&C - Draft of further interim order authorizing further use of cash collateral

Can you please let me know the response to my email below and the status of the reporting that was due on Monday.

---

**From:** Rhim, Alexandra
**Sent:** Thursday, August 18, 2011 9:39 PM
**To:** 'C. John M. Melissinos'
**Cc:** 'michaelbennish@hotmail.com'; Claire E. Shin; 'dan@wsrlaw.com'; Smith, Scott
**Subject:** RE: P&C - Draft of further interim order authorizing further use of cash collateral

There is a call scheduled for Monday afternoon. It seems to make sense to push the deadline at least till Monday. Let me know.

---

**From:** C. John M. Melissinos [mailto:jmelissinos@rutterhobbs.com]
**Sent:** Thursday, August 18, 2011 6:58 PM
**To:** Rhim, Alexandra
**Cc:** 'michaelbennish@hotmail.com'; Claire E. Shin; 'dan@wsrlaw.com'; Smith, Scott
**Subject:** Re: P&C - Draft of further interim order authorizing further use of cash collateral

I can ask. What is the current state of things in your view?

---

**From:** Rhim, Alexandra <ARHIM@buchalter.com>
**To:** C. John M. Melissinos
**Cc:** michaelbennish@hotmail.com <michaelbennish@hotmail.com>; Claire E. Shin; dan@wsrlaw.com <dan@wsrlaw.com>; Smith, Scott <SSMITH@buchalter.com>
**Sent:** Thu Aug 18 18:55:43 2011
**Subject:** Re: P&C - Draft of further interim order authorizing further use of cash collateral
Given the current state of things, is the debtor willing to waive having the bank provide a response to the plan term sheet?

---

**From:** C. John M. Melissinos [mailto:jmelissinos@rutterhobbs.com]
**Sent:** Thursday, August 18, 2011 05:46 PM
**To:** Rhim, Alexandra
**Cc:** Michael Bennish <michaelbennish@hotmail.com>; Claire E. Shin <cshin@rutterhobbs.com>; dan@wsrlaw.com <dan@wsrlaw.com>; Smith, Scott
**Subject:** RE: P&C - Draft of further interim order authorizing further use of cash collateral

Alex:

Thanks for your comments and sorry about the typos. Why would this not be a further interim order, since the authority provided does not run through October 1, which was the original request?

John

---

**From:** Rhim, Alexandra [mailto:ARHIM@buchalter.com]
**Sent:** Thursday, August 18, 2011 3:25 PM
**To:** C. John M. Melissinos

**Cc:** Michael Bennish; Claire E. Shin; dan@wsrlaw.com; Smith, Scott
**Subject:** RE: P&C - Draft of further interim order authorizing further use of cash collateral

John - Attached is a redline that reflects my revisions.  Please circulate a corrected version.  Please also advise when we can expect to see the reporting that was due on Monday.

Alex

---

**From:** C. John M. Melissinos [mailto:jmelissinos@rutterhobbs.com]
**Sent:** Thursday, August 18, 2011 10:07 AM
**To:** Rhim, Alexandra
**Cc:** 'Michael Bennish'; Claire E. Shin; dan@wsrlaw.com
**Subject:** FW: P&C - Draft of further interim order authorizing further use of cash collateral

Alex:

Any comments on this?  I understand there are other discussions continuing, but we should get the form of the order agreed to on the record ready.

John

---

**From:** C. John M. Melissinos
**Sent:** Tuesday, August 16, 2011 4:41 PM
**To:** 'Rhim, Alexandra'
**Cc:** 'Ronald Clifford'; 'michaelbennish@hotmail.com'; 'fincnsltnt@aol.com'; Claire E. Shin; Brian L. Davidoff; 'dan@wsrlaw.com'
**Subject:** P&C - Draft of further interim order authorizing further use of cash collateral

Alex:

In accordance with the hearing last week, attached please find a draft of a further order.  Also attached is the "Sixth Budget," as presented in Court on August 10, 2011, which would be an exhibit to the order.

Please let me know if the order is acceptable.  (For some reason, I cannot find a word version of the previous uploaded order, and therefore no blackline is included.  I believe that document is on Buchalter's document management system.)

Since Ronald Clifford also participated in the hearing, he is also copied, above.

John

---

```
*****************************************************************************
```

**RUTTER**
**HOBBS** ⬛
**DAVIDOFF**
INCORPORATED
L A W Y E R S

C. John M. Melissinos
Rutter Hobbs & Davidoff Incorporated
1901 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067-6018
(310) 286-1700 (Voice)
(310) 286-1728 (Fax)
jmelissinos@rutterhobbs.com
www.rutterhobbs.com



**Member of the Primerus Society of Law Firms**
**www.primerus.com**

To the extent that this email or its attachments concern tax issues, we are required by U.S. Treasury Regulations to inform you that any advice contained in this email or any attachment is not intended to be used, and cannot be used, by you or any other person or entity to avoid penalties under the Internal Revenue Code. This electronic mail transmission contains information from the law firm of Rutter Hobbs & Davidoff Incorporated, which information may be privileged or confidential. The information contained in this transmission is for the exclusive use of the addressee named above. If you are not the intended recipient, any disclosure, copying, distribution or use of this information is prohibited.
**********************************************************************

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=151&Itemid=129.

**IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=151&Itemid=129.

**IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=151&Itemid=129.

**IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or**

recommending to another party any transaction or matter addressed herein.

**F 4001-1M.PP**

| In re                                   (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| P&C POULTRY DISTRIBUTORS, INC., CUSTOM PROCESSORS, INC. | |
| Debtor(s). | CASE NO.: 2:10-bk-46350-PC |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1000 Wilshire Boulevard, Suite 1500, Los Angeles, CA 90017

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EAST WEST BANK'S MOTION FOR EXPEDITED RELIEF FROM THE AUTOMATIC STAY; DECLARATION OF J. ALEXANDRA RHIM IN SUPPORT THEREOF**

A true and correct copy of the foregoing document described as _____
_____ will be served or was served **(a)** on the judge
in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____August 25, 2011_____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _____August 25, 2011_____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity
served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s)

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                    **F 4001-1M.PP**

and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 25, 2011 | Bronwen McGarva | /s/ Bronwen McGarva |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 4001-1M.PP**

I.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** –


- Sara Chenetz    chenetz@blankrome.com, chang@blankrome.com;darling@blankrome.com
  Ronald Clifford    rclifford@blakeleyllp.com
  Brian L Davidoff    bdavidoff@rutterhobbs.com,
  calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
  Jeffrey S Goodfried    jgoodfried@perkinscoie.com
  David Joe    djoe@rutterhobbs.com, calendar@rutterhobbs.com
  Bernard J Kornberg    bjk@severson.com
  Duane Kumagai    dkumagai@rutterhobbs.com,
  calendar@rutterhobbs.com;mshabpareh@rutterhobbs.com
  Kenneth G Lau    kenneth.g.lau@usdoj.gov
  Craig A Loren    aloren@debtacquisitiongroup.com,
  bschwab@debtacquisitiongroup.com;jsarachek@debtacquisitiongroup.com
  Laura E Lynch    llynch@mohlaw.net
  C John M Melissinos    jmelissinos@rutterhobbs.com,
  jreinglass@rutterhobbs.com;calendar@rutterhobbs.com
  David L. Neale    dln@lnbrb.com
  Queenie K Ng    queenie.k.ng@usdoj.gov
  D Andrew Phillips    aphillips@mitchellmcnutt.com, dharwell@mitchellmcnutt.com
  Rosamond H Posey    rposey@mitchellmcnutt.com
  J Alexandra Rhim    arhim@buchalter.com, smartin@buchalter.com
  Johanna A Sanchez    jasanchez@lbbslaw.com
  James R Selth    jim@wsrlaw.net, charles@wsrlaw.net
  Claire Shin    cshin@rutterhobbs.com, jreinglass@rutterhobbs.com
  Claire Shin    cshin@seyfarth.com, jreinglass@rutterhobbs.com
  United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov


II.     **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):

BMW Bank of North America, Inc. Department
P.O. Box 201347
Arlington, TX 76006
(Via U.S. Mail)

Citibank, N.A.
701 East 60th Street North
SIOUX FALLS, SD 57117
(Via U.S. Mail)

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                         **F 4001-1M.PP**